# 23-6247-cr

United States Court of Appeals
for the Second Circuit

_____

Docket No. 23-6247-cr
_____

UNITED STATES OF AMERICA,

Appellee,

-against-

ETHAN PHELAN MELZER, a/k/a ETIL REGGAD,

Defendant-Appellant.

_____

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**APPENDIX FOR DEFENDANT-APPELLANT ETHAN PHELAN MELZER**

FEDERAL DEFENDERS OF NEW YORK, INC.
 APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8742

Attorney for Defendant-Appellant
**ETHAN PHELAN MELZER**

**DARRELL FIELDS,**
 Of Counsel

A000001

### TABLE OF CONTENTS TO THE APPENDIX

Docket Sheet,
    <u>U.S. v. Ethan Melzer</u>, Docket 20-cr-314 (GHW) . . . . . A  03

Superseding Indictment,
    filed August 18, 2020
    (ECF No. 31) . . . . . . . . . . . . . . . . . . . A  30

Plea Agreement,
    dated June 22, 2022 . . . . . . . . . . . . . . . . A  44

Transcript of the guilty plea,
    dated June 24, 2022
    (ECF No. 148) . . . . . . . . . . . . . . . . . . . A  52

Transcript of the sentencing,
    dated March 3, 2023 . . . . . . . . . . . . . . . . A  85

Judgment in a criminal case,
    filed March 3, 2023
    (ECF No. 169) . . . . . . . . . . . . . . . . . . . A 146

Notice of appeal,
    filed March 10, 2023
    (ECF No. 170) . . . . . . . . . . . . . . . . . . . A 153

CLOSED,APPEAL,ECF,PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:20-cr-00314-GHW-1

Case title: USA v. Melzer

Date Filed: 06/22/2020

Magistrate judge case number: 1:20-mj-05884-UA

Date Terminated: 03/06/2023

Assigned to: Judge Gregory H. Woods

### Defendant (1)

**Ethan Phelan Melzer**
*TERMINATED: 03/06/2023*
*also known as*
Etil Reggad
*TERMINATED: 03/06/2023*

represented by **Jennifer Elaine Willis**
Federal Defenders of New York
52 Duane Street
New York, NY 10007
(212)-417-8743
Email: jennifer_willis@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Ariel Charlotte Werner**
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007
212-417-8700
Email: ariel_werner@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Hannah McCrea**
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, NY 10007
212-417-8724
Email: Hannah_McCrea@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Jonathan Andrew Marvinny**
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007

A000003

(212)-417-8792
Fax: (212)-571-0392
Email: jonathan_marvinny@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Sarah Jane Baumgartel**
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007
212-417-8772
Fax: 212-571-0392
Email: sarah_baumgartel@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1114.F ATTEMPTED MURDER OF U.S. SERVICE MEMBERS (4s) | IMPRISONMENT: 540 months. SUPERVISED RELEASE: 3 years. |
| 18:2339A.F PROVISION AND ATTEMPTED PROVISION OF MATERIAL SUPPORT TO TERRORISTS (5s) | IMPRISONMENT: 540 months. SUPERVISED RELEASE: 3 years. |
| 18:793.F ILLEGAL TRANSMISSION OF NATIONAL DEFENSE INFORMATION (7s) | IMPRISONMENT: 540 months. SUPERVISED RELEASE: 3 years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2332B.F CONSPIRACY TO KILL A U.S. CITIZEN (CONSPIRACY TO MURDER U. S. NATIONALS) (1) | Dismissed |
| 18:2332B.F CONSPIRACY TO MURDER U.S. NATIONALS (1s) | Dismissed |
| 18:2332B.F CONSPIRACY TO KILL A U.S. CITIZEN (ATTEMPTED MURDER OF U. S. NATIONALS) (2) | Dismissed |
| 18:2332B.F ATTEMPTED MURDER OF U.S. NATIONALS (2s) | Dismissed |

A000004

| | |
|---|---|
| 18:1117.F & 1114; 3238 CONSPIRACY TO MURDER U. S. SERVICE MEMBERS (3) | Dismissed |
| 18:1114.F CONSPIRACY TO MURDER U.S. SERVICE MEMBERS (3s) | Dismissed |
| 18:1117.F & 1114; 3238 CONSPIRACY TO MURDER (ATTEMPTED MURDER OF U. S. SERVICE MEMBERS) (4) | Dismissed |
| 18:2339B.F PROVIDING & ATTEMPTED PROVISION OF MATERIAL SUPPORT OR RESOURCES TO TERRORISTS (5) | Dismissed |
| 18:956.F & 3238 CONSPIRACY TO INJURE PROPERTY OF FOREIGN GOVERNMENT (CONSPIRACY TO MURDER AND MAIM IN A FOREIGN COUNTRY) (6) | Dismissed |
| 18:956.F CONSPIRACY TO MURDER AND MAIM IN A FOREIGN COUNTRY (6s) | Dismissed |
| 18:794.F ILLEGAL DELIVERY OF NATIONAL DEFENSE INFORMATION (8s) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:956.F -- Conspiracy to Injure Property of Foreign Government, 18:1114.F -- Protection of Officers , 18:1117.F -- Conspiracy to Murder, 18:2339A.F -- Terrorist Activity, 18:2.F -- Principals | |

---

**Plaintiff**

| **USA** | represented by | **Kimberly Jane Ravener** |
|---|---|---|
| | | U.S. Attorney's Office- Southern District of New York |
| | | One St. Andew's Plaza |
| | | New York, NY 10007 |
| | | 212-637-2358 |
| | | Fax: (212)-715-9000 |
| | | Email: kimberly.ravener@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

A000005

*Designation: Assistant US Attorney*

**Samuel S Adelsberg**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(347)-501-0979
Email: samuel.adelsberg@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Sidhardha Kamaraju**
Pryor Cashman LLP
7 Times Square 40th Floor
New York, NY 10036
212-637-0895
Email: skamaraju@pryorcashman.com
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*Designation: Assistant US Attorney*

**Matthew Jo Chamberlin Hellman**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212)-637-2278
Email: matthew.hellman@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2020 | 1 | COMPLAINT as to Ethan Phelan Melzer (1). (Signed by Magistrate Judge Stewart D. Aaron) (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/10/2020 | | Arrest of Ethan Phelan Melzer. Defendant Ethan Phelan Melzer transported here from military base in Germany, arrived on 6/10/20 in the SDNY. (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/11/2020 | 3 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE. as to Ethan Phelan Melzer. (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/11/2020 | 4 | CJA 23 Financial Affidavit by Ethan Phelan Melzer. Attorney Jennifer Willis of Federal Defenders is appointed as counsel. (Signed by Magistrate Judge Debra C. Freeman) (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/11/2020 | | Attorney update in case as to Ethan Phelan Melzer. Attorney Jennifer Elaine Willis for Ethan Phelan Melzer added. (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/11/2020 | 5 | Minute Entry for proceedings held before Magistrate Judge Debra C. Freeman:Initial Appearance as to Ethan Phelan Melzer held on 6/11/2020. Defendant Ethan Phelan Melzer present with attorney Jennifer Willis of Federal Defenders. Matthew Hellman present for the Government. Defendant is Ordered detained on consent without prejudice. |

A000006

| | | |
|---|---|---|
| | | Preliminary hearing is set for June 25, 2020. (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/11/2020 | | Set/Reset Hearings as to Ethan Phelan Melzer: Preliminary Hearing set for 6/25/2020 at 10:00 AM before Judge Unassigned. (vb) [1:20-mj-05884-UA] (Entered: 06/23/2020) |
| 06/22/2020 | 6 | INDICTMENT FILED as to Ethan Phelan Melzer (1) count(s) 1, 2, 3, 4, 5, 6. (jm) (Entered: 06/23/2020) |
| 06/22/2020 | | Case Designated ECF as to Ethan Phelan Melzer. (jm) (Entered: 06/23/2020) |
| 06/24/2020 | 7 | NOTICE OF ATTORNEY APPEARANCE Matthew Jo Chamberlin Hellman appearing for USA. (Hellman, Matthew) (Entered: 06/24/2020) |
| 06/27/2020 | 8 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated June 27, 2020 re: Scheduling of Initial Conference, Entry of Proposed Protective Order, and Exclusion of Time Under the Speedy Trial Act Document filed by USA. (Hellman, Matthew) (Entered: 06/27/2020) |
| 06/27/2020 | 10 | STIPULATED PROTECTIVE ORDER as to Ethan Phelan Melzer...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Gregory H. Woods on 6/27/20)(jw) (Entered: 06/29/2020) |
| 06/27/2020 | 11 | ORDER as to Ethan Phelan Melzer. The Court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial because it will permit the defendant and his counsel to receive and review discovery, consider the need for any potential pretrial motions, and it will permit the parties to begin discussions regarding any potential pretrial resolution of this matter. Accordingly, it is ORDERED that the time from the date of this order through AUGUST 20, 2020 is hereby excluded ( Status Conference set for 8/20/2020 at 12:00 PM before Judge Gregory H. Woods.) Time excluded from 6/27/20 until 8/20/20. (Signed by Judge Gregory H. Woods on 6/27/20)(jw) (Entered: 06/29/2020) |
| 06/29/2020 | 9 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 8 The Government respectfully submits this letter on behalf of the parties to (i) ask that the Court enter a protective order with respect to the Governments production of discovery to the defendant; (ii) request that the Court schedule an initial conference in this matter for August 17, 2020, or at a subsequent date that is convenient for the Court, and (iii) to exclude time, with the defendants consent, through the date of that conference....ENDORSEMENT...Application granted. The Court will hold a status conference in this case on August 20, 2020 at 12:00 p.m. The conference will be held in Courtroom 12C, 500 Pearl Street, New York, NY 10007. The Court will enter a separate order to exclude time through that date ( Status Conference set for 8/20/2020 at 12:00 PM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods.) (Signed by Judge Gregory H. Woods on 6/27/20)(jw) (Entered: 06/29/2020) |
| 06/29/2020 | 12 | LETTER MOTION addressed to Judge Gregory H. Woods from Jennifer E. Willis dated June 29, 2020 re: Request for access to records in connection with Master and Qualified Jury Wheels . Document filed by Ethan Phelan Melzer. (Willis, Jennifer) (Entered: 06/29/2020) |
| 06/29/2020 | 13 | SEALED DOCUMENT placed in vault. (mhe) (Entered: 06/30/2020) |
| 06/30/2020 | 14 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated June 30, 2020 re: the Government's Scheduling Requested for any Response to the Defendant's Request for Grand Jury Records Document filed by USA. (Hellman, Matthew) (Entered: 06/30/2020) |

| | | |
|---|---|---|
| 06/30/2020 | 15 | MEMO ENDORSEMENT 12 LETTER MOTION as to Ethan Phelan Melzer requests access to the records and papers used in connection with the constitution of the Master and Qualified Jury Wheels in the US District Court for the Southern District of NY....ENDORSEMENT...The US is directed to submit any response to this application no later than July 7, 2020; any reply is due no later than three days following service of the Government's response. (Signed by Judge Gregory H. Woods on 6/30/20) (jw) (Entered: 07/01/2020) |
| 06/30/2020 | | Set/Reset Deadlines/Hearings as to Ethan Phelan Melzer:Government Responses due by 7/7/2020. (jw) (Entered: 07/01/2020) |
| 07/02/2020 | 16 | MEMO ENDORSEMENT as to Ethan Phelan Melzer. With the consent of counsel for the defendant, the Government requests the Court set a deadline of July 21, 2020 for the Government to respond to the defendants June 29, 2020 letter seeking certain records relating to the selection of the grand jury that returned the indictment in this case (see Dkt. 12)...ENDORSEMENT...Application granted. The deadline for the United States to respond to the defendant's application is extended to July 21, 2020. For clarity of the record, the Court's June 30, 2020 order at Dkt. No. 15 was signed by the Court before this request from the parties was received, but it was docketed later. (Government Responses due by 7/21/2020) (Signed by Judge Gregory H. Woods on 7/2/20)(jw) (Entered: 07/02/2020) |
| 07/06/2020 | 17 | Minute Entry for proceedings held before Magistrate Judge Sarah Netburn: Arraignment as to Ethan Phelan Melzer (1) Count 1,2,3,4,5,6 held on 7/6/2020. AUSA: Matthew Hellman/Sam Adelsberg. Defense Counsel: Jennifer Willis/Jonathan Marvinny. Defendant arraigned; pleads Not Guilty. ( Plea entered by Ethan Phelan Melzer (1) Count 1,2,3,4,5,6 -- Not Guilty. ) (bw) (Entered: 07/06/2020) |
| 07/06/2020 | 18 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING by Ethan Phelan Melzer. (Accepted by Magistrate Judge Sarah Netburn on 7/6/2020) (bw) (Main Document 18 replaced on 7/6/2020) (bw). (Entered: 07/06/2020) |
| 07/06/2020 | 19 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE by Ethan Phelan Melzer. This proceeding was conducted by reliable video or telephone conferencing technology. (Signed by Magistrate Judge Sarah Netburn on 7/6/2020) (bw) (Entered: 07/06/2020) |
| 07/10/2020 | 20 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Arraignment held on 7/6/20 before Magistrate Judge Sarah Netburn. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/31/2020. Redacted Transcript Deadline set for 8/10/2020. Release of Transcript Restriction set for 10/8/2020. (mqu) (Entered: 07/10/2020) |
| 07/10/2020 | 21 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Arraignment proceeding held on 7/6/20 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (mqu) (Entered: 07/10/2020) |
| 07/21/2020 | 22 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated July 21, 2020 re: the defendant's motion for certain grand jury records. Document filed by USA. (Hellman, Matthew) (Entered: 07/21/2020) |

| | | |
|---|---|---|
| 07/22/2020 | 23 | ENDORSED LETTER as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Samuel Adelsberg, Matthew Hellman and Sidhardha Kamaraju dated 7/21/20 re: The Government requests it be allowed until July 28, 2020 to confer with defense counsel about Request 23 and submit its response. Counsel for the defendant consents to this request....ENDORSEMENT: Application denied without prejudice. The Court appreciates that the parties have largely resolved the issues raised by the defendant's application to the Court. The Court understands that the proposed resolution regarding the requests made by the defendant in this case mirrors the resolution arrived at in the Balde case with the single exception described in the parties' letter. The Court is willing to entertain proposals to formalize the parties' agreements. However, the Court cannot simply "adopt" Judge Failla's order as requested here. The order is a memorandum endorsement of a letter in that case. The letter refers to specific issues in her case, and conferences held there in which this Court did not participate. By its terms, Judge Failla's order only addresses two of the multiple requests for information described in the letter. With respect to those two requests, the order describes what "Mr. Balde" may do. It is unclear what value Mr. Meltzer will obtain from the Court's adoption of an order that, by its terms, permits Mr. Balde to obtain certain records with respect to the two requests identified in the Balde court's order. The Court appreciates the expediency of the parties' proposal, but cannot embrace it because of its lack of precision, and because it does not provide this Court with a comprehensive view of the proposed resolution of the issues in this case. The Court directs the parties to confer and to present the Court with an alternative proposal that reflects with more precision their understanding with respect to the defendant's requests in this case, and their requests to the Court. Any such proposal should be submitted to the Court no later than July 29, 2020 (Signed by Judge Gregory H. Woods on 7/22/20)(jw) (Entered: 07/22/2020) |
| 07/29/2020 | 24 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 7/29/20 re: the defendant's motion for certain grand jury records Document filed by USA. (Adelsberg, Samuel) (Entered: 07/29/2020) |
| 08/13/2020 | 25 | NOTICE OF ATTORNEY APPEARANCE Sidhardha Kamaraju appearing for USA. (Kamaraju, Sidhardha) (Entered: 08/13/2020) |
| 08/13/2020 | 26 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 24 Letter filed by USA requesting that the Court defer ruling on this matter until the defendant is able to review the records produced by the Jury Administrator. Once the defendant is able to review these materials, he will alert the Court as to whether he is still seeking the materials at issue in Request 23...ENDORSEMENT...Application granted in part and denied in part. The Court understands that neither party is currently seeking a ruling from the Court on Request 23, as described in the defendant's June 29, 2020 application, Dkt. No. 12. The Court understands that the defendant's review of the other materials to be produced may lead the defendant not to seek the information requested in Request 23. As a result, the Court denies the parties' request to "defer" adjudication of that request. Rather than deferring adjudication of an issue that neither party currently wishes for the Court to resolve, and that may ultimately not be pursued by the defendant, the Court is establishing a different default rule, namely that the issues raised in the defendant's June 29, 2020 application have been resolved. If the defendant wishes to request a ruling on the issue previously raised in Request 23, the defendant should make a separate motion to the Court with respect to that issue (Signed by Judge Gregory H. Woods on 8/13/20)(jw) (Entered: 08/14/2020) |
| 08/14/2020 | 27 | LETTER MOTION addressed to Judge Gregory H. Woods from Jennifer E. Willis dated August 14, 2020 re: Request for remote conference . Document filed by Ethan Phelan Melzer. (Willis, Jennifer) (Entered: 08/14/2020) |

| | | |
|---|---|---|
| 08/18/2020 | 28 | MEMO ENDORSEMENT as to Ethan Phelan Melzer (1) granting 27 LETTER MOTION addressed to Judge Gregory H. Woods from Jennifer E. Willis dated August 14, 2020 re: Request for remote conference. ENDORSEMENT: Application granted. The conference scheduled for August 20, 2020 is adjourned to August 31, 2020 at 9:00 a.m. and will be conducted via remote means through CourtCall. An order excluding time under the Speedy Trial Act will be entered separately. (Signed by Judge Gregory H. Woods on 8/18/2020) (ap) (Entered: 08/18/2020) |
| 08/18/2020 | | Set/Reset Hearings as to Ethan Phelan Melzer: Status Conference set for 8/31/2020 at 09:00 AM before Judge Gregory H. Woods. (ap) (Entered: 08/18/2020) |
| 08/18/2020 | 29 | ORDER as to Ethan Phelan Melzer. ORDERED that the pretrial conference in this case is continued from August 20, 2020 to August 31, 2020 at 9:00 a.m. The Court finds that the ends of justice served by granting a continuance outweigh the best interests of the public and the defendant in a speedy trial because it will permit the defendant and his counsel additional time to review discovery. Accordingly, it is further ORDERED that the time from the date of this order through August 31, 2020 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). Time excluded from 8/18/2020 until 8/31/2020. (Signed by Judge Gregory H. Woods on 8/18/2020) (ap) (Entered: 08/18/2020) |
| 08/18/2020 | 31 | (S1) SUPERSEDING INDICTMENT FILED as to Ethan Phelan Melzer (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s. (jbo) (Entered: 08/19/2020) |
| 08/19/2020 | 30 | NOTICE OF ATTORNEY APPEARANCE: Jonathan Andrew Marvinny appearing for Ethan Phelan Melzer. Appearance Type: Public Defender or Community Defender Appointment. (Marvinny, Jonathan) (Entered: 08/19/2020) |
| 08/31/2020 | 32 | ORDER as to Ethan Phelan Melzer. The conference scheduled for August 31, 2020, is hereby RESCHEDULED to occur as a video/teleconference using the CourtCall platform on September 9, 2020, at 9:00 a.m. As requested, defense counsel will be given an opportunity to speak with the Defendant by telephone for fifteen minutes before the sentencing proceeding begins (i.e., at 8:45 a.m.); defense counsel should make sure to answer the telephone number that the Court understands to have been previously provided to Chambers at that time. To optimize the quality of the video feed, the Court, the Defendant, and defense counsel will appear by video for the proceeding; all others will participate by telephone. Due to the limited capacity of the CourtCall system, only one counsel per party may participate. Co-counsel, members of the press, and the public may access the audio feed of the conference by calling 855-268-7844 and using access code 32091812# and PIN 9921299#( Status Conference set for 9/9/2020 at 09:00 AM before Judge Gregory H. Woods.). (Signed by Judge Gregory H. Woods on 8/31/2020) (jw) (Entered: 08/31/2020) |
| 08/31/2020 | 33 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated August 31, 2020 re: Conference Date and Exclusion of Time Under Speedy Trial Act Document filed by USA. (Hellman, Matthew) (Entered: 08/31/2020) |
| 08/31/2020 | 34 | ORDER as to Ethan Phelan Melzer. The Court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial because it will permit the conference to be conducted as a video/teleconference as requested by the defendant, and to allow the defendant and his counsel to continue to receive and review discovery, and consider the need for any potential pretrial motions. Accordingly, it is ORDERED that the time from August 31, 2020 through September 9, 2020 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161 (h)(7)(A). Time excluded from 8/31/2020 until 9/9/2020. (Signed by Judge Gregory H. Woods on 8/31/2020)(jw) (Entered: 09/01/2020) |

A000010

| 09/03/2020 | | MEMORANDUM TO THE DOCKET CLERK: as to Ethan Phelan Melzer. The conference in this matter scheduled for September 9, 2020 will be held at 10:30 a.m., and will be conducted via teleconference. The parties are directed to consult the Court's Emergency Rules in Light of COVID-19, which are available on the Court's website, for dial-in information and other instructions. (ap) (Entered: 09/04/2020) |
|---|---|---|
| 09/03/2020 | | Set/Reset Hearings as to Ethan Phelan Melzer: Status Conference set for 9/9/2020 at 10:30 AM before Judge Gregory H. Woods. (ap) (Entered: 09/04/2020) |
| 09/08/2020 | 35 | ORDER as to Ethan Phelan Melzer. The conference scheduled for September 9, 2020 at 10:30 a.m. will be conducted by teleconference. The parties are directed to use the following dial-in information to access the conference: (888) 557-8511; Access Code: 7470200. The parties are directed to the Court's Emergency Rules and Practices in Light of COVID-19, which are available on the Court's webpage. The parties are specifically directed to comply with Rule 2(C) of those rules. SO ORDERED. (Signed by Judge Gregory H. Woods on 9/8/2020)(jbo) (Entered: 09/08/2020) |
| 09/09/2020 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Arraignment as to Ethan Phelan Melzer (1) Count 1s,2s,3s,4s,5s,6s,7s,8s held on 9/9/2020. Defendant Ethan Phelan Melzer (in custody) present with appointed counsel, Jennifer Willis and Jonathan Marvinny, Esqs. of the Federal Defenders of New York, Inc. AUSAs Matthew Hellman, Samuel S. Adelsberg and Sidhardha Kamaraju present. Court Reporter Mike McDaniel present. Arraignment held. Defendant is arraigned on S1 20-cr-314-GHW superseding indictment. Defendant waived the detailed reading of the indictment and enters a plea of Not Guilty to counts 1, 2, 3, 4, 5, 6, 7 and 8. Most discovery produced. Additional discovery will be produced to the defendant by next Friday, and on a rolling basis thereafter. Defense requests a 90 day adjournment to continue to receive and review discovery. Application granted. Next status conference will be held on December 9, 2020 at 9:00 am (remotely). The time between today and December 9, 2020 is excluded under the Speedy Trial Act in the interest of justice. Defendant continued detained. (bw) Modified on 9/10/2020 (Daniels, Anthony). (Entered: 09/09/2020) |
| 09/09/2020 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Plea entered by Ethan Phelan Melzer (1) Count 1s,2s,3s,4s,5s,6s,7s,8s -- Not Guilty. (bw) (Entered: 09/09/2020) |
| 09/09/2020 | | ORAL ORDER as to Ethan Phelan Melzer. Time excluded from 9/9/2020 until 12/9/2020. Status Conference set for 12/9/2020 at 09:00 AM before Judge Gregory H. Woods. (bw) (Entered: 09/09/2020) |
| 09/11/2020 | 36 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated September 11, 2020 re: CIPA and the Government's Classified Discovery Production Document filed by USA. (Hellman, Matthew) (Entered: 09/11/2020) |
| 11/16/2020 | 37 | MOTION to Dismiss . Document filed by Ethan Phelan Melzer. (Willis, Jennifer) (Entered: 11/16/2020) |
| 11/16/2020 | 38 | MEMORANDUM in Support by Ethan Phelan Melzer re 37 MOTION to Dismiss .. (Attachments: # 1 Exhibit Exhibit A)(Willis, Jennifer) (Entered: 11/16/2020) |
| 11/17/2020 | 39 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated November 17, 2020 re: Proposed Briefing Schedule Regarding Defendant's Motion to Dismiss the Indictment Document filed by USA. (Hellman, Matthew) (Entered: 11/17/2020) |
| 11/17/2020 | 40 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 39 LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated November 17, 2020 re: Proposed Briefing Schedule Regarding Defendant's Motion to Dismiss the |

| | | |
|---|---|---|
| | | Indictment. ENDORSEMENT: Application granted in part. The deadline for the Government to respond to Defendant's motion to dismiss is December 30, 2020. Defendant's reply, if any, is due no later than January 13, 2021. In addition, Defendant is directed to submit a supplemental report by Mr. Martin that details the bases for the facts asserted and the opinions proffered no later than November 24, 2020. Mr. Martin's November 13, 2020 declaration does not cite to the sources of the data used by the expert to support his conclusions, and does not describe the methodology used to reach the opinions rendered. That information will be useful for the Court in evaluating the motion. SO ORDERED. (Responses due by 12/30/2020. Replies due by 1/13/2021.) (Signed by Judge Gregory H. Woods on 11/17/2020) (lnl) (Entered: 11/18/2020) |
| 11/22/2020 | 41 | MOTION for Protective Order . Document filed by USA as to Ethan Phelan Melzer. (Attachments: # 1 Text of Proposed Order CIPA Protective Order, # 2 Exhibit CISO Nomination Letter)(Adelsberg, Samuel) (Entered: 11/22/2020) |
| 11/23/2020 | 42 | MEMO ENDORSEMENT denying without prejudice 41 Motion filed by USA for Protective Order as to Ethan Phelan Melzer (1). ENDORSEMENT: Application denied without prejudice. The proposed order includes factual findings by the Court that are not supported by a sworn declaration or other evidence. See, e.g., 11, 12, 19, as to which the Court has not received the referenced advice or information. In addition, paragraph 10 of the proposed order references the appointment of Mr. Hartenstine as the CISO. The Court requests that the United States provide the Court with a form order to implement that appointment. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 41. SO ORDERED. (Signed by Judge Gregory H. Woods on 11/23/2020) (bw) (Entered: 11/24/2020) |
| 11/24/2020 | 43 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jennifer E. Willis dated November 24, 2020 re: Response to Court Order Dated November 17, 2020 (Willis, Jennifer) (Entered: 11/24/2020) |
| 11/25/2020 | 44 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated November 25, 2020 re: CIPA Protective Order and CISO Appointment Document filed by USA. (Attachments: # 1 AUSA Affirmation, # 2 Ex. A to AUSA Affirmation, # 3 Proposed Order Implementing CISO Appointment)(Adelsberg, Samuel) (Entered: 11/25/2020) |
| 11/25/2020 | 45 | ORDER as to Ethan Phelan Melzer: IT IS HEREBY ORDERED THAT Mr. Hartenstine is hereby appointed as CISO for this action; and IT IS FURTHER ORDERED THAT Mr. Mullery, Ms. Peterson, Ms. Rodriguez-Feo, Mr. Rucker, and Mr. Slade are appointed as alternative CISOs in this matter, in the event Mr. Hartenstine is not available to discharge his duties. (Signed by Judge Gregory H. Woods on 11/25/2020) (ap) Modified on 12/3/2020 (ap). (Entered: 11/30/2020) |
| 11/25/2020 | 46 | PROTECTIVE ORDER PERTAINING TO CLASSIFIED INFORMATION as to Ethan Phelan Melzer...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Gregory H. Woods on 11/25/2020) (ap) (Entered: 11/30/2020) |
| 12/03/2020 | 47 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 12/3/20 re: Joint Request to Adjourn Conference Document filed by USA. (Attachments: # 1 Text of Proposed Order Proposed Speedy Trial Act Exclusion Order)(Adelsberg, Samuel) (Entered: 12/03/2020) |
| 12/03/2020 | 48 | ORDER as to Ethan Phelan Melzer: the conference in this case scheduled for December 9, 2020 is rescheduled to occur on February 17, 2021 at 11:00 a.m. The Court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial because it will permit the defendant and his |

| | | |
|---|---|---|
| | | counsel to review discovery and consider the need for any potential pretrial motions. Accordingly, it is ORDERED that the time from December 9, 2020 through February 17, 2021 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). SO ORDERED. (Status Conference set for 2/17/2021 at 11:00 AM before Judge Gregory H. Woods) (Time excluded from 12/9/2020 until 2/17/2021) (Signed by Judge Gregory H. Woods on 12/3/2020) (lnl) (Entered: 12/08/2020) |
| 12/30/2020 | 49 | MEMORANDUM in Opposition by USA as to Ethan Phelan Melzer re 37 MOTION to Dismiss .. (Attachments: # 1 Exhibit Affidavit of Dr. Bernard R. Siskin)(Adelsberg, Samuel) (Entered: 12/30/2020) |
| 01/13/2021 | 50 | REPLY MEMORANDUM OF LAW in Support as to Ethan Phelan Melzer re: 37 MOTION to Dismiss . . (Attachments: # 1 Exhibit Exhibit A)(Willis, Jennifer) (Entered: 01/13/2021) |
| 02/12/2021 | 51 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 2/12/21 re: Exclusion of Time Under the Speedy Trial Act Document filed by USA. (Attachments: # 1 Text of Proposed Order Proposed Speedy Trial Act Exclusion Order)(Adelsberg, Samuel) (Entered: 02/12/2021) |
| 02/16/2021 | 52 | ORDER as to Ethan Phelan Melzer: The conference scheduled for February 17, 2021 is rescheduled to February 22, 2021 at 9:00 a.m. The conference will take place by telephone. Members of the public who wish to audit the proceeding may do so using the following dial-in information: (888) 557-8511; Access Code: 7470200#. SO ORDERED. (Status Conference set for 2/22/2021 at 09:00 AM before Judge Gregory H. Woods) (Signed by Judge Gregory H. Woods on 2/13/2021) (lnl) (Entered: 02/16/2021) |
| 02/16/2021 | 53 | ORDER as to Ethan Phelan Melzer: it is ORDERED that the time from February 17, 2021 through February 22, 2021 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). SO ORDERED. (Time excluded from 2/17/2021 until 2/22/2021) (Signed by Judge Gregory H. Woods on 2/13/2021) (lnl) (Entered: 02/16/2021) |
| 02/22/2021 | 54 | ORDER as to Ethan Phelan Melzer. This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Governments disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged. (Signed by Judge Gregory H. Woods on 2/22/21)(jw) (Entered: 02/22/2021) |
| 02/22/2021 | 55 | WAIVER OF RIGHT TO BE PRESENT AT CRIMINAL PROCEEDING as to Ethan Phelan Melzer. (Signed by Judge Gregory H. Woods on 2/22/21)(jbo) (Entered: 02/22/2021) |
| 02/22/2021 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Status Conference as to Ethan Phelan Melzer held on 2/22/2021. Defendant Ethan P. Melzer (in custody) present with attorneys Jennifer E. Willis and Jonathan A. Marvinny. AUSAs Samuel S. Adelsberg, Sidhardha Kamaraju and Matthew Hellman present. Court Reporter Sonya Moore present. All parties in attendance participated remotely by telephone. The Defendant knowingly and voluntarily consented to appear by remote means. Status conference held. The next status conference is scheduled for July 26, 2021 at 10:00 a.m. The parties are directed to confer and to jointly submit a letter to the Court with a status update no later than May 24, 2021. Time is excluded in the interests of justice from |

A000013

| | | |
|---|---|---|
| | | February 22, 2021 until July 26, 2021. Detention continued. (Status Conference set for 7/26/2021 at 10:00 AM before Judge Gregory H. Woods) (lnl) (Entered: 02/23/2021) |
| 02/23/2021 | 56 | ORDER as to Ethan Phelan Melzer. Defendant's initial set of motions are due no later than May 24, 2021. The Government's oppositions are due no later than 30 days following service of the motions. Defendant's replies, if any, are due no later than 14 days following service of the oppositions; The Governments anticipated motion under Section 4 of the Classified Information Procedures Act (CIPA), is due no later than June 23, 2021; The parties are directed to submit a joint letter to the Court regarding next steps for Defendant's anticipated second set of motions, by no later than May 24, 2021; and The Court will hold a status conference and, if necessary, a hearing on any of the parties motions, on July 26, 2021 at 10:00 a.m. ( Motions due by 5/24/2021., Status Conference set for 7/26/2021 at 10:00 AM before Judge Gregory H. Woods.) (Signed by Judge Kimba M. Wood on 2/23/2021)(jw) (Entered: 02/23/2021) |
| 02/26/2021 | 57 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Conference held on 2/22/21 before Judge Gregory H. Woods. Court Reporter/Transcriber: Sonya Ketter Moore, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/19/2021. Redacted Transcript Deadline set for 3/29/2021. Release of Transcript Restriction set for 5/27/2021. (McGuirk, Kelly) (Entered: 02/26/2021) |
| 02/26/2021 | 58 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Conference proceeding held on 2/22/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/26/2021) |
| 03/15/2021 | 59 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Conference held on 2/22/21 before Judge Gregory H. Woods. Court Reporter/Transcriber: Sonya Ketter Moore, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/5/2021. Redacted Transcript Deadline set for 4/15/2021. Release of Transcript Restriction set for 6/14/2021. (McGuirk, Kelly) (Entered: 03/15/2021) |
| 03/15/2021 | 60 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Conference proceeding held on 2/22/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/15/2021) |
| 05/11/2021 | 61 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated May 11, 2021 re: Supplemental Letter Regarding the Defendant's Motion to Dismiss Document filed by USA. (Hellman, Matthew) (Entered: 05/11/2021) |
| 05/12/2021 | 62 | ENDORSED LETTER as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Samuel Adelsberg / Matthew Hellman / Sidhardha Kamaraju, dated May 11, 2021 re: The Government respectfully writes to bring the Court's attention to a recent decision by Judge Crotty in United States v. Schulte, 17 Cr. 548 (PAC), which is attached hereto as Exhibit 1 ("Schulte Op."). ENDORSEMENT: The Court appreciates the supplemental authority submitted by the Government. The Court understands that Mr. |

A000014

| | | |
|---|---|---|
| | | Melzer first arrived in the Southern District of New York on June 10, 2020. By no later than May 19, 2021, the Government is directed to provide the Court with additional facts regarding Mr. Melzer's entry into the District, including what airport Mr. Melzer landed in, if applicable. SO ORDERED. (Signed by Judge Gregory H. Woods on 5/12/2021)(bw) (Entered: 05/13/2021) |
| 05/19/2021 | 63 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated May 19, 2021 re: the Defendant's Entry Into the Southern District of New York Document filed by USA. (Hellman, Matthew) (Entered: 05/19/2021) |
| 05/24/2021 | 64 | MOTION to Dismiss . Document filed by Ethan Phelan Melzer. (Baumgartel, Sarah) (Entered: 05/24/2021) |
| 05/24/2021 | 65 | MEMORANDUM in Support by Ethan Phelan Melzer re 64 MOTION to Dismiss .. (Baumgartel, Sarah) (Entered: 05/24/2021) |
| 05/24/2021 | 66 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jennifer E. Willis dated May 24, 2021 re: Court order 2/23/2021 (Willis, Jennifer) (Entered: 05/24/2021) |
| 06/03/2021 | 67 | LETTER MOTION addressed to Judge Gregory H. Woods from USA dated 6/3/2021 re: Request to Terminate Attorney Appearance . Document filed by USA as to Ethan Phelan Melzer. (Kamaraju, Sidhardha) (Entered: 06/03/2021) |
| 06/04/2021 | 68 | MEMO ENDORSEMENT as to Ethan Phelan Melzer (1)granting 67 LETTER MOTION addressed to Judge Gregory H. Woods from USA dated 6/3/2021 re: Request to Terminate Attorney Appearance. ENDORSEMENT: Application granted. The Clerk of Court is directed to terminate Sidhardha Kamaraju from the list of active counsel in this case. The Clerk of Court is further directed to terminate the motion pending at Dkt. No. 67. (Signed by Judge Gregory H. Woods on 6/3/2021) (ap) (Entered: 06/04/2021) |
| 06/17/2021 | 69 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 06/17/21 re: Request for Extension of Time to File CIPA Section Four Motion Document filed by USA. (Adelsberg, Samuel) (Entered: 06/17/2021) |
| 06/17/2021 | 70 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 69 As the Court is aware, the Government's anticipated Classified Information Procedures Act ("CIPA") submission in this matter is currently due by June 23, 2021. The Second Circuit has held that to protect classified information from disclosure through a CIPA motion, the Government must invoke the "state secrets" privilege, a process that requires the Government to coordinate with various components of both the Department of Justice and other U.S. Government agencies. Accordingly, the Government respectfully requests that the Court extend the date for its CIPA motion until July 21, 2021. The Government has notified the defense of this application, and the defense consents to the proposed extension...ENDORSEMENT...Application granted. The deadline for the Government to submit its CIPA motion is extended to July 21, 2021. (Signed by Judge Gregory H. Woods on 6/17/2021)(jw) (Entered: 06/17/2021) |
| 06/24/2021 | 71 | MEMORANDUM in Opposition by USA as to Ethan Phelan Melzer re 64 MOTION to Dismiss .. (Adelsberg, Samuel) (Entered: 06/24/2021) |
| 07/07/2021 | 72 | REPLY MEMORANDUM OF LAW in Support as to Ethan Phelan Melzer re: 64 MOTION to Dismiss . . (Marvinny, Jonathan) (Entered: 07/07/2021) |
| 07/14/2021 | 73 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jennifer E. Willis dated July 14, 2021 re: Supplemental Letter Regarding First Defense Motion to Dismiss (Willis, Jennifer) (Entered: 07/14/2021) |

| 07/21/2021 | 74 | ORDER as to Ethan Phelan Melzer. The conference scheduled for July 26, 2021 at 10:00 a.m. is scheduled to take place in Courtroom 12C of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York 10007. SO ORDERED (Signed by Judge Gregory H. Woods on 7/21/21)(jw) (Entered: 07/21/2021) |
|---|---|---|
| 07/21/2021 | 75 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated July 21, 2021 re: CIPA Submission Document filed by USA. (Adelsberg, Samuel) (Entered: 07/21/2021) |
| 07/22/2021 | 76 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated July 22, 2021 re: Government's Response to Defendant's Supplemental Letter Regarding First Defense Motion to Dismiss (Dkt. #73) Document filed by USA. (Attachments: # 1 Exhibit Transcript of Decision)(Hellman, Matthew) (Entered: 07/22/2021) |
| 07/26/2021 | 77 | ORDER as to Ethan Phelan Melzer. Trial in this matter will commence at 9:00 a.m. on April 25, 2022. The pretrial materials required by Rule 6 of the Court's Individual Rules of Practice in Criminal Cases, including motions in limine, are due no later than February 1, 2022. If any motions in limine are filed, opposition papers are due no later than seven days after the date of service of the motion. Reply papers, if any, are due no later than four days after the date of service of the opposition. Courtesy copies of motions in limine should be submitted when the motions are fully briefed. The Court will hold a final pretrial conference in this matter on March 24, 2022 at 2:00 p.m..... (Jury Trial set for 4/25/2022 at 09:00 AM before Judge Gregory H. Woods. Pretrial Conference set for 3/24/2022 at 02:00 PM before Judge Gregory H. Woods.) (Signed by Judge Gregory H. Woods on 7/26/21)(jbo) (Entered: 07/26/2021) |
| 07/26/2021 |  | Minute Entry for proceedings held before Judge Gregory H. Woods:Motion Hering as to Ethan Phelan Melzer held on 7/26/2021. Defendant Ethan P. Melzer (in custody) present with attorneys Jennifer E. Willis, Jonathan A. Marvinny and Sarah J. Baumgartel. AUSAs Samuel S. Adelsberg, and Matthew Hellman present. Court Reporter Lisa Franco present. Motion hearing held. A jury trial is scheduled for April 25, 2022. Time is excluded in the interests of justice from July 26, 2021 until April 25, 2022. Detention continued. See Transcript (jw) (Entered: 07/29/2021) |
| 07/30/2021 | 78 | PROTECTIVE ORDER WITH RESPECT TO CERTAIN DISCOVERY as to Ethan Phelan Melzer...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Gregory H. Woods on 7/30/2021) (ap) (Entered: 07/30/2021) |
| 09/12/2021 | 79 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Hearing held on 7/26/2021 before Judge Gregory H. Woods. Court Reporter/Transcriber: Lisa Picciano Franko, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/4/2021. Redacted Transcript Deadline set for 10/13/2021. Release of Transcript Restriction set for 12/13/2021. (Moya, Goretti) (Entered: 09/12/2021) |
| 09/12/2021 | 80 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Hearing proceeding held on 7/26/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 09/12/2021) |

A000016

| | | |
|---|---|---|
| 10/15/2021 | 81 | ORDER as to Ethan Phelan Melzer: Mr. Melzer's motion to dismiss Count VI of the Indictment is denied. For the reasons discussed on the record during the July 26, 2021 conference, Mr. Melzer's remaining pretrial applications are denied. The Clerk of Court is ordered to terminate the motions pending at Dkt. Nos. 37 and 64. (Signed by Judge Gregory H. Woods on 10/14/2021) (See ORDER set forth) (ap) (Entered: 10/15/2021) |
| 11/03/2021 | 82 | NOTICE OF ATTORNEY APPEARANCE: Hannah McCrea appearing for Ethan Phelan Melzer. Appearance Type: Public Defender or Community Defender Appointment. (McCrea, Hannah) (Entered: 11/03/2021) |
| 12/17/2021 | 83 | NOTICE OF ATTORNEY APPEARANCE: Ariel Charlotte Werner appearing for Ethan Phelan Melzer. Appearance Type: Public Defender or Community Defender Appointment. (Werner, Ariel) (Entered: 12/17/2021) |
| 02/01/2022 | 84 | Proposed Jury Instructions by Ethan Phelan Melzer. (Baumgartel, Sarah) (Entered: 02/01/2022) |
| 02/01/2022 | 85 | LETTER MOTION addressed to Judge Gregory H. Woods from Sarah Baumgartel dated Feb. 1, 2022 re: Proposed verdict form . Document filed by Ethan Phelan Melzer. (Baumgartel, Sarah) (Entered: 02/01/2022) |
| 02/01/2022 | 86 | Proposed Voir Dire Questions by Ethan Phelan Melzer. (Baumgartel, Sarah) (Entered: 02/01/2022) |
| 02/01/2022 | 87 | Proposed Voir Dire Questions by USA as to Ethan Phelan Melzer. (Hellman, Matthew) (Entered: 02/01/2022) |
| 02/01/2022 | 88 | Request To Charge by USA as to Ethan Phelan Melzer. (Hellman, Matthew) (Entered: 02/01/2022) |
| 02/01/2022 | 89 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated February 1, 2022 re: Parties' Joint Proposed Factual Summary and Brief Recitation of Law for Jurors Document filed by USA. (Hellman, Matthew) (Entered: 02/01/2022) |
| 02/01/2022 | 90 | MOTION in Limine . Document filed by USA as to Ethan Phelan Melzer. (Hellman, Matthew) (Entered: 02/01/2022) |
| 02/01/2022 | 91 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated February 1, 2022 re: Proposed Verdict Form Document filed by USA. (Hellman, Matthew) (Entered: 02/01/2022) |
| 02/01/2022 | 92 | MOTION for Bill of Particulars ., MOTION in Limine . Document filed by Ethan Phelan Melzer. (Attachments: # 1 Exhibit A: Marvinny Decl., # 2 Exhibit B: Valle decision, # 3 Exhibit C: Expert notice, # 4 Exhibit D: Dr. Simi CV, # 5 Exhibit E: Def. Letr., # 6 Exhibit F: Sup. expert notice, # 7 Exhibit G: SITE article)(Marvinny, Jonathan) (Entered: 02/01/2022) |
| 02/08/2022 | 93 | MEMORANDUM in Opposition by Ethan Phelan Melzer re 90 MOTION in Limine .. (Marvinny, Jonathan) (Entered: 02/08/2022) |
| 02/08/2022 | 94 | MEMORANDUM in Opposition by USA as to Ethan Phelan Melzer re 92 MOTION for Bill of Particulars . MOTION in Limine .. (Attachments: # 1 Exhibit Online Moniker Index, # 2 Exhibit Initial Expert Disclosure, # 3 Exhibit Dr. Simi CV, # 4 Exhibit Supplemental Expert Disclosure)(Adelsberg, Samuel) (Entered: 02/08/2022) |
| 02/10/2022 | 95 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated February 10, 2022 re: Joint Request to Adjourn Deadline for Replies to |

A000017

| | | |
|---|---|---|
| | | Oppositions to Motions in limine Document filed by USA. (Hellman, Matthew) (Entered: 02/10/2022) |
| 02/10/2022 | 96 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 95 The parties write jointly to request a brief adjournment of the filing deadline for the parties' replies to oppositions to motions in limine in this case. As the Court is aware, trial in this matter is presently scheduled to begin on or about April 25, 2022...ENDORSEMENT...The parties' joint request for an adjournment of the deadlines for the parties to file their respective replies to the oppositions to motions in limine is granted. The parties' replies are due no later than February 18, 2022 (Replies due by 2/18/2022.) (Signed by Judge Gregory H. Woods on 2/10/22)(jw) (Entered: 02/10/2022) |
| 02/11/2022 | 97 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated February 11, 2022 re: Joint Request to Adjourn Trial Document filed by USA. (Attachments: # 1 Exhibit Proposed Speedy Trial Act Order)(Hellman, Matthew) (Entered: 02/11/2022) |
| 02/18/2022 | 98 | REPLY MEMORANDUM OF LAW in Support as to Ethan Phelan Melzer re: 92 MOTION for Bill of Particulars . MOTION in Limine . . (Marvinny, Jonathan) (Entered: 02/18/2022) |
| 02/18/2022 | 99 | REPLY MEMORANDUM OF LAW in Support by USA as to Ethan Phelan Melzer re: 90 MOTION in Limine . . (Hellman, Matthew) (Entered: 02/18/2022) |
| 03/03/2022 | 100 | ORDER as to Ethan Phelan Melzer. On July 26, 2021, the Court scheduled trial in this matter for April 25, 2022. The trial will now begin on April 19, 2022. This is the first priority trial for that day. Trial will take place in a courtroom to be determined in the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York, 10007. All other deadlines laid out in the Courts July 26, 2021 order remain in effect. SO ORDERED. (Signed by Judge Gregory H. Woods on 3/3/2022)(bw) (Entered: 03/03/2022) |
| 03/03/2022 | 101 | JOINT LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny dated March 3, 2022 re: Adjourn trial . Document filed by Ethan Phelan Melzer. (Marvinny, Jonathan) (Entered: 03/03/2022) |
| 03/04/2022 | 102 | ORDER 101 JOINT LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny dated March 3, 2022 re: Adjourn trial. The parties' March 3, 2022 request for an adjournment of the trial in this case, which was previously scheduled to begin on April 19, 2022, is granted. Trial will commence at 9:00 a.m. on July 5, 2022. The Court will hold a final pretrial conference in this matter on April 29, 2022 at 10:00 a.m. The other deadlines in the Courts July 21, 2022 order remain in effect. The final pretrial conference will be held in Courtroom 12C of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York 10007. The trial will be held in a courtroom to be determined in the Daniel Patrick Moynihan U.S. Courthouse (Signed by Judge Gregory H. Woods on 3/4/22) (jw) (Entered: 03/07/2022) |
| 03/04/2022 | | Set/Reset Deadlines/Hearings as to Ethan Phelan Melzer: Jury Trial set for 7/5/2022 at 09:00 AM before Judge Gregory H. Woods. Pretrial Conference set for 4/29/2022 at 10:00 AM before Judge Gregory H. Woods (jw) (Entered: 03/07/2022) |
| 03/04/2022 | 103 | ORDER as to Ethan Phelan Melzer. It is hereby ORDERED that the trial in this case is continued from April 19, 2022, to July 5, 2022, at 9:00 am. The Court finds that the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in a speedy trial because it will allow the defendant and his counsel to continue to receive and review discovery and prepare for trial in this case. Accordingly, it |

| | | |
|---|---|---|
| | | is further ORDERED that the time from April 19, 2022, to July 5, 2022 is hereby excluded under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A). Time excluded from 4/19/22 until 7/5/22. (Signed by Judge Gregory H. Woods on 3/4/22)(jw) (Entered: 03/07/2022) |
| 04/11/2022 | 104 | ORDER as to Ethan Phelan Melzer. The final pretrial conference in this matter currently scheduled for April 29, 2022 is adjourned to May 4, 2022 at 10:00 a.m. The other deadlines in the Court's March 4, 2022 order remain in effect. The final pretrial conference will be held in Courtroom 12C of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York 10007. SO ORDERED. (Pretrial Conference set for 5/4/2022 at 10:00 AM before Judge Gregory H. Woods.) (Signed by Judge Gregory H. Woods on 4/11/22)(jbo) (Entered: 04/11/2022) |
| 04/20/2022 | 105 | ORDER as to Ethan Phelan Melzer: The Court is currently reviewing the parties' motions in limine. The Court requests that the parties hold May 24, 2022 at 10:00 a.m. for a Daubert hearing to address Defendant's motion to exclude the testimony of Dr. Peter Simi. The Court will confirm whether a Daubert hearing is necessary at the final pre-trial conference currently scheduled for May 4, 2022. Should a Daubert hearing take place, it will be held in Courtroom 12C of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse at 500 Pearl Street, New York, New York 10007 (Daubert Hearing set for 5/24/2022 at 10:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods) (Signed by Judge Gregory H. Woods on 4/20/2022) (ap) (Entered: 04/21/2022) |
| 05/04/2022 | 106 | ORDER as to Ethan Phelan Melzer: For the reasons stated on the record, the Government's motions in limine are granted in part and denied in part. The Court determines that, based on the information currently available, the probative value of the materials referred to by the Government as the "ihadist Materials" and the "O9A Materials" is not substantially outweighed by risk of unfair prejudice or the other concerns articulated in Federal Rule of Evidence 403. The Court also determines that, at this point, it is likely that the Government will be able to prove by a preponderance of the evidence that a conspiracy existed between Defendant, CC-1, and CC-3 as required to admit their statements pursuant to Federal Rule of Evidence 801(d). However, the Government has not provided a sufficient basis to admit statements by CC-1 and CC-3 as statements against interest under Federal Rule of Evidence 804(b)(3). At this point, the Court will not preclude, under Federal Rule of Evidence 403, the admission of Defendant's statement regarding his lack of patriotism made to Individual-1. The Court will also refer the military base described in the parties' briefs as the "Military Base" at trial, and will prevent the disclosure of the jurors' names and other identifying information to the public. As further discussed during the pretrial conference, the parties are directed to submit a joint letter setting forth their positions as to whether the use of a jury questionnaire would be appropriate and preferable in this case no later than May 13, 2022. In that letter, the parties should also indicate whether there are any issues regarding the phrasing or scope of the proposed voir dire questions to be provided by the Court. Further, as discussed during the conference, the parties are ordered to meet and confer and submit any proposed limiting instructions to the Court no later than June 3, 2022. If the parties cannot agree on any particular limiting instruction, they should submit a joint letter along with that submission setting forth their respective positions. In addition, and as discussed during the conference, no later than June 21, 2022, the parties are ordered to submit a joint letter setting forth their respective positions regarding any statements that the Defendant seeks to admit pursuant to the rule of completeness. If there is no disagreement regarding the statements Defendant seeks to admit pursuant to that rule, the parties need not file a joint letter. The Clerk of Court is directed to terminate the |

| | | |
|---|---|---|
| | | motions pending at Dkt. Nos. 85, 90, and 92. SO ORDERED. (Signed by Judge Gregory H. Woods on 5/4/2022) (lnl) (Entered: 05/04/2022) |
| 05/04/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods: (Final) Pretrial Conference as to Ethan Phelan Melzer held on 5/4/2022. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny and Hannah McCrea. AUSAs Samuel S. Adelsberg and Matthew Hellman present. Court Reporter Michael McDaniel present. Final pretrial conference held. Detention continued. See Transcript. (jbo) (Entered: 05/05/2022) |
| 05/12/2022 | 107 | NOTICE OF ATTORNEY APPEARANCE Kimberly Jane Ravener appearing for USA. (Ravener, Kimberly) (Entered: 05/12/2022) |
| 05/13/2022 | 108 | JOINT LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Samuel Adelsberg, Matthew Hellman, and Kimberly Ravener dated May 13, 2022 re: Proposed Voir Dire Document filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ravener, Kimberly) (Entered: 05/13/2022) |
| 05/18/2022 | 109 | NOTICE of of Intent to Disclose Classified Material as to Ethan Phelan Melzer (Werner, Ariel) (Entered: 05/18/2022) |
| 05/19/2022 | 110 | ORDER as to Ethan Phelan Melzer. The Court will discuss the parties' May 13, 2022 letter setting forth their respective positions regarding the Court's proposed voir dire questions at the Daubert hearing scheduled for May 24, 2022. SO ORDERED. (Signed by Judge Gregory H. Woods on 5/19/2022)(bw) (Entered: 05/19/2022) |
| 05/19/2022 | 111 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Conference held on 5/4/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Michael McDaniel, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/9/2022. Redacted Transcript Deadline set for 6/21/2022. Release of Transcript Restriction set for 8/17/2022. (Moya, Goretti) (Entered: 05/19/2022) |
| 05/19/2022 | 112 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Conference proceeding held on 5/4/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 05/19/2022) |
| 05/19/2022 | 113 | ORDER as to Ethan Phelan Melzer. Defendant filed a notice of intent to disclose classified information under Section 5 of the Classified Information Procedures Act on May 19, 2022. Dkt. No. 109. The United States is directed to submit its response to the Defendant's submission to the Court no later than June 1, 2022. The Court encourages the parties to confer regarding the notice prior to that date to attempt to resolve or focus any issues presented to the Court for resolution. In the event that a hearing is necessary in order for the Court to evaluate and rule on any disputed issues, that hearing will take place on June 8, 2022 at 11:00 a.m. Presumptively that hearing will take place in Courtroom 12C, Daniel Patrick Moynihan United States Courtroom, 500 Pearl Street, New York, New York 10007. SO ORDERED. ( Responses due by 6/1/2022. Status Conference set for 6/8/2022 at 11:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods. )(Signed by Judge Gregory H. Woods on 5/19/2022)(bw) (Entered: 05/20/2022) |

A000020

| 05/24/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods:Daubert Hearing as to Ethan Phelan Melzer held on 5/24/2022. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny, Ariel C. Werner and Hannah McCrea. AUSAs Kimberly J. Ravener and Matthew Hellman present. Paralegal Daniel Sitko present. Court Reporters George Malinowski and Khris Sellin present. See Transcript (jw) (Entered: 05/25/2022) |
| --- | --- | --- |
| 05/31/2022 | 114 | LETTER MOTION addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg, Matthew Hellman, Kimberly Ravener dated May 31, 2022 re: Brief Extension of Time . Document filed by USA as to Ethan Phelan Melzer. (Ravener, Kimberly) (Entered: 05/31/2022) |
| 05/31/2022 | 115 | MEMO ENDORSEMENT 114 LETTER MOTION addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg, Matthew Hellman, Kimberly Ravener dated May 31, 2022 re: Brief Extension of Time...ENDORSEMENT...Application granted. The deadline for the Government's response is extended to June 3, 2022. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 114. (Signed by Judge Gregory H. Woods on 5/31/22) (jw) (Entered: 06/01/2022) |
| 05/31/2022 | | Set/Reset Deadlines/Hearings as to Ethan Phelan Melzer: Government Responses due by 6/3/2022. (jw) (Entered: 06/01/2022) |
| 06/03/2022 | 116 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jonathan Marvinny dated June 3, 2022 re: Melzer's proposed limiting instructions (Marvinny, Jonathan) (Entered: 06/03/2022) |
| 06/03/2022 | 117 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 6/3/22 re: Brief Extension Request for CIPA Deadlines Document filed by USA. (Adelsberg, Samuel) (Entered: 06/03/2022) |
| 06/03/2022 | 118 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg, Matthew Hellman, and Kimberly Ravener dated June 3, 2022 re: Proposed Limiting Instructions Document filed by USA. (Attachments: # 1 Exhibit A) (Ravener, Kimberly) (Entered: 06/03/2022) |
| 06/06/2022 | 119 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 117 LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 6/3/22 re: Brief Extension Request for CIPA Deadlines. ENDORSEMENT: Application granted. The deadline for the Government to file its response to the Section 5 Notice is extended to June 10, 2022. Any hearing on the request is adjourned to June 15, 2022 at 10:00 a.m. in courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl St., New York, NY 10007. (Responses due by 7/10/2022 Motion Hearing set for 6/15/2022 at 10:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods) (Signed by Judge Gregory H. Woods on 6/3/2022) (ap) (Entered: 06/06/2022) |
| 06/10/2022 | 120 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated June 10, 2022 re: Update Regarding Section 5 Notice and Request to Adjourn Deadlines Pending Review Document filed by USA. (Hellman, Matthew) (Entered: 06/10/2022) |
| 06/10/2022 | 121 | MEMO ENDORSEMENT as to Ethan Phelan Melzer on re: 120 LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated June 10, 2022 re: Update Regarding Section 5 Notice and Request to Adjourn Deadlines Pending Review. ENDORSEMENT: Application granted in part and denied in part. The Court will not adjourn the conference scheduled for June 15, 2022, but will not plan to address Defendant's intent to disclose classified information at that hearing. Instead, the Court |

| | | |
|---|---|---|
| | | will address Defendant's motion in limine to exclude the testimony of the Government's proposed expert witness at that conference, as well as a few outstanding trial-related matters. The parties should be prepared to discuss the current status of their efforts regarding Defendant's intent to disclose classified information at that conference, at which point the Court will schedule a hearing, if necessary. (Signed by Judge Gregory H. Woods on 6/10/2022) (ap) (Entered: 06/10/2022) |
| 06/12/2022 | 122 | MOTION to Preclude *Defense Expert Testimony*. Document filed by USA as to Ethan Phelan Melzer. (Attachments: # 1 Exhibit Defense Expert Notice)(Adelsberg, Samuel) (Entered: 06/12/2022) |
| 06/12/2022 | 123 | MOTION in Limine *to Admit Evidence of the Defendant's Prior Participation in an Order of Nine Angles Insight Role*. Document filed by USA as to Ethan Phelan Melzer. (Adelsberg, Samuel) (Entered: 06/12/2022) |
| 06/13/2022 | 124 | ORDER as to Ethan Phelan Melzer. The Court has received the Government's June 12, 2022 motion in limine and motion to exclude Defendants proposed expert testimony. Subject to the exception below, Defendants opposition to those motions is due no later than June 16, 2022. The Governments reply, if any, is due no later than June 20, 2022. Defendant's opposition to the Governments request that it disclose the proposed exhibits, an exhibit list, and statements relating to the Defendants witnesses, as described in the Governments motion to exclude Defendants proposed expert testimony, is due no later than June 13, 2022. The Governments reply, if any, is due no later than June 14, 2022 (Government Replies due by 6/20/2022., Defendant's Opposition due by 6/16/2022). (Signed by Judge Gregory H. Woods on 6/12/22)(jw) (Entered: 06/13/2022) |
| 06/13/2022 | 125 | RESPONSE in Opposition by Ethan Phelan Melzer re: 122 MOTION to Preclude *Defense Expert Testimony.. Production of defense exhibit list.* (Marvinny, Jonathan) (Entered: 06/13/2022) |
| 06/14/2022 | 126 | ORDER as to Ethan Phelan Melzer. On June 14, 2022, the Government requested that the Court adjourn the hearing currently scheduled for June 15, 2022 due to unforeseen circumstances impacting the Government's availability to attend that hearing. That request is granted. The hearing is adjourned to June 16, 2022 at 9:00 a.m. in Courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007 (Motion Hearing set for 6/16/2022 at 09:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods.) (Signed by Judge Gregory H. Woods on 6/14/22)(jw) (Entered: 06/14/2022) |
| 06/14/2022 | 127 | REPLY MEMORANDUM OF LAW in Support by USA as to Ethan Phelan Melzer re: 122 MOTION to Preclude *Defense Expert Testimony*. . (Adelsberg, Samuel) (Entered: 06/14/2022) |
| 06/14/2022 | 128 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Hearing held on 5/24/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/5/2022. Redacted Transcript Deadline set for 7/15/2022. Release of Transcript Restriction set for 9/12/2022. (McGuirk, Kelly) (Entered: 06/14/2022) |
| 06/14/2022 | 129 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Hearing proceeding held on 5/24/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

| | | remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/14/2022) |
|---|---|---|
| 06/16/2022 | 130 | MEMORANDUM in Opposition by Ethan Phelan Melzer re 123 MOTION in Limine *to Admit Evidence of the Defendant's Prior Participation in an Order of Nine Angles Insight Role.*. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Marvinny, Jonathan) (Entered: 06/16/2022) |
| 06/16/2022 | 131 | ORDER as to Ethan Phelan Melzer. The Court held a hearing in this matter on June 16, 2022. As articulated on the record during that hearing, the Court is currently reviewing the Governments motion to exclude the testimony of Defendants expert, Dr. David Greenfield. The parties are requested to hold June 22, 2022 at 10:00 a.m. for a Daubert hearing to address that motion. Absent any indication otherwise from the Court, the Daubert hearing will proceed at that time in Courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. Any application to hold that hearing remotely, which should include the legal basis for the Court's ability to do so, is due no later than June 19, 2022. In addition, and as discussed on the record during the June 16, 2022 hearing, the Court will hold a hearing to discuss the jury questionnaire and voir dire in this case on June 27, 2022 at 10:00 a.m. in Courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. As explained during the June 16, 2022 hearing, the parties are ordered to submit their lists of potential jurors no later than 5:00 p.m. on June 24, 2022. Moreover, as articulated on the record during the June 16, 2022 hearing, Defendant is ordered to produce his exhibit list, exhibits, and a witness list to the Government no later than June 24, 2022. The Government is ordered to produce its witness list to Defendant no later than June 21, 2022. Further, for the reasons articulated during the June 16, 2022 hearing, and subject to the limitations detailed on the record during that hearing, Defendant's motion to exclude the testimony of the Governments expert witness, Dr. David Simi, is denied. (Daubert Hearing set for 6/22/2022 at 10:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods.). (Signed by Judge Gregory H. Woods on 6/16/22)(jw) (Entered: 06/16/2022) |
| 06/16/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods:Motion Hearing as to Ethan Phelan Melzer held on 6/16/2022. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny and Ariel C. Werner. AUSAs Kimberly J. Ravener, Samuel S. Adelsberg and Matthew Hellman present. Hearing held. See Transcript. (Court Reporter Raquel Robles) (ap) (Entered: 06/16/2022) |
| 06/16/2022 | 132 | MEMORANDUM in Opposition by Ethan Phelan Melzer re 122 MOTION to Preclude *Defense Expert Testimony.*. (Attachments: # 1 Exhibit A - US v. D'Amelia Transcript, # 2 Exhibit B - May 24, 2022 Disclosure)(Werner, Ariel) (Entered: 06/16/2022) |
| 06/20/2022 | 133 | REPLY MEMORANDUM OF LAW in Support by USA as to Ethan Phelan Melzer re: 122 MOTION to Preclude *Defense Expert Testimony*. . (Ravener, Kimberly) (Entered: 06/20/2022) |
| 06/20/2022 | 134 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg, Matthew Hellman, and Kimberly Ravener dated June 20, 2022 re: Adjournment of Conference Document filed by USA. (Ravener, Kimberly) (Entered: 06/20/2022) |
| 06/20/2022 | 135 | REPLY MEMORANDUM OF LAW in Support by USA as to Ethan Phelan Melzer re: 123 MOTION in Limine *to Admit Evidence of the Defendant's Prior Participation in an Order of Nine Angles Insight Role*. . (Adelsberg, Samuel) (Entered: 06/20/2022) |
| 06/21/2022 | 136 | LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny dated June 21, 2022 re: Admit evidence that CC-1 was 15 years old . Document filed by Ethan Phelan Melzer. (Marvinny, Jonathan) (Entered: 06/21/2022) |

A000023

| | | |
|---|---|---|
| 06/21/2022 | 137 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jonathan Marvinny, Hannah McCrea, and Ariel Werner dated June 21, 2022 re: Statements that should be admitted at trial pursuant to the rule of completeness (Werner, Ariel) (Entered: 06/21/2022) |
| 06/21/2022 | 138 | LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny, Hannah McCrea, and Ariel Werner dated June 21, 2022 re: Defense objections to newly proposed government exhibits . Document filed by Ethan Phelan Melzer. (Werner, Ariel) (Entered: 06/21/2022) |
| 06/22/2022 | 139 | ORDER as to Ethan Phelan Melzer: The Court has received Defendant's motion to admit evidence that CC-1 was 15 years old, Dkt. No. 136, Defendant's list of statements that should be admitted pursuant to the rule of completeness, Dkt. No. 137, and Defendant's objections to the Government's newly proposed exhibits, Dkt. No. 138, all of which were filed on June 21, 2022. The Government's responses to those filings are due no later than Saturday, June 24, 2022. Defendant's replies, if any, are due no later than Monday, June 27, 2022 at 6:00 p.m. (Responses due by 6/24/2022. Replies due by 6/27/2022) (Signed by Judge Gregory H. Woods on 6/21/2022) (ap) Modified on 6/22/2022 (ap). (Entered: 06/22/2022) |
| 06/22/2022 | 140 | SEALED DOCUMENT placed in vault. (jus) (Entered: 06/22/2022) |
| 06/22/2022 | 141 | ORDER as to Ethan Phelan Melzer: In addition to submitting the parties' lists of potential jurors on June 24, 2022, as discussed on the record during the June 16, 2022 hearing, see also Dkt. No. 131, the Government is ordered to submit to the Court scans of the completed juror questionnaires on June 24, 2022. The Government should submit those scans via a CD or USB-drive delivered to the Court's chambers in the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. (Signed by Judge Gregory H. Woods on 6/22/2022) (ap) (Entered: 06/22/2022) |
| 06/22/2022 | 142 | ORDER as to Ethan Phelan Melzer: The Court will hold a conference to discuss the Defendant's June 21, 2022 filings, as described in the Court's June 22, 2022 order, on July 1, 2022 at 11:00 a.m. in Courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. (Pretrial Conference set for 7/1/2022 at 11:00 AM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods) (Signed by Judge Gregory H. Woods on 6/22/2022) (ap) (Entered: 06/22/2022) |
| 06/22/2022 | 143 | ORDER as to Ethan Phelan Melzer: For the avoidance of doubt, the Government's oppositions to Defendant's June 21, 2022 filings, as described in the Court's June 22, 2022 order, are due no later than Saturday, June 25, 2022. The remaining deadlines in that order remain in effect. (Responses due by 6/25/2022) (Signed by Judge Gregory H. Woods on 6/22/2022) (ap) (Entered: 06/22/2022) |
| 06/22/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Status Conference as to Ethan Phelan Melzer held on 6/22/2022. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny and Ariel C. Werner. AUSAs Kimberly J. Ravener, Samuel S. Adelsberg and Matthew Hellman present. Court Reporters Pamela Utter and Carol Ganly present. Hearing held. See Transcript. (jbo) Modified on 6/27/2022 (jbo). (Entered: 06/27/2022) |
| 06/23/2022 | 144 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from USA dated June 23, 2022 re: Requesting Rule 11 Proceeding be Scheduled and Certain Deadlines be Adjourned Document filed by USA. (Hellman, Matthew) (Entered: 06/23/2022) |
| 06/23/2022 | 145 | ENDORSED LETTER as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg / Matthew Hellman / Kimberly Ravener, dated June 23, |

| | | |
|---|---|---|
| | | 2022 re: Following consultation with Your Honor's Chambers earlier today, the parties write jointly to advise they have reached a plea agreement, which they believe will obviate the need for any trial in this matter, and to request that the Court schedule a change-of-plea hearing for 9:00 a.m. on June 24, 2022... ENDORSEMENT: Application granted in part. The Court will hold a change of plea hearing on June 24, 2022 at 12:00 p.m. in Courtroom 12C, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007. All deadlines in the case are held in abeyance pending that hearing. SO ORDERED. ( Change of Plea Hearing set for 6/24/2022 at 12:00 PM in Courtroom 12C, 500 Pearl Street, New York, NY 10007 before Judge Gregory H. Woods. )(Signed by Judge Gregory H. Woods on 6/23/2022)(bw) (Entered: 06/23/2022) |
| 06/23/2022 | 146 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Hearing held on 5/24/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/14/2022. Redacted Transcript Deadline set for 7/25/2022. Release of Transcript Restriction set for 9/21/2022. (McGuirk, Kelly) (Entered: 06/23/2022) |
| 06/23/2022 | 147 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Sentence proceeding held on 5/24/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/23/2022) |
| 06/24/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Change of Plea Hearing as to Ethan Phelan Melzer held on 6/24/2022. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny and Ariel C. Werner. AUSAs Samuel S. Adelsberg and Matthew Hellman present. Court Reporter Paula Horovitz present. Plea hearing held. Defendant withdraws previously entered not guilty plea and enters a plea of GUILTY to Counts #4, #5 and #7 of the S1 Superseding Indictment. Plea agreement entered as court exhibit #1. PSI ordered. Government is to provide factual statement of the offense to the Probation Department within the next 7 days. Defense counsel is to set up the interview with the Probation Department within the next 2 weeks. No interview to be conducted by the Probation Department without the participation of defense counsel. Sentencing is scheduled for January 6, 2023 at 10:00 a.m. Defense sentencing submissions due four weeks before sentencing. Government sentencing submissions due two weeks before sentencing. See Transcript. (Sentencing set for 1/6/2023 at 10:00 AM before Judge Gregory H. Woods.) (jbo) Modified on 6/27/2022 (wv). (Entered: 06/27/2022) |
| 06/24/2022 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Plea entered by Ethan Phelan Melzer (1) Guilty as to Count 4s,5s,7s. (jbo) (Entered: 06/27/2022) |
| 06/24/2022 | | Change of Not Guilty Plea to Guilty Plea as to Ethan Phelan Melzer (1) Count 4s,5s,7s. (jbo) (Entered: 06/27/2022) |
| 06/24/2022 | | Order of Referral to Probation for Presentence Investigation and Report as to Ethan Phelan Melzer. (Signed by Judge Gregory H. Woods on 6/24/22)(jbo) (Entered: 06/27/2022) |
| 07/05/2022 | 148 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Plea held on 6/24/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Paula Horovitz, (212) 805-0348, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. |

| | | |
|---|---|---|
| | | After that date it may be obtained through PACER. Redaction Request due 7/26/2022. Redacted Transcript Deadline set for 8/5/2022. Release of Transcript Restriction set for 10/3/2022. (McGuirk, Kelly) (Entered: 07/05/2022) |
| 07/05/2022 | 149 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Plea proceeding held on 6/24/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/05/2022) |
| 07/05/2022 | 150 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Conference held on 6/16/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/26/2022. Redacted Transcript Deadline set for 8/5/2022. Release of Transcript Restriction set for 10/3/2022. (McGuirk, Kelly) (Entered: 07/05/2022) |
| 07/05/2022 | 151 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Conference proceeding held on 6/16/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/05/2022) |
| 07/22/2022 | 152 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Hearing held on 6/22/2022 before Judge Gregory H. Woods. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/12/2022. Redacted Transcript Deadline set for 8/22/2022. Release of Transcript Restriction set for 10/20/2022. (McGuirk, Kelly) (Entered: 07/22/2022) |
| 07/22/2022 | 153 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Hearing proceeding held on 6/22/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 07/22/2022) |
| 11/22/2022 | 155 | CONSENT LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny dated November 22, 2022 re: Adjourn sentencing . Document filed by Ethan Phelan Melzer. (Marvinny, Jonathan) (Entered: 11/22/2022) |
| 11/28/2022 | 156 | MEMO ENDORSEMENT as to Ethan Phelan Melzer (1) granting 155 CONSENT LETTER MOTION addressed to Judge Gregory H. Woods from Jonathan Marvinny dated November 22, 2022 re: Adjourn sentencing. ENDORSEMENT: Application granted. The sentencing hearing scheduled for January 6, 2023 is adjourned to March 3, 2023 at 10:00 a.m. The defendant's sentencing submission are due no later than February 3, 2023; the Government's sentencing submission are due no later than February 17, 2023. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 155. (Signed by Judge Gregory H. Woods on 11/28/2022) (ap) (Entered: 11/28/2022) |

| 11/28/2022 | | Set/Reset Hearings as to Ethan Phelan Melzer: Sentencing set for 3/3/2023 at 10:00 AM before Judge Gregory H. Woods. (ap) (Entered: 11/28/2022) |
|---|---|---|
| 02/03/2023 | 157 | SENTENCING SUBMISSION by Ethan Phelan Melzer. (Attachments: # 1 Exhibit A-Q) (Marvinny, Jonathan) (Entered: 02/03/2023) |
| 02/17/2023 | 159 | SENTENCING SUBMISSION by USA as to Ethan Phelan Melzer. (Ravener, Kimberly) (Entered: 02/17/2023) |
| 02/21/2023 | 160 | ORDER as to Ethan Phelan Melzer. Sentencing in this matter is scheduled for March 3, 2023. The Court has reviewed the parties sentencing submissions and observes that the Government bases a number of arguments in its sentencing submission on facts contained in the pre-sentence report (the "PSR") that appear to be disputed by the defendant. The PSR identifies a number of specific facts that are the subject of objections by the defendant; it also contains a categorical objection that is not specifically tethered to particular statements of fact contained in the PSR. See PSR at 39.In order to help the Court evaluate the extent and effect of any disputed facts, the Court requests that counsel for the defendant identify by paragraph and line number each statement of fact contained in the PSR to which he objects. The Court requests that the information be provided to the Court and the Government no later than February 24, 2023. After the set of disputed facts has been identified with specificity, the Court expects that it will solicit the views of the parties regarding whether those disputed issues of fact must be resolved by the Court prior to sentencing through a Fatico hearing or otherwise (Signed by Judge Gregory H. Woods on 2/21/2023)(jw) (Entered: 02/22/2023) |
| 02/24/2023 | 161 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jonathan Marvinny dated February 24, 2023 re: Objections to PSR (Marvinny, Jonathan) (Entered: 02/24/2023) |
| 02/24/2023 | 162 | ORDER as to Ethan Phelan Melzer... Accordingly, the Court solicits the position of the Government regarding whether a ruling on the disputed facts is unnecessary. The Court requests that the Government respond to this request no later than February 27, 2023. The defendant may provide his views regarding the question by the same date. The Court will consider responses submitted earlier than this deadline. SO ORDERED. (Responses due by 2/27/2023) (Signed by Judge Gregory H. Woods on 2/24/23)(jbo) (Entered: 02/24/2023) |
| 02/27/2023 | 163 | LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Sam Adelsberg dated 02/27/23 re: Sentencing Document filed by USA. (Adelsberg, Samuel) (Entered: 02/27/2023) |
| 02/27/2023 | 164 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jonathan Marvinny dated February 27, 2023 re: Response to Court's Order at ECF No. 162 (Marvinny, Jonathan) (Entered: 02/27/2023) |
| 02/27/2023 | 165 | ENDORSED LETTER as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg / Matthew Hellman / Kimberly Ravener, dated February 27, 2023 re: The Government writes in response to the Court's February 24, 2023 order (see Dkt. 162) regarding the presentence report ("PSR") and sentencing. A ruling on the disputed facts referenced in the order is unnecessary, and the matter should proceed to sentencing as scheduled on March 3. ENDORSEMENT: The Court understands that the Government does not wish to prove the disputed issues of fact identified by the defendant in the pre-sentence report, as clarified by his February 24, 2023 letter to the Court. Dkt. No. 161. Accordingly, the Court anticipates that it will not consider the disputed matters in sentencing. The Court requests that the parties meet and confer regarding the specific modifications to the pre-sentence report that are required in order to adopt this approach. The Court understands that a decision by the Court that a ruling on the disputed issues is |

| | | |
|---|---|---|
| | | unnecessary because it will not consider the disputed issues in sentencing would lead the defendant not to seek to present evidence to the Court in connection with the disputed issues, as outlined in his letter to the Court on February 27, 2023. Dkt. No. 164. If that understanding is incorrect, the Court requests that counsel for the defendant explain their position in a letter to the Court. The proposed modifications to the pre-sentence report requested here should be filed no later than March 1, 2023. SO ORDERED. ( Responses due by 3/1/2023 )(Signed by Judge Gregory H. Woods on 2/27/2023)(bw) (Entered: 02/28/2023) |
| 02/28/2023 | 166 | LETTER by Ethan Phelan Melzer addressed to Judge Gregory H. Woods from Jonathan Marvinny dated February 28, 2023 re: Response to Court's Order at ECF No. 165 (Marvinny, Jonathan) (Entered: 02/28/2023) |
| 02/28/2023 | 167 | Sentencing Letter by Ethan Phelan Melzer addressed to Hon. Gregory H. Woods from Jonathan Marvinny dated February 28, 2023 re: Ethan Melzer's Work Performance Review. (Marvinny, Jonathan) (Entered: 02/28/2023) |
| 03/01/2023 | 168 | JOINT LETTER by USA as to Ethan Phelan Melzer addressed to Judge Gregory H. Woods from AUSAs Sam Adelsberg, Matthew Hellman, and Kimberly Ravener, dated March 1, 2023 re: Presentence Report Document filed by USA. (Ravener, Kimberly) (Entered: 03/01/2023) |
| 03/03/2023 | | Minute Entry for proceedings held before Judge Gregory H. Woods: Sentencing held on 3/3/2023 for Ethan Phelan Melzer (1) Count 4s,5s,7s. Defendant Ethan P. Melzer (in custody) present with attorneys Jonathan A. Marvinny and Ariel C. Werner. AUSAs Kimberly J. Ravener, Samuel S. Adelsberg and Matthew Hellman present. Court Reporter Rebecca Forman present. Sentencing hearing held. The defendant is sentenced to 240 months of imprisonment on Count 4, 180 months of imprisonment on Count 5, and 120 months of imprisonment on Count 7, to be served consecutively; to be followed by 3 years of supervised release on each Counts 4, 5, and 7, with those terms to be served concurrently. Mandatory, standard, and special conditions of supervised release apply. A special assessment fee of $300.00 is due immediately. Detention continued. See transcript. (lnl) (Entered: 03/03/2023) |
| 03/06/2023 | | DISMISSAL OF COUNTS on Government Motion as to Ethan Phelan Melzer (1) Count 1,1s,2,2s,3,3s,4,5,6,6s,8s. (ap) (Entered: 03/06/2023) |
| 03/06/2023 | 169 | JUDGMENT IN A CRIMINAL CASE as to Ethan Phelan Melzer (1). THE DEFENDANT: pleaded guilty to counts 4,5 and 7 of the S1 Superseding Indictment. All underlying Counts are dismissed on the motion of the United States. IMPRISONMENT: 240 months on Count 4, 180 months on Count 5, and 120 months on Count 7, to be served consecutively. The court makes the following recommendations to the Bureau of Prisons: The Court recommends that the defendant be placed at FCI Terre Haute or FCI Tuscon to the extent consistent with his security designation and other needs. The Court also recommends that the defendant be permitted to participate in the Challenge Program to the extent that he is eligible to do so. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: 3 years for each of Counts 4,5, and 7, with those terms to be served concurrently. ASSESSMENT: $300.00 due immediately. (Signed by Judge Gregory H. Woods on 3/6/2023) (ap) Modified on 3/10/2023 (ap). (Entered: 03/06/2023) |
| 03/10/2023 | 170 | NOTICE OF APPEAL by Ethan Phelan Melzer from 169 Judgment. (tp) (Entered: 03/10/2023) |
| 03/10/2023 | | Appeal Remark as to Ethan Phelan Melzer re: 170 Notice of Appeal - Final Judgment. $505.00 Appeal Fee Waived. Federal Defenders of New York, Inc. (tp) (Entered: 03/10/2023) |

| 03/10/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Ethan Phelan Melzer to US Court of Appeals re: 170 Notice of Appeal - Final Judgment. (tp) (Entered: 03/10/2023) |
| 03/10/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Ethan Phelan Melzer re: 170 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/10/2023) |
| 03/13/2023 | | **\*\*\*DELETED DOCUMENT. Deleted document number 171 and 172 Transcript, as to Ethan Phelan Melzer. The document was incorrectly filed in this case, as per email from Court Reporter on 3/17/2023. (ap)** (Entered: 03/20/2023) |
| 03/21/2023 | 171 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Sentence held on 3/3/2023 before Judge Gregory H. Woods. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/11/2023. Redacted Transcript Deadline set for 4/21/2023. Release of Transcript Restriction set for 6/20/2023. (McGuirk, Kelly) (Entered: 03/21/2023) |
| 03/21/2023 | 172 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Sentence proceeding held on 3/3/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/21/2023) |
| 04/24/2023 | 173 | TRANSCRIPT of Proceedings as to Ethan Phelan Melzer re: Arraignment held on 9/9/2020 before Judge Gregory H. Woods. Court Reporter/Transcriber: Michael McDaniel, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/15/2023. Redacted Transcript Deadline set for 5/25/2023. Release of Transcript Restriction set for 7/24/2023. (McGuirk, Kelly) (Entered: 04/24/2023) |
| 04/24/2023 | 174 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ethan Phelan Melzer. Notice is hereby given that an official transcript of a Arraignment proceeding held on 9/9/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/24/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/30/2023 09:20:54 | | |
| **PACER Login:** | dbfields9814 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cr-00314-GHW |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X

UNITED STATES OF AMERICA

     - v. -

ETHAN PHELAN MELZER,
  a/k/a "Etil Reggad,"

             Defendant.

------------------------------ X

**SUPERSEDING INDICTMENT**

S1 20 Cr. 314 (GHW)

## COUNT ONE
### (Conspiracy to Murder U.S. Nationals)

The Grand Jury charges:

1.  From at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to kill nationals of the United States.

2.  It was a part and an object of the conspiracy that ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, and others known and unknown, at least one of whom was outside the United States, would and did murder United States nationals anywhere in the world.

A000030

## Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, committed the following overt acts, among others:

a. On or about May 14, 2020, MELZER sent an electronic message that stated, in substance and in part, that MELZER believed that his "military training, survival, [and] links to other groups" could be useful to other members of the extremist group Order of the Nine Angles ("O9A").

b. On or about May 17, 2020, MELZER exchanged electronic communications in an O9A-related chatroom regarding the anticipated deployment of MELZER's U.S. Army unit and passed information regarding the deployment to a purported member of al Qaeda.

c. On or about May 23, 2020, MELZER sent electronic communications to participants in an O9A-related chat group, in which MELZER wrote, in substance and in part, that he was "risking [his] literal free life" by disclosing information regarding his unit's deployment and was "expecting results"; that his "life would be absolutely meaningless in the amount of shit it [*i.e.*, the attack] would cause"; that the attack would

2

A000031

cause a "new war"; and that the attack would result in "mascal," which another participant explained meant "mass casualty."

d.  On or about May 24, 2020, MELZER participated in an exchange of electronic communications in which another participant characterized the plot against MELZER's unit as a "jihadi attack."  During the exchange, MELZER acknowledged that he could be killed during the attack, and wrote, "who gives a fuck [. . .] it would be another war . . . I would've died successfully . . . cause [] another 10 year war in the Middle East would definitely leave a mark."

e.  Between on or about May 24 and May 25, 2020, MELZER sent electronic messages with specific, classified, information about his unit's anticipated deployment, including, among other things, the number of soldiers who would be traveling, the location of the facility to which MELZER expected the unit to be deployed, and information about the facility's surveillance and defensive capabilities.  MELZER also promised to provide additional information after he deployed in order to try to maximize the likelihood of a successful attack on his unit.

(Title 18, United States Code, Sections 2332(b) and 3238.)

## COUNT TWO
### (Attempted Murder of U.S. Nationals)

The Grand Jury further charges:

3

A000032

4. Paragraphs One through Three of this Indictment are realleged and incorporated by reference as though fully set forth herein.

5. From at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, willfully and knowingly attempted to and aided and abetted the attempt to kill U.S. nationals outside of the United States -- which killing is murder as defined in Title 18, United States Code, Section 1111(a) -- to wit, MELZER disclosed classified U.S. Army information to members and associates of O9A to facilitate a deadly attack on his unit, which included U.S. nationals.

(Title 18, United States Code, Sections 2332(b), 3238, and 2.)

## COUNT THREE
### (Conspiracy to Murder U.S. Service Members)

The Grand Jury further charges:

6. Paragraphs One through Five of this Indictment are realleged and incorporated by reference as though fully set forth herein.

7. From at least in or about 2019 up to and including in or about May 2020, in an offense begun and

4

committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate Section 1114 of Title 18, United States Code.

8.   It was a part and an object of the conspiracy that ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, and others known and unknown, would and did kill an officer and employee of the United States -- which killing is murder as defined in Title 18, United States Code, Section 1111(a) -- including any member of the uniformed services, while such officer and employee was engaged in and on account of the performance of official duties, and any person assisting such an officer and employee in the performance of such duties and on account of that assistance, in violation of Title 18, United States Code, Section 1114.

<u>Overt Acts</u>

9.   In furtherance of the conspiracy and to effect the illegal object thereof, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, committed the overt acts described in

5

Paragraph Three of this Indictment, which are incorporated fully herein.

(Title 18, United States Code, Sections 1114, 1117, and 3238.)

<u>COUNT FOUR</u>
(Attempted Murder of U.S. Service Members)

The Grand Jury further charges:

10.   Paragraphs One through Nine of this Indictment are realleged and incorporated by reference as though fully set forth herein.

11.   From at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, willingly and knowingly attempted to and aided and abetted the attempt to kill an officer and employee of the United States -- which killing is murder as defined in Title 18, United States Code, Section 1111(a) -- including any member of the uniformed services, while such officer and employee was engaged in and on account of the performance of official duties, and any person assisting such an officer and employee in the performance of such duties and on account of that assistance, to wit, MELZER disclosed classified U.S. Army information to members and associates of O9A to

6

facilitate a deadly attack on his unit.

(Title 18, United States Code, Sections 1114, 3238, and 2.)

## COUNT FIVE
### (Provision and Attempted Provision of Material Support to Terrorists)

The Grand Jury further charges:

12. Paragraphs One through Eleven of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13. From at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, knowingly and intentionally did provide, and attempt to provide, material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b) -- to wit, intangible property, services, expert advice or assistance, and personnel, including himself -- knowing and intending that they were to be used in preparation for, and in carrying out, one or more of the following violations of Title 18, United States Code: (a) conspiring to murder and maim persons in a foreign country, in violation of Title 18, United States Code, Section 956; (b) murdering U.S.

7

A000036

military service members, in violation of Title 18, United States Code, Sections 1114; (c) murdering U.S. nationals, in violation of Title 18, United States Code, Section 2332(a); and (d) conspiring to murder U.S. nationals, in violation of Title 18, United States Code, Section 2332(b).

(Title 18, United States Code, Sections 2339A(a), 3238, and 2.)

## COUNT SIX
### (Conspiracy to Murder and Maim In A Foreign Country)

The Grand Jury further charges:

14. Paragraphs One through Thirteen of this Indictment are realleged and incorporated by reference as though fully set forth herein.

15. From at least in or about 2019 up to and including in or about May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, within the jurisdiction of the United States, to commit, at a place outside the United States, acts that would constitute the offenses of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States.

8

A000037

## Overt Acts

16.    In furtherance of the conspiracy and to effect the illegal object thereof, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, committed the overt acts described in Paragraph Three of this Indictment, which are incorporated fully herein.

(Title 18, United States Code, Sections 956(a)(1), 956(a)(2)(A), and 3238.)

## COUNT SEVEN
### (Illegal Transmission of of National Defense Information)

The Grand Jury further charges:

17.    Between in or about April 2020 and May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, having lawful possession of, access to, and control over information relating to the national defense, willfully communicated, delivered, and transmitted, caused to be communicated, delivered, and transmitted, and attempted to communicate, deliver, transmit and cause to be communicated, delivered, and transmitted, the same to a person not entitled to receive it, with reason to believe that such information could be used to the injury of the United States and to the advantage of a foreign country, to wit, MELZER

9

A000038

transmitted classified U.S. Army information about his unit's upcoming deployment and the U.S. military facility to which his unit would be deployed to O9A members living in other countries and a purported member of al Qaeda located abroad.

(Title 18, United States Code, Sections 793(d) and 2.)

## COUNT EIGHT
### (Illegal Delivery of National Defense Information)

The Grand Jury further charges:

18. Between in or about April 2020 and May 2020, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, who was first brought to and arrested in the Southern District of New York, did willfully communicate, deliver, and transmit and attempt to communicate, deliver, and transmit to a citizen of a foreign country and a faction, party, and military force in a foreign country, directly and indirectly, information relating to the national defense of the United States, with intent and reason to believe that such information was to be used to the injury of the United States and to the advantage of a foreign country, to wit, MELZER transmitted classified U.S. Army information about his unit's upcoming deployment and the U.S. military installation to which his unit would be deployed to citizens of foreign countries and individuals MELZER believed to be citizens

10

A000039

of foreign countries, including O9A members living in other countries and a purported member of al Qaeda located abroad.

(Title 18, United States Code, Sections 794(a) and 2.)

## FORFEITURE ALLEGATIONS

19.    As a result of planning and perpetrating Federal crimes of terrorism against the United States, as defined in Title 18, United States Code, Section 2332b(g)(5), and as alleged in Counts One, Two, Three, Four, Five, and Six of this Indictment, ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461:

a.    All right, title, and interest in all assets, foreign and domestic;

b.    All right, title and interest in all assets, foreign and domestic, acquired and maintained with the intent and for the purpose of supporting, planning, conducting, and concealing a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property; and

c.    All right, title and interest in all assets, foreign and domestic, derived from, involved in, and used and intended to be used to commit a Federal crime of terrorism

11

A000040

against the United States, citizens and residents of the United States, and their property; including but not limited to a sum of money representing the value of the property described above as being subject to forfeiture.

20. As a result of committing the offenses alleged in Counts Seven and Eight of this Indictment, ETHAN PHELAN MELZER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 793(h) and 794(d), any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, from any foreign government, or any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, as the result of the commission of the offenses charged in Counts Seven and Eight of this Indictment.

## Substitute Assets Provision

21. If any of the above-described forfeitable property, as a result of any act or omission of ETHAN PHELAN MELZER, a/k/a "Etil Reggad," the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the

12

A000041

Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 28 United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981(a)(1)(G), 793(h), 794(d), and 2332b(g)(5); and
Title 28, United States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
Acting United States Attorney

13

A000042

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ETHAN PHELAN MELZER,
a/k/a "Etil Reggad,"

Defendant.

## SUPERSEDING INDICTMENT

S1 20 Cr.314 (GHW)

(Title 18, United States Code,
Sections 793, 794, 956(a), 1114, 1117, 2332, 2339A, 3238, and
2.)

AUDREY STRAUSS
Acting United States Attorney

A TRUE BILL

Foreperson.

A000043



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 22, 2022

Jonathan Marvinny, Esq.
Ariel Werner, Esq.
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007

       **Re: *United States v. Ethan Phelan Melzer*,**
         **S1 20 Cr. 314 (GHW)**

Dear Counsel:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Ethan Phelan Melzer (the "defendant") to Counts Four, Five, and Seven of the above-referenced Superseding Indictment (the "Indictment").

Count Four of the Indictment charges the defendant with attempting to murder U.S. service members, in violation of 18 U.S.C. § 1114. Count Four carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of life, a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

Count Five of the Indictment charges the defendant with providing and attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A. Count Five carries a maximum term of imprisonment of 15 years, a maximum term of supervised release of life, a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

Count Seven of the Indictment charges the defendant with illegally transmitting national defense information to an unauthorized person with reason to believe such information could be used to the injury of the United States, in violation of 18 U.S.C. § 793(d). Count Seven carries a maximum term of imprisonment of 10 years, a maximum term of supervised release of three years, a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

2022.05.04

A000044

Page 2

The total maximum term of imprisonment on Counts Four, Five, and Seven is 45 years.

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) his attempt to murder U.S. service members between in or about 2019 and in or about May 2020, as charged in Count Four of the Indictment; (ii) his provision and attempted provision of material support to terrorists between in or about 2019 and in or about May 2020, as charged in Count Five of the Indictment; and (iii) his illegal transmission of national defense information between in or about April 2020 and in or about May 2020, as charged in Count Seven of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts Four and Five of the Indictment and agrees to forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(G) and 2332b(g)(5), and 28 U.S.C. § 2461, any and all property used or intended to be used to facilitate the terrorism offenses described in Counts Four and Five of the Indictment. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

**A. Offense Level**

1. The Guidelines Manual in effect as of November 1, 2021 applies to the offense conduct.

*Grouping Analysis*

2. Pursuant to U.S.S.G. § 3D1.2(b), each of the offenses is grouped together into a single Group ("the Group") because they constitute part of a common scheme or plan. As a result, pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to the Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group.

2022.05.23

Page 3

*Determining the Offense Level for Each Count*

**Count Four**

3.   Count Four of the Indictment charges the defendant with attempting to murder U.S. service members, in violation of 18 U.S.C. § 1114.   The applicable Sentencing Guideline for this count is § 2A2.1.  Pursuant to § 2A2.1(a), the base offense level is 33 because the object of the offense would have constituted first degree murder.

4.   Pursuant to U.S.S.G. § 3A1.2, because the intended victims of the defendant's offense were government officers or employees, and the defendant's commission of the offense was motivated by such status, the offense level is increased by six levels.

5.   Pursuant to U.S.S.G. § 3A1.4(a), because Count Four is a felony that involved a federal crime of terrorism, the offense level for this count is increased by 12 levels.

6.   Pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of public trust, and used a special skill, in a manner that significantly facilitated the commission of the offense, the offense level is increased by two levels.

7.   Accordingly, the offense level applicable to Count Four is 53.

**Count Five**

8.   Count Five of the Indictment charges the defendant with providing and attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.  The applicable Sentencing Guideline for this count is § 2X2.1, which provides that the offense level is the same as that for the underlying offense.  Because the underlying offense for Count Five is the violation of 18 U.S.C. § 1114, as charged in Count Four, the applicable offense level for Count Five is 53, as calculated above.

**Count Seven**

9.   Count Seven of the Indictment charges the defendant with illegally transmitting national defense information, in violation of 18 U.S.C. § 793(d).  Pursuant to U.S.S.G. § 2M3.3 Application Note 2, because the defendant transmitted intangible national defense information with intent and reason to believe that it could be used to the injury of the United States, the Sentencing Guideline applicable to this count is U.S.S.G § 2M3.2.  Pursuant to U.S.S.G. § 2M3.2(a)(2), the base offense level is 30.

10. Pursuant to U.S.S.G. § 3A1.4(a), because Count Seven is a felony that was intended to promote a federal crime of terrorism, the offense level for this count is increased by 12 levels.

Page 4

11. Pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of public trust, and used a special skill, in a manner that significantly facilitated the commission of the offense, the offense level is increased by two levels.

12. Accordingly, the offense level applicable to Count Seven is 44.

*Determining the Combined Offense Level*

13. Pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to the Group is the offense level for the most serious of the counts in the Group, which is Counts Four and Five with an offense level of 53.

14. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

15. Accordingly, the total offense level is 51. However, because the maximum offense level authorized by the Guidelines is 43, the combined offense level for the Group is 43.

In accordance with the above, the applicable Guidelines offense level is 43.

**B. Criminal History Category**

Based upon the information now available to this Office (including representations by the defense), the defendant has no criminal history points.

In accordance with the above, the defendant's Criminal History Category is I. Pursuant to U.S.S.G. § 3A1.4(b), however, because the offenses charged in Counts Four, Five, and Seven involved or were intended to promote federal crimes of terrorism, the defendant's Criminal History Category is VI.

**C. Sentencing Range**

Based upon the calculations set forth above, the defendant's applicable Guidelines range would be life imprisonment. Pursuant to U.S.S.G. § 5G1.1(a), however, because the statutorily authorized maximum sentence for Counts Four, Five, and Seven is 540 months' imprisonment, which is less than the minimum of the recommended Guidelines range, the applicable Guidelines range is 540 months' imprisonment (the "Stipulated Guidelines Sentence"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 43, the applicable fine range is $50,000 to $500,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

2022.05.23

A000047

Page 5

The parties agree that either party may seek a sentence different from the Stipulated Guidelines Sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Sentence (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence at or below the Stipulated Guidelines Sentence of 540 months' imprisonment, and (ii) that the Government will not appeal any sentence at the Stipulated

Page 6

Guidelines Sentence.  This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.  The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case.  The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum.  The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $500,000, and the Government agrees not to appeal any fine that is greater than or equal to $50,000.  The defendant also agrees not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $300.  Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.  Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty.

By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences.  If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured.  The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel.  The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States.  The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction.  It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation

2022.05.23

A000049

Page 7

under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the convictions following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Page 8

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant.  No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: _____
Sam  Adelsberg  /  Matthew  Hellman  /
Kimberly J. Ravener
Assistant United States Attorneys
(212) 637-2494/2278/2358

APPROVED:

_____
George D. Turner / Amanda L. Houle
Co-Chiefs, National Security and International
Narcotics Unit

AGREED AND CONSENTED TO:

_____          _____
Ethan Phelan Melzer                                       DATE

APPROVED:

_____          _____
Jonathan Marvinny, Esq.                                 DATE
Attorney for Ethan Phelan Melzer

2022.05.23

A000051

1

M6O6MELP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 CR 314(GHW)
                                         Plea
5   ETHAN PHELAN MELZER,

6              Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         June 24, 2022
9                                        12:00 p.m.

    Before:
10
                     HON. GREGORY H. WOODS,
11
                                         District Judge
12
                          APPEARANCES
13

14  DAMIAN WILLIAMS,
         United States Attorney for the
15       Southern District of New York
    BY:  MATTHEW HELLMAN
16       SAMUEL S. ADELSBERG
         Assistant United States Attorneys
17
    DAVID PATTON
18  FEDERAL DEFENDERS OF NEW YORK, INC.
         Attorney for Defendant
19  BY:  JONATHAN ANDREW MARVINNY
         ARIEL C. WERNER
20
    Also Present:  Daniel Sitko, USAO – Paralegal Specialist
21

22

23

24

25

2

M6O6MELP

1          THE COURT:  The Court calls the United States v.

2     Melzer.

3          Can I ask each of you to state your appearances for

4     the record?

5          MR. HELLMAN:  Good afternoon.  Matthew Hellman and

6     Sam Adelsberg for the government, joined by paralegal

7     specialist, Daniel Sitko.

8          MR. MARVINNY:  Good afternoon.  Federal Defenders of

9     New York, Jonathan Marvinny and Ariel Werner for Ethan Melzer.

10          THE COURT:  Thank you for being here and being here

11     timely.

12          So we're here for a change of plea hearing.

13     Mr. Melzer, I have been informed you wish to plead guilty to

14     Counts Four, Five, and Seven of the superceding indictment,

15     which is numbered S-1:20-CR-314; is that correct?

16          THE DEFENDANT:  Yes, Judge.

17          THE COURT:  Thank you.

18          Mr. Melzer, before I accept your plea, I'm going to

19     ask you a number of questions so I can establish to my

20     satisfaction that you wish to plead guilty because you are

21     guilty and not for some other reason, and also to ensure that

22     you know the rights that you will be giving up if you choose to

23     proceed and enter a guilty plea here.

24          If you don't understand any of my questions or if

25     you'd like to confer with your counsel at any point for any

A000053

M6O6MELP

1    reason, Mr. Melzer, please don't hesitate to let me know.  I'd

2    be happy to give you as much time as you'd like to confer with

3    your counsel, and I'd be happy to clarify any of my questions

4    if it would be helpful for you.

5              THE DEFENDANT:  Thank you, Judge.

6              THE COURT:  My pleasure.

7              Because I'm going to be asking you a number of

8    questions, I'd ask you to please stand to take an oath to

9    answer my questions truthfully.

10              Thank you.

11              Mr. Melzer, do you swear the testimony that you shall

12    give this Court in this issue shall be the truth, the whole

13    truth, and nothing but the truth so help you God?

14              THE DEFENDANT:  Yes, Judge.

15              THE COURT:  Thank you very much.  You can be seated.

16              Mr. Melzer, you're now under oath, which means that if

17    you answer any of my questions falsely, you may be persecuted

18    for the separate crime of perjury or making false statements.

19    The government would have the right to use any statements that

20    you give under oath against you in such a prosecution.  Do you

21    understand that?

22              THE DEFENDANT:  Yes, Judge.

23              THE COURT:  Okay.  Thank you.

24              So, first, Mr. Melzer, can you please tell me your

25    full name?

4

M6O6MELP

1          THE DEFENDANT:  Ethan Phelan Melzer.

2          THE COURT:  Thank you.

3          How old are you?

4          THE DEFENDANT:  24 years old.

5          THE COURT:  Where are you born?

6          THE DEFENDANT:  Louisville, Kentucky.

7          THE COURT:  How far did you go in school?

8          THE DEFENDANT:  I got to 10th grade and then dropped

9   out and went to Job Corps and got my high school diploma.

10          THE COURT:  Can you describe for me your employment

11  experience?

12          THE DEFENDANT:  Mostly just jobs in restaurants and

13  then the military.

14          THE COURT:  Thank you.

15          Have you ever been treated or hospitalized for any

16  mental illness?

17          THE DEFENDANT:  No, Judge.

18          THE COURT:  Are you currently, or have you recently

19  been, under the care of a physician, psychiatrist, or

20  psychologist?

21          THE DEFENDANT:  No, Judge.

22          THE COURT:  Are you currently, or have you recently

23  been, hospitalized or treated for drug addiction?

24          THE DEFENDANT:  No, Judge.

25          THE COURT:  Within the past 24 hours, Mr. Melzer, have

A000055

M6O6MELP

1    you used or taken any alcohol, drugs, or medication?

2              THE DEFENDANT:  No, Judge.

3              THE COURT:  Is your mind clear today?

4              THE DEFENDANT:  Yes, Judge.

5              THE COURT:  Do you understand what's happening in this

6    proceeding?

7              THE DEFENDANT:  Yes, Judge.

8              THE COURT:  Thank you.

9              Have you received a copy of the indictment that's

10   pending against you?

11             THE DEFENDANT:  Yes, Judge.

12             THE COURT:  Thank you.

13             Have you had enough of a chance, Mr. Melzer, to

14   discuss with your lawyer the case in general, and in

15   particular, the charges to which you intend to plead guilty and

16   any possible defenses to those charges?

17             THE DEFENDANT:  Yes, Judge.

18             THE COURT:  Has your lawyer explained to you the

19   consequences of entering a plea of guilty?

20             THE DEFENDANT:  Yes, Judge.

21             THE COURT:  And are you fully satisfied with your

22   lawyer's representation of you?

23             THE DEFENDANT:  Yes, Judge.

24             THE COURT:  Thank you.

25             Counsel for defendant, let me turn to you.  Have you

M6O6MELP

1 discussed this matter with your client?

2          MR. MARVINNY:  Yes, your Honor.

3          THE COURT:  Is he capable of understanding the nature

4 of these proceedings?

5          MR. MARVINNY:  He is.

6          THE COURT:  Thank you.

7          Counsel, do either of you or any of you, have any

8 doubt as to the defendant's competency to plead at this time?

9          MR. HELLMAN:  No, your Honor.

10          MR. MARVINNY:  No, your Honor.

11          THE COURT:  Thank you.

12          On the basis of Mr. Melzer's responses to my

13 questions, my observations of his demeanor here in court, and

14 the representations of counsel, I find that the defendant is

15 competent to enter a plea of guilty at this time.

16          Now, Mr. Melzer, before we turn to your plea, I'm

17 going to explain a number of Constitutional rights that you

18 have.  I'm doing this because these are rights that you will be

19 giving up if you choose to proceed and enter a guilty plea in

20 this matter.  Again, if I say anything that you don't

21 understand or would like clarification about, please don't

22 hesitate to stop me.  Either I or your lawyer will explain the

23 matter more fully.

24          So, first, Mr. Melzer, you have the right to plead not

25 guilty to the charges in the indictment.  Do you understand

M6O6MELP

1    that?

2              THE DEFENDANT:  Yes, Judge.

3              THE COURT:  If you did plead not guilty, you'd be

4    entitled to a speedy and public trial by a jury on the charges

5    against you contained in the indictment.  Do you understand

6    that?

7              THE DEFENDANT:  Yes, Judge.

8              THE COURT:  At a trial, you would be presumed to be

9    innocent, and the government would be required to prove you

10   guilty by competent evidence beyond a reasonable doubt before

11   you could be found guilty.  Do you understand that?

12             THE DEFENDANT:  Yes, Judge.

13             THE COURT:  A jury of 12 people would have to agree

14   unanimously that you were guilty, and you would not have to

15   prove that you were innocent if you were to go to trial.  Do

16   you understand that?

17             THE DEFENDANT:  Yes, Judge.

18             THE COURT:  At trial, and at every stage of your case,

19   you would be entitled to be represented by a lawyer.  If you

20   could not afford a lawyer, one would be appointed for you at

21   public expense — that is free of cost.  Do you understand that?

22             THE DEFENDANT:  Yes, Judge.

23             THE COURT:  During a trial, the witnesses for the

24   government would have to come to court and testify in your

25   presence, and your lawyer could cross-examine the government's

A000058

8

M6O6MELP

1  witnesses and object to evidence that's offered by the

2  government.  Do you understand that?

3          THE DEFENDANT:  Yes, Judge.

4          THE COURT:  At a trial, you would also have an

5  opportunity to offer evidence on your own behalf, if you wished

6  to do so, and you would have the right to compel witnesses to

7  come to court to testify in your defense.  Do you understand

8  that?

9          THE DEFENDANT:  Yes, Judge.

10          THE COURT:  At a trial, Mr. Melzer, you would have the

11  right to testify, if you chose to do so, but you would also

12  have the right not to testify.  And if you decided not to

13  testify, no one, including the jury, could draw any inference

14  or suggestion of guilt from the fact that you did not testify.

15  Do you understand that?

16          THE DEFENDANT:  Yes, Judge.

17          THE COURT:  Do you understand, Mr. Melzer, that by

18  pleading guilty, you're giving up your right to seek

19  suppression; that is exclusion from a trial of any evidence

20  against you that the government may have obtained improperly?

21          THE DEFENDANT:  Yes, Judge.

22          THE COURT:  If you're convicted at a trial,

23  Mr. Melzer, you would have the right to appeal that verdict.

24  Do you understand that?

25          THE DEFENDANT:  Yes, Judge.

A000059

M6O6MELP

```
1          THE COURT:  And even now, as you're preparing to enter
2    this plea, you have the right to change your mind and to plead
3    not guilty and to go to trial on the charges against you
4    contained in the indictment.  Do you understand that?
5          THE DEFENDANT:  Yes, Judge.
6          THE COURT:  If you plead guilty, Mr. Melzer, you also
7    give up your right not to incriminate yourself.  I say that
8    because I expect that later in today's proceeding, I'll ask you
9    questions about what you did in order to satisfy myself that
10   you are guilty of the charged offenses to which you are
11   pleading guilty and you will have to admit and acknowledge your
12   guilt.  Do you understand that?
13         THE DEFENDANT:  Yes, Judge.
14         THE COURT:  Thank you.
15         Now, Mr. Melzer, if you plea guilty, and if I accept
16   your plea, you'll give up your right to a trial and all of the
17   other rights that we have just talked about, other than your
18   right to a lawyer, which you have regardless of whether or not
19   you plead guilty.  But there will be no trial, and I will enter
20   a judgment of guilty in a sentence on the basis of your plea.
21   There will be no appeal with respect to whether the government
22   could use the evidence that it has against you or with respect
23   to whether you did or did not commit this set of crimes.  Do
24   you understand that?
25         THE DEFENDANT:  Yes, Judge.
```

M6O6MELP

| | |
|---|---|
| 1 | THE COURT:  Thank you. |
| 2 | So, Mr. Melzer, we just talked about a number of |
| 3 | important rights that you have.  Do you understand each and |
| 4 | every one of those rights? |
| 5 | THE DEFENDANT:  Yes, Judge. |
| 6 | THE COURT:  And are you willing to give up your right |
| 7 | to a trial and the other rights that I just discussed with you? |
| 8 | THE DEFENDANT:  Yes, Judge. |
| 9 | THE COURT:  Thank you. |
| 10 | Now, Mr. Melzer, I know that you've received a copy of |
| 11 | the indictment containing the charges against you.  Can I ask, |
| 12 | have you read it? |
| 13 | THE DEFENDANT:  Yes, I have. |
| 14 | THE COURT:  Thank you. |
| 15 | Do you understand that Count Four of the indictment |
| 16 | charges that from at least in or about 2019 up to and including |
| 17 | in or about May 2020, you willingly and knowingly attempted to |
| 18 | and aided and abetted the attempt to murder U.S. service |
| 19 | members in violation of Title 18, United States Code, Sections |
| 20 | 1114, 3238, and 2?  Do you understand that's the nature of the |
| 21 | charge against you in County Four? |
| 22 | THE DEFENDANT:  Yes, Judge. |
| 23 | THE COURT:  Counsel for the United States, can I ask |
| 24 | you to please state the elements of that offense? |
| 25 | MR. HELLMAN:  Yes, your Honor. |

M6O6MELP

1          First, that the defendant intended to murder any

2     officer or employee or any person assisting such officer or

3     employee of the United States or of any agency in any branch of

4     the United States government.

5          Second, that the defendant intended that such murder

6     be committed while such officers or employees were engaged in

7     the performance of their official duties or on account of the

8     performance of such duties or on account of the assistance

9     provided by persons assisting them in such duties.

10          And third, that the defendant did some act that was a

11     substantial step in an effort to bring about or accomplish that

12     crime.

13          THE COURT:  Thank you.

14          Mr. Melzer, do you understand that Count Five charges

15     that from at least in or about 2019 up to and including in or

16     about May 2020, you knowingly and intentionally did provide and

17     attempt to provide material support and resources to terrorists

18     in violation of Title 18, United States Code, Sections

19     2339A(a), 3238, and 2.?  Do you understand that's the nature of

20     the charge against you in Count Five?

21          THE DEFENDANT:  Yes, I do, Judge.

22          THE COURT:  Counsel for the United States, can I ask

23     you to please state the elements of that offense?

24          MR. HELLMAN:  Yes, your Honor.

25          First that the defendant knowingly provided or

M6O6MELP

1    attempted to provide material support or resources.

2              And, second, that the defendant knew or intended that

3    the provision or attempted provision of such material support

4    or resources would be used in preparation for or in carrying

5    out another crime; specifically, here, murdering U.S. military

6    service members.

7              THE COURT:  Thank you.

8              Mr. Melzer, do you understand that Count Seven charges

9    that between in or about April 2020 and May 2020, you illegally

10   transmitted national defense information to an unauthorized

11   person with reason to believe that such information could be

12   used to the injury of the United States in violation of

13   Title 18, United States Code, Section 793(d) and 2?  Do you

14   understand that's the nature of the charge against you?

15             THE DEFENDANT:  Yes, Judge.

16             THE COURT:  Thank you.

17             Counsel for the United States, can I ask you to please

18   state the elements of that offense?

19             MR. HELLMAN:  Yes.

20             First, that the defendant had lawful possession of

21   access to, control over, or was entrusted with information.

22             Second, that the information in question was related

23   to the national defense.

24             Third, that the defendant had reason to believe that

25   the information could be used to the injury of the

A000063

M6O6MELP

1  United States or to the advantage of any foreign nation.

2  And, fourth, that the defendant willfully communicated

3  or delivered or transmitted or caused to be communicated,

4  delivered, or transmitted, or attempted to communicate,

5  deliver, transmit, and cause to be communicated, delivered, and

6  transmitted, the information to a person who was not entitled

7  to receive it.

8  THE COURT:  Thank you.

9  Mr. Melzer, do you understand that if you were to go

10  to trial for each of these counts, that the government would be

11  required to prove all of the substantive elements of each of

12  the offenses beyond a reasonable doubt?

13  THE DEFENDANT:  Yes, Judge.

14  THE COURT:  Thank you.

15  Do you understand that the government would be

16  required to prove that venue is appropriate in the

17  Southern District of New York, which includes

18  Westchester County, among other places, by a preponderance of

19  the evidence?

20  THE DEFENDANT:  Yes, Judge.

21  THE COURT:  Thank you.

22  Now, Mr. Melzer, I'm going to tell you the maximum

23  possible penalty for this crime.  The maximum means the most

24  that could possibly be imposed.  It does not mean that it's

25  what you'll necessarily receive.  But you have to understand

M6O6MELP

1  that by pleading guilty, you're exposing yourself to the

2  possibility of receiving any combination of punishments up to

3  the maximum that I'm about to describe.  Do you understand

4  that?

5          THE DEFENDANT:  Yes, Judge.

6          THE COURT:  Thank you.

7          So, first, I'm going to tell you about the possible

8  restrictions on your liberty.  The maximum term of imprisonment

9  for Count Four is 20 years, which could be followed up to a

10  lifetime term of supervised release.  The maximum term of

11  imprisonment for Count Five is 15 years, which could also be

12  followed up to a lifetime term of supervised release.  The

13  maximum term of imprisonment for Count Seven is ten years,

14  which could be followed by up to three years of supervised

15  release.

16          Mr. Melzer, if you are sentenced to a term of

17  supervised release, you will be subject to supervision by the

18  probation office.  There will be rules of supervised release

19  that you will have to follow, and if you violate those rules

20  you can be returned to prison without a jury trial to serve

21  additional time with no credit for any time you served in

22  prison as a result of your plea and no credit for any time

23  spent on post-release supervision.  You should also understand

24  that there is no parole in the federal system, and that if you

25  are sentenced to prison, you will not be released early on

M6O6MELP

1   parole.  Do you understand that?

2              THE DEFENDANT:  Yes, Judge.

3              THE COURT:  Thank you.

4              Second, in addition to these restrictions on your

5   liberty, the maximum possibly punishment also includes certain

6   financial penalties.  The maximum allowable fine for each of

7   Counts Four, Five, and Seven is $250,000, or twice the gross

8   monetary gain derived from the offense or twice the gross

9   monetary loss to persons other than yourself, whichever is

10  greater, again, for each of those three counts.

11             In addition, I can order restitution to any person or

12  entity injured as a result of your criminal conduct.  I can

13  also order you to forfeit all property derived from the offense

14  or used to facilitate the offense.  And, finally, I must also

15  order a mandatory special assessment of $100 for each of the

16  offenses to which you plead guilty.

17             Counsel, before I proceed, do any of you wish to

18  correct or amend any of the penalties that I just described?

19             MR. HELLMAN:  No, your Honor.

20             MR. MARVINNY:  No, your Honor.

21             THE COURT:  Thank you.

22             Mr. Melzer, do you understand that these are the

23  maximum possible penalties?

24             THE DEFENDANT:  Yes, Judge.

25             THE COURT:  Thank you.  Do you understand that it is

16

M6O6MELP

| | |
|---|---|
| 1 | possible, taking all three counts together, that you could be |
| 2 | sent to prison for a total of 45 years of imprisonment? |
| 3 | THE DEFENDANT:  Yes, Judge. |
| 4 | THE COURT:  Thank you. |
| 5 | Mr. Melzer, do you understand that as a result of your |
| 6 | guilty plea, you may lose certain valuable civil rights, to the |
| 7 | extent you have them or might otherwise obtain them now, such |
| 8 | as the right to vote, the right to hold public office, the |
| 9 | right to serve on a jury, and the right to possess any kind of |
| 10 | firearm? |
| 11 | THE DEFENDANT:  Yes, Judge. |
| 12 | THE COURT:  Mr. Melzer, are you serving any other |
| 13 | sentence, either state or federal, at this time? |
| 14 | THE DEFENDANT:  No, Judge. |
| 15 | THE COURT:  To your knowledge, are you being |
| 16 | prosecuted in state court for any crime? |
| 17 | THE DEFENDANT:  No, Judge. |
| 18 | THE COURT:  Thank you. |
| 19 | Mr. Melzer, do you understand that if your lawyer or |
| 20 | anyone else has attempted to predict what your sentence will |
| 21 | be, that their prediction could be wrong? |
| 22 | THE DEFENDANT:  Yes, Judge. |
| 23 | THE COURT:  Do you understand that the sentence |
| 24 | ultimately imposed may be different from any estimate that your |
| 25 | attorney may have given you? |

A000067

M6O6MELP

1      THE DEFENDANT:  Yes, Judge.

2      THE COURT:  Thank you.  That's good.  Because no one,

3 not your lawyer, not the government's lawyer, really no one,

4 can give you any assurance of what your sentence will be

5 because I'm going to decide your sentence, and I'm not going to

6 do that now.  Do you understand?

7      THE DEFENDANT:  Yes, Judge.

8      THE COURT:  Thank you.  Now, Mr. Melzer, before I

9 impose your sentence, I'll review a presentence report that

10 will be prepared by the probation department.  You and your

11 counsel and counsel for the United States will have the

12 opportunity to review that report and to challenge the facts

13 that are reported in it as well as the application of the

14 advisory sentencing guidelines that are recommended by the

15 probation officer.  I'm obliged to do my own independent

16 calculation of the advisory sentencing guidelines that applies

17 in your case.

18      After your initial advisory guidelines range has been

19 determined, I have the authority in certain circumstances to

20 depart upwards and downwards from that range.  Ultimately, I'll

21 determine what a reasonable sentence is for you based on a

22 number of sentencing factors, which you can find in the statute

23 at 18 United States Code, Section 3553(a).  That may result in

24 the imposition of a sentence that's either greater or lesser

25 than the advisory sentencing guidelines range constrained, of

M6O6MELP

1    course, by the statutory cap on the total duration of any

2    sentence.  Do you understand all of this?

3            THE DEFENDANT:  Yes, Judge.

4            THE COURT:  Thank you.

5            Have you and your attorney discussed how the advisory

6    sentencing guidelines might apply to your case?

7            THE DEFENDANT:  Yes, Judge.

8            THE COURT:  Thank you.

9            Now, Mr. Melzer, even if your sentence is different

10   from what your lawyer or anyone else has told you it might be,

11   even if it's different from what you expect or from what's

12   contained in a written agreement that you've entered into with

13   the government, you will still be bound by your guilty plea and

14   will not be allowed to withdraw your plea of guilty.  Do you

15   understand that?

16           THE DEFENDANT:  Yes, Judge.

17           THE COURT:  Thank you.

18           So, Mr. Melzer, we just talked about a number of

19   possible consequences of your plea.  Do you understand all of

20   the possible consequences of your plea that we just talked

21   about?

22           THE DEFENDANT:  Yes, Judge.

23           THE COURT:  Thank you.

24           Now, I understand that there is a written plea

25   agreement between you, Mr. Melzer, and your lawyer and the

A000069

M6O6MELP

```
1   lawyer for the government.  I have in front of me the original
2   letter plea agreement dated June 22, 2022, to your lawyers,
3   Mr. Marvinny and Ms. Werner, from Assistant United States
4   Attorneys Adelsberg, Hellman, and Ravener.  I'm going to mark
5   this as Court Exhibit 1.  I'm going to hand it forward to the
6   government to retain in its possession.
7           Before I do that, I'd like to ask you some questions
8   about this agreement, Mr. Melzer.
9           First, did you sign the original of the plea agreement
10  on the last page?
11          THE DEFENDANT:  Yes, Judge.
12          THE COURT:  Did you do that today in the presence of
13  your lawyer?
14          THE DEFENDANT:  Yes, Judge.
15          THE COURT:  Did you read the agreement before you
16  signed it?
17          THE DEFENDANT:  Yes, Judge.
18          THE COURT:  Did you discuss it with your lawyer before
19  you signed it?
20          THE DEFENDANT:  Yes, I did.
21          THE COURT:  Did you fully understand it before you
22  signed it?
23          THE DEFENDANT:  Yes, Judge.
24          THE COURT:  Thank you.
25          Now, one of the features of your agreement with the
```

A000070

M6O6MELP

1  government is that you've agreed on the guidelines range, or

2  the guideline sentence that applies in this case.  You should

3  know that agreement is binding on you and it's binding on the

4  government, but it's not binding on me.  I say that because I

5  have my own obligation to determine what the correct guidelines

6  range and what the appropriate sentence is in your case.

7        Now, I'm not saying that I'm going to come up with

8  anything that's different from what's in your agreement with

9  respect to the sentencing guidelines calculation.  At this

10  point, I just don't know.  But it's important for you to

11  understand that if I do come up with a range that's different

12  from the one that you've agreed to with the government, I will

13  not let you withdraw your plea, even if the range that I

14  determine is higher than the one that you've agreed to with the

15  United States, understanding in all circumstances that the

16  total sentence cannot exceed the statutory maximum.  Do you

17  understand that?

18        THE DEFENDANT:  Yes, Judge.

19        THE COURT:  Thank you.

20        Do you understand, Mr. Melzer, that under some

21  circumstances, you or the government may have the right to

22  appeal any sentence that I impose.

23        THE DEFENDANT:  Yes, Judge.

24        THE COURT:  Thank you.

25        Now, Mr. Melzer, in your plea agreement, you have

M6O6MELP

waived a number of rights to appeal your conviction and

sentence.  You've agreed not to file a direct appeal or to

bring a collateral challenge, including but not limited to an

application under Title 28, United States Code, Sections 2255

or 2241 of any sentence at or below the stipulated guideline

sentence of 540 months' imprisonment.  You've also agreed not

to appeal or bring a collateral challenge of any supervised

release that is less than or equal to the statutory maximum.

You've also agreed not to appeal or bring a collateral

challenge to any fine that is less than or equal to $500,000.

You've also agreed not to appeal or bring a collateral

challenge of any special assessment that is less than or equal

to $300.

          Furthermore, you've agreed not to attack your

conviction and sentence on direct appeal or collaterally on the

grounds that the United States has failed to produce any

discovery material, Jencks Act material, material pursuant to

the *Brady v. Maryland*, other than information establishing your

factual innocence, or impeachment material pursuant to

*Giglio v. United States* that has not already been produced as

of the date of the signing of the agreement.

          Furthermore, although I understand that you're a

United States citizen, you have agreed not to challenge your

conviction and sentence on direct appeal or collaterally on the

basis of any actual or perceived adverse immigration

22

M6O6MELP

1   consequences, including removal or denaturalization resulting

2   from your plea and conviction.

3          Mr. Melzer, do you understand the rights to appeal or

4   otherwise challenge your conviction and sentence that you have

5   waived in your plea agreement?

6          THE DEFENDANT:  Yes, I do, Judge.

7          THE COURT:  Thank you.  And are you willing to waive

8   those rights?

9          THE DEFENDANT:  Yes, Judge.

10          THE COURT:  Thank you.

11          Mr. Melzer, does this written plea agreement

12   constitute your complete and total understanding of the entire

13   agreement between you and the government?

14          THE DEFENDANT:  Yes, Judge.

15          THE COURT:  Has anything been left out?

16          THE DEFENDANT:  No, Judge.

17          THE COURT:  Thank you.

18          Mr. Melzer, other than what's written in this

19   agreement, has anyone made any promise to you or offered you

20   any inducement to plead guilty or to sign this agreement?

21          THE DEFENDANT:  No, Judge.

22          THE COURT:  Has anyone threatened you or forced you to

23   plead guilty or to sign the plea agreement?

24          THE DEFENDANT:  No, Judge.

25          THE COURT:  Has anyone made a promise to you as to

A000073

M6O6MELP

1    what your sentence will be?

2              THE DEFENDANT:  No, Judge.

3              THE COURT:  Thank you.

4              So, Mr. Melzer, I told you earlier there would come a

5    time when I would turn to you and ask you what makes you

6    believe you're guilty of these three offenses.  This is that

7    time.  Would you please tell me what it is that you did that

8    makes you believe that you're guilty of the three charges to

9    which you intend to plead guilty?

10             THE DEFENDANT:  Yes, Judge.

11             THE COURT:  Thank you.

12             THE DEFENDANT:  At a time in May 2020, with the intent

13   that U.S. service members be killed, I disclosed sensitive

14   information about my Army unit's upcoming deployment to

15   individuals I was communicating with on the online in the

16   messaging app, Telegram.

17             And through the same conduct, I provided material

18   resources knowing that they were to be used in preparation for

19   the attempted murder of U.S. service members.

20             And, finally, I understood that the information I

21   disclosed was sensitive national defense information, and that

22   the individuals I provided it to online were not entitled to

23   receive it.  I'm sorry, and I regret every single thing I did.

24             THE COURT:  Thank you.

25             When you did those things, did you know what you were

M6O6MELP

1    doing was wrong and illegal?

2              THE DEFENDANT:  Yes, Judge.

3              THE COURT:  Thank you.

4              Counsel for defendant, do you know of any valid

5    defense that would prevail at trial or do you know of any

6    reason why your client should not be permitted to plead guilty?

7              MR. MARVINNY:  No, your Honor.

8              THE COURT:  Were there additional questions you'd like

9    me to ask the defendant?

10             MR. HELLMAN:  May I have a moment, your Honor?

11             THE COURT:  Thank you.  Take your time.

12             (Counsel confer)

13             MR. HELLMAN:  No, thank you.

14             THE COURT:  Thank you.

15             Counsel, let me hear briefly from the United States,

16   can you please briefly summarize the evidence that you would

17   present were the defendant to proceed to trial?

18             MR. HELLMAN:  Yes.  Thank you.

19             The government has, in the course of this case, made

20   significant factual proffers and understands the Court is

21   familiar with the evidence.

22             It would expect to introduce at trial -- but to

23   summarize the categories of evidence first, the evidence would

24   consist largely of the following:

25             First, materials recovered from searches of the

M6O6MELP

1    defendant's phone, including encrypted communications from the

2    messaging application Telegram, and others; photographs,

3    documents, videos, and other materials relating to, among other

4    things, a group known as the Order of 9 Angles, or O9A,

5    Jihadist terrorism, including ISIS and Al Queda, and generally

6    the white supremacist movement, and others.

7         Another category is records from service providers,

8    including the defendant's e-mails and online communications.

9         Next, the defendant's military records, including

10   enlistment paperwork, security clearance paperwork, and

11   self-disclosures made by the defendant to the military,

12   classified information, nondisclosure agreements, training

13   certificates, including trainings the defendant received with

14   respect to operational security, antiterrorism awareness, and

15   counterintelligence threat awareness and reporting.

16        Next, there would be evidence related to the

17   defendant's anticipated June 2020 deployment to what is

18   referred to in this case as the "military base."  That includes

19   witness testimony regarding training and briefings the

20   defendant and his unit received, documents relating to

21   unclassified and classified briefings provided to the

22   defendant's unit, training calendars and unit information, and

23   military base related materials, such as maps and grid

24   coordinates.

25        There would also be witness testimony from members of

A000076

M6O6MELP

1   Melzer's unit, including Melzer's commanding officers and

2   platoon mates.  As for the training and preparations for

3   deployment to the "military base" in May and June of 2020, as

4   well as the unit's actual deployment without the defendant to

5   the military base.

6          Witness testimony regarding Melzer's activities prior

7   to joining the military would also be offered by the government

8   as well as expert testimony concerning the white supremacist

9   movement and its connections to the Order of 9 Angles.

10         That evidence, among other things, would show that the

11  defendant was a member of an extremist group of Satanist,

12  neo-Nazi, anarchistic, and white supremacist views, known as

13  the Order of 9 Angles.  As part of the defendant's allegiance,

14  to O9A, the defendant joined the military in December 2018 as

15  part of what O9A calls an insight role; in other words, to

16  infiltrate the armed forces to gain personal training and

17  experience while subverting the goals of the organization;

18  here, the United States military.

19         The defendant was subsequently assigned to the 173rd

20  Airborne Brigade Combat Team --

21         MR. MARVINNY:  Your Honor, I object.  This is going

22  beyond the description.

23         THE COURT:  Thank you.

24         All I really need to hear, counsel, is briefly what

25  the evidence would be that establishes the elements of each of

27

M6O6MELP

| | |
|---|---|
| 1 | these crimes, to the extent there's anything you'd like to |
| 2 | present to supplement the allocution by the defendant. |
| 3 | MR. HELLMAN:  If the Court is satisfied.  I'll also |
| 4 | note the defendant was first brought to Westchester County at |
| 5 | Stewart International Airport following his arrest. |
| 6 | THE COURT:  Counsel for defendant, do you accept the |
| 7 | proffer regarding the propriety of venue here? |
| 8 | MR. MARVINNY:  Yes, we do.  Thank you. |
| 9 | THE COURT:  Thank you very much. |
| 10 | Counsel, do both of you agree that there is a |
| 11 | sufficient factual predicate for a guilty plea? |
| 12 | Counsel, first, for the United States. |
| 13 | MR. HELLMAN:  Yes. |
| 14 | THE COURT:  Thank you. |
| 15 | Counsel for defendant. |
| 16 | MR. MARVINNY:  Yes. |
| 17 | THE COURT:  Thank you. |
| 18 | Counsel, do any of you know of any reason that I |
| 19 | should not accept the defendant's plea of guilty? |
| 20 | Counsel for the United States? |
| 21 | MR. HELLMAN:  I do not. |
| 22 | THE COURT:  Thank you. |
| 23 | Counsel. |
| 24 | MR. MARVINNY:  No, your Honor. |
| 25 | THE COURT:  Mr. Melzer, I ask you to please stand. |

A000078

M6O6MELP

1    Thank you, Mr. Melzer.

2            Mr. Melzer, Count Four of the indictment charges that

3    from at least in or about 2019 up to and including in or about

4    May 2020, you willingly and knowingly attempted to and aid and

5    abetted the attempt to murder U.S. service members in violation

6    of Title 18, United States Code, Section 1114, 3238, and 2.

7    How do you plead to this count?

8            THE DEFENDANT:  Guilty, Judge.

9            THE COURT:  Thank you.

10           Count Five charges that from at least in or about 2019

11   up to and including in or about May 2020, you knowingly and

12   intently did provide and attempt to provided material support

13   of resources to terrorists in violation of Title 18,

14   United States Code, Sections 2339A(a), 3238, and 2.  How do you

15   plead to this count?

16           THE DEFENDANT:  Guilty, Judge.

17           THE COURT:  Count Seven charges that between in or

18   about April 2020 and May 2020, you illegally transmitted

19   national defense information to an unauthorized person with

20   reason to believe such information could be used to the injury

21   of the United States in violation of Title 18, United States

22   Code, Section 793(d) and 2.  How do you plead to this count?

23           THE DEFENDANT:  Guilty.

24           THE COURT:  Mr. Melzer, the indictment contains

25   forfeiture allegations with respect to Counts Four and Five of

A000079

29

M6O6MELP

1    the indictment.  Do you admit the forfeiture allegations with

2    respect to Counts Four and Five of the indictment?

3            THE DEFENDANT:  Yes, Judge.

4            THE COURT:  Thank you.

5            It is the finding of the Court in this case that

6    Mr. Melzer is fully competent and capable of entering an

7    informed plea, that Mr. Melzer is aware of the nature of the

8    charges and the consequences of the plea, and that the plea of

9    guilty is a knowing and voluntary plea supported by an

10    independent basis in fact containing each of the essential

11    elements of the offenses.  The plea is therefore accepted, and

12    the defendant is now adjudged guilty of those offenses.

13            Thank you very much, Mr. Melzer.  You can be seated.

14            Mr. Melzer, the probation department will want to

15    interview you in connection with the presentence report it will

16    prepare, as I was describing earlier.

17            Counsel for defendant, do you wish to be present for

18    any interview in connection with that report?

19            MR. MARVINNY:  Yes, please.

20            THE COURT:  I direct that there be no interview unless

21    counsel is present.

22            Counsel for the United States, please provide the

23    probation office with the government's factual statement within

24    seven days.

25            Counsel for defendant, please arrange for Mr. Melzer

A000080

M6O6MELP

1    to be interviewed by the probation department within the next

2    14 days.

3         Mr. Melzer, just briefly.  If you choose to speak to

4    the probation department, I just ask that you try to make sure

5    that what you say there is truthful and accurate.  This report

6    is very important for me in deciding what the appropriate

7    sentence is in your case.  I will read it very carefully.

8         I'm lingering on this issue now because you and your

9    counsel have the right to review the report and to comment on

10   it, both to the probation officer who is preparing the report,

11   and also to me at the time of sentencing.  So I just want to

12   encourage you to take advantage of that right and to read the

13   draft report and to let your counsel know if you have any

14   issues with it.  If you think that it's factually inaccurate or

15   if there are any other issues with respect to it, please point

16   them out to your lawyers so they can point them to the

17   probation officer or to my attention, if necessary, before

18   sentencing.

19        I'm going to set a sentencing date now.  Counsel, I'd

20   like to propose that sentencing take place on September 29,

21   2022, at 10:00 a.m.  Does that date and time work for each of

22   you?

23        First, counsel for the United States.

24        MR. HELLMAN:  Yes.

25        THE COURT:  Thank you.

31

M6O6MELP

1          Counsel for defendant.

2          MR. MARVINNY:  Your Honor, that date works.  I wonder

3     if the Court would consider a longer sentencing date than is

4     typical, given the complexity of the issues that I think are

5     likely to arise at sentencing and the amount of work I think

6     both sides are going to have to endeavor into to get this done.

7     I also have a trial scheduled in late October in the

8     Eastern District of New York that will present some time

9     constraints, so I'm wondering -- Mr. Adelsberg is my opponent

10    in that trial, for what it's worth.

11          I am wondering if the Court will consider a sentencing

12    date approximately six months from today rather than three.

13          THE COURT:  Thank you.

14          I'm happy to accommodate that.  I'm on trial during

15    much of December, at least I expect to be.  So I propose, then,

16    that we schedule this for right after the holiday.  My proposal

17    would be that we schedule this for January 4 at 1:00 p.m. in

18    light of the defense's request.

19          Counsel, does that work for each of you?  First,

20    counsel for the United States?

21          MR. HELLMAN:  Your Honor, if it would be possible for

22    a date later in that week or the following, the government

23    would appreciate that.

24          THE COURT:  Thank you.  That's not a problem.

25    January 6 at 10:00 a.m.

M6O6MELP

| | |
|---|---|
| 1 | MR. HELLMAN:  That would be fine.  Thank you. |
| 2 | THE COURT:  Counsel for defendant. |
| 3 | MR. MARVINNY:  Yes.  Thank you, your Honor. |
| 4 | THE COURT:  Very good.  Thank you. |
| 5 | So sentencing is scheduled for January 6, 2023, at |
| 6 | 10:00 a.m. |
| 7 | Just briefly, counsel.  Counsel for defendant alluded |
| 8 | to the prospect of complex sentencing submissions here.  As a |
| 9 | result, my inclination is to deviate from the default rule in |
| 10 | my individual rules of practice regarding the timing of |
| 11 | sentencing submissions. |
| 12 | The default rule is that the defendant's submission |
| 13 | are due two weeks prior to sentencing and that the government's |
| 14 | are due one week prior to sentencing.  In light of your |
| 15 | comments, counsel, I'm inclined to modify the default rule to |
| 16 | have the defendant's submissions due four weeks before |
| 17 | sentencing and the government's due two weeks before |
| 18 | sentencing. |
| 19 | Counsel, is there any reason why you can't proceed in |
| 20 | that way? |
| 21 | Counsel first for the government. |
| 22 | MR. HELLMAN:  No. |
| 23 | THE COURT:  Counsel. |
| 24 | MR. MARVINNY:  No, your Honor. |
| 25 | THE COURT:  Very good.  Thank you. |

M6O6MELP

1          So I'm asking the parties to present your sentencing

2     submissions in accordance with that schedule in lieu of the

3     default schedule established in my individual rules of

4     practice.

5          Very good.  Anything else that we need to take up now

6     before we adjourn?

7          First, counsel for the United States.

8          MR. HELLMAN:  No, thank you.

9          THE COURT:  Thank you very much.

10          Counsel for defendant.

11          MR. MARVINNY:  No, thank you.

12          THE COURT:  Thank you very much.  This proceeding is

13     adjourned.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25

A000084

1

N333MELS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 Cr. 314 (GHW)

5   ETHAN PHELAN MELZER,

6              Defendant.

7   ------------------------------x    Sentencing

8                                      New York, N.Y.
                                       March 3, 2023
9                                      10:15 a.m.

10
    Before:
11
                    HON. GREGORY H. WOODS,
12
                                       District Judge
13

14                      APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    MATTHEW HELLMAN
17  SAMUEL S. ADELSBERG
    KIMBERLY J. RAVENER
18       Assistant United States Attorneys

19  FEDERAL DEFENDERS OF NEW YORK
         Attorneys for Defendant
20  JONATHAN A. MARVINNY
    ARIEL C. WERNER
21

22

23

24

25

A000085

N333MELS

1          THE DEPUTY CLERK:  In the matter of the United States

2     v. Ethan Phelan Melzer, docket no. 20 Cr. 314.  Counsel, please

3     state your appearance for the record.

4          MR. HELLMAN:  Good morning.  Matthew Hellman, Sam

5     Adelsberg, and Kimberly Ravener for the United States.

6          THE COURT:  Thank you very much.  Good morning.

7          MR. MARVINNY:  Good morning.  Federal Defenders of New

8     York by Jonathan Marvinny and Ariel Werner for Ethan Melzer.

9          THE COURT:  Thank you very much.  Good morning.

10          We are here to conduct a sentencing hearing for

11     Mr. Melzer.  I've received and reviewed the following materials

12     in connection with this sentencing:

13          First, the presentence report, which is dated

14     February 13, 2023.  Second, the defendant's sentencing

15     memorandum, which is dated February 3, 2023, together with its

16     exhibits.  Third, the government's sentencing memorandum, which

17     is dated February 17, 2023.  Fourth, the defendant's

18     supplemental sentencing submission, which is dated February 24,

19     2023.  Fifth, the government's supplemental sentencing

20     submission, which is dated February 27, 2023.  Sixth, the

21     defendant's supplemental sentencing submission, which is dated

22     February 27, 2023.  The two supplemental sentencing submissions

23     submitted by the defendant on February 28, 2023, and the joint

24     supplemental sentencing submission, which is dated March 1,

25     2023.

3

N333MELS

1          Counsel, have each of the parties received all of
2     those materials?
3          MR. HELLMAN:  Yes.
4          MR. MARVINNY:  Yes, your Honor.
5          THE COURT:  Thank you.
6          Have each of the sentencing memoranda been filed with
7     the clerk of court?
8          MR. HELLMAN:  Yes, your Honor.  I believe so.
9          MR. MARVINNY:  Yes.
10         THE COURT:  Thank you.
11         Are there any other submissions in connection with
12    this sentencing?
13         MR. HELLMAN:  Not from the government.
14         MR. MARVINNY:  Not from us, your Honor.
15         THE COURT:  Thank you.
16         Counsel for defendant, let me turn first to you.
17    Counsel, have you read the presentence report?
18         MR. MARVINNY:  Yes.
19         THE COURT:  Have you discussed it with your client?
20         MR. MARVINNY:  Yes, I have.
21         THE COURT:  Thank you.
22         Mr. Melzer, let me turn to you.  Have you read the
23    presentence report?
24         THE DEFENDANT:  Yes, Judge.
25         THE COURT:  Thank you.  Have you discussed it with

A000087

N333MELS

1  your counsel?

2          THE DEFENDANT:  Yes, Judge.

3          THE COURT:  Have you had the opportunity to review

4  with your counsel whether there are any errors in the

5  presentence report, or if there are other issues with the

6  presentence report that should be addressed by the Court?

7          THE DEFENDANT:  No, Judge.

8          THE COURT:  Have you had the opportunity to talk about

9  such issues with your counsel?

10          THE DEFENDANT:  Yes, Judge.

11          THE COURT:  Thank you.

12          Counsel for the United States, have you read the

13  presentence report?

14          MR. HELLMAN:  Yes.

15          THE COURT:  Thank you.

16          Counsel for the United States, do you have any

17  objections related to the factual accuracy of the presentence

18  report?

19          MR. HELLMAN:  No, your Honor.  And the only amendments

20  proposed were those agreed upon by the parties in the March 1st

21  letter the Court previously referenced.

22          THE COURT:  So, as counsel alludes to, as noted in my

23  orders from last week, there were facts to which the defendant

24  objected in the PSR.  The parties convened and proposed a

25  series of modifications to the factual recitations in the PSR.

N333MELS

```
1    Those proposed modifications are included in the joint letter
2    filed by the parties on March 1, 2023, at docket no. 168.
3              Counsel for the United States, am I correct in
4    understanding that the government agrees to the modification of
5    the presentence report consistent with those proposals?
6              MR. HELLMAN:  Yes.
7              THE COURT:  Thank you.
8              Counsel for defendant, do you agree to the
9    modifications of the presentence report that are set forth in
10   that letter?
11             MR. MARVINNY:  Yes, we agree.
12             THE COURT:  Thank you.
13             With the stipulation of the parties, I'll order that
14   the presentence report be modified to reflect the modifications
15   agreed to by the parties.
16             Counsel for defendant, do you have any objections
17   related to the factual accuracy of the presentence report,
18   after giving effect to the modifications outlined in docket no.
19   168?
20             MR. MARVINNY:  We have none after those modifications.
21             THE COURT:  Thank you.  Very good.
22             Counsel for the United States, do you have any
23   objections to the factual recitations in the presentence report
24   after giving effect to those modifications?
25             MR. HELLMAN:  No.
```

N333MELS

```
1          THE COURT:  Thank you.

2          Given that there are no objections to the factual

3    recitations in the presentence report, the Court adopts the

4    factual recitations in the presentence report, subject to the

5    modifications set forth in docket no. 168 to which the parties

6    have stipulated.  The presentence report will be modified to

7    reflect those modifications.

8          The presentence report will be made part of the record

9    in this matter and will be placed under seal.  If an appeal is

10   taken, counsel on appeal may have access to the sealed report

11   without further application to the Court.

12         Now, although District Courts are no longer required

13   to follow the sentencing guidelines, we are still required to

14   consider the applicable guidelines in imposing sentence.  And

15   to do so, it's necessary that we accurately calculate the

16   advisory sentencing guidelines range.

17         In this case, defendant pleaded guilty to Counts Four,

18   Five, and Seven of the superseding indictment in this case.

19         Count Four charged the defendant with attempted murder

20   of U.S. service members in violation of Title 18, United States

21   Code, Sections 114, 3238, and 2.

22         Count Five charged the defendant with provision and

23   attempted provision of material support to terrorists in

24   violation of Title 18, United States Code, Section 2339A(a),

25   3238, and 2.
```

N333MELS

1     And Count Seven charged him with illegal transmission

2     of national defense information in violation of Title 18,

3     United States Code, Section 793(d) and 2.

4     Counsel for the United States, does the government

5     agree that a two-level adjustment is appropriate here under

6     Section 3D1.1(a)?

7     MR. HELLMAN:  Yes.

8     THE COURT:  Thank you.

9     I calculate the sentencing guidelines in a manner

10    consistent with the plea agreement and the presentence report.

11    The applicable sentencing guidelines manual is the

12    November 1st, 2021, sentencing guidelines manual.

13    Counts Four, Five, and Seven are grouped for

14    guidelines calculation purposes because they involve the same

15    victim and two or more acts or transactions connected by a

16    common criminal objective or constituting part of a common

17    scheme or plan.

18    The guideline for that group is the guideline for

19    Count Four, as it results in the highest offense level.

20    Pursuant to Section 2A1.1(a)(1), the base offense

21    level for Count Four is 33, because the object of the offense

22    would have constituted first degree murder.  Because the

23    offense involved or was intended to promote a federal crime of

24    terrorism, 12 levels are added pursuant to Section 3A1.4(a).

25    A six-level increase is warranted pursuant to Section 3A1.2(b),

N333MELS

1   because the intended victims were government officers or

2   employees, and the defendant's commission of the offense was

3   motivated by their status as such.  A two-level increase is

4   warranted pursuant to Section 3B1.3, because the defendant

5   abused a position of public or private trust, or used a special

6   skill in a manner that significantly facilitated the commission

7   or concealment of the offense.

8           Because the defendant has demonstrated acceptance of

9   responsibility for his offense through his plea allocution, I

10  apply a two-level reduction pursuant to Section 3E1.1(a),

11  resulting in an offense level of 51.

12          Because this is one of the rare cases in which the

13  offense level exceeds 43, the offense level will be treated as

14  43.  As a result, the applicable guidelines offense level for

15  this offense is 43.

16          Because the offense involved a federal crime of

17  terrorism, the defendant's criminal history category is VI.

18          I've considered whether there is an appropriate basis

19  for a departure from the advisory range within the guideline

20  system, and while I recognize that I have the authority to

21  depart, I do not find any ground warranting a departure under

22  the guidelines.

23          In sum, I find that the offense level is 43, and that

24  the defendant's criminal history category is VI.  Therefore,

25  the guidelines range in this matter would be a lifetime term of

N333MELS

imprisonment.  However, because the statutory maximum sentence

applicable to the crimes of conviction is 45 years, the

guideline sentence is 540 months' imprisonment.

Counsel, does either party have any objections to the

sentencing guidelines calculation?

MR. HELLMAN:  No.

MR. MARVINNY:  No, your Honor.

THE COURT:  Thank you.

Let me turn first to counsel for defendant.  Counsel,

do you wish to be heard with respect to sentencing?

MR. MARVINNY:  Yes, your Honor.  May I take podium?

THE COURT:  Thank you.  Yes, you may.

MR. MARVINNY:  Thank you.

Your Honor, I want to start today in the same place we

began our sentencing letter, which is by acknowledging the

severity of Ethan Melzer's offense.  We couldn't and would not

say that it was anything other than serious.  Ethan, your

Honor, knows more than anyone in this courtroom that he did

wrong, and he is profoundly remorseful for what he did.

He wrote a letter to this Court that's at Exhibit A of

our sentencing submission.  It was a frank and searching letter

that did not seek to shirk responsibility.  Ethan wrote that

letter entirely on his own.  As he made clear in that letter,

he will live with the shame of his offense for the rest of his

life.  He is very, very aware of that.  So, that's where we

A000093

10

N333MELS

wanted to begin.

Nevertheless, your Honor, we've said in our sentencing
letter that there are circumstances that mitigate Ethan's
offense, and I want to take the opportunity that I have to
speak to you today to highlight some of them. They are all in
our sentencing submission. I don't seek to be needlessly
repetitive. I know the Court has read the letter. But there
are certain aspects I would be remiss not to highlight.

First, your Honor, notwithstanding the severity of the
offense, the fact is that the Court is sentencing this young
man for a crime where no one was harmed, and where no one was
close to being harmed. That's the reality.

This offense took place entirely online. We say that
the planning, such as it was, that Ethan was involved in was
beyond inchoate. I think that's at least partially reflected
in the fact that Ethan has pled guilty to inchoate offenses.

Your Honor, the government I know has pushed back and
will push back on our claim that no one was close to being
harmed here. We stand by that claim. And in support of that,
I respectfully point the Court no further than the words of the
very participants in the offense itself. We quoted some of
these in our sentencing submission. The individual now known
as CC-1, co-conspirator-1, who turned out to be a 15-year-old
living in Canada, pretending to be a paratrooper online. Just
a couple of days before Ethan was taken into custody, said in

A000094

N333MELS

1    the chats that other than a really basic plan of attack we,

2    don't really have much else.  We certainly have no one to

3    commit the offense.

4           The government's informant read our last cull group a

5    confederacy of dunces.  It is not excusing or minimizing

6    anything that Ethan did to point out the reality this was a

7    crime online that was not even close to fruition.

8           There is also no dispute that is a fact this Court may

9    take into consideration.  The government quoted in its

10   sentencing letter from the Second Circuit case *Stewart*, 590

11   F.3d 93.  They quoted from the concurrence in that case, but

12   majority in that case said it is entirely reasonable for

13   district judges to consider the fact that no injury occurred in

14   an offense.  And to find that that fact mitigates the gravity

15   of the offense.

16          Of course, as this Court knows, the criminal law

17   punishes inchoate offenses less than substantive offenses.

18   That is a well-settled principle.  It is something the Court

19   can consider.

20          Your Honor, recently Judge Stein in this district in a

21   material support case imposed a 96-month sentence where there

22   was a guidelines range after trial of 420 months.  The case was

23   *United States v. Hossain*, 19 Cr. 606.  The defendant there was

24   convicted after trial of "planning to use a machine gun to

25   attack a military recruiting station in the Bronx, and then try

N333MELS

1    to travel to Afghanistan to join the Taliban."  With a

2    guideline sentence of 420 months, Judge Stein imposed 96

3    months.  He said, quoting from the sentencing transcript, which

4    is at ECF 194, "The fact that Hossain's plan was thwarted

5    before he even came anywhere close to achieving his goal is

6    part of the record here, and should be taken into account.

7    Also, what should be taken into account is that there were no

8    victims or injuries, and that Hossain's plan was unlikely and

9    muddled and unrealistic."

10           Your Honor, that was true here as well.  This plan was

11   muddled, unlikely, and unrealistic.

12           I've said it before, I'll say it again.  The bottom

13   line is that no one was close to being hurt here, despite what

14   the government says.

15           Next your Honor, an additional factor that seriously

16   mitigate's Ethan's offense that this Court should take into

17   account is his overwhelming youth.  He was 21 at the time of

18   his offense.  Just 21 years old.  He turned 22 four days before

19   he was taken into custody by military authorities.  He very

20   clearly possessed the lack of maturity and the underdeveloped

21   sense of responsibility that the Supreme Court and other courts

22   have found present in youth, and factors that should impact a

23   Court's sentencing when sentencing someone who was Ethan's age

24   at the time of the crime.

25           Judge Rakoff has put it simply that a 21-year-old's

N333MELS

criminal conduct is not as morally reprehensible as that of an adult.

And your Honor, the fact is Ethan's youth was evident all throughout this offense. The way he was seduced by a dangerous, but also in some ways ridiculous cult at the age of 20 in 2019. And I say "ridiculous." The government took issue with some of what we said about that in our sentencing submission. I only mean that the Order of Nine Angles is an absolutely reprehensible group, but it is a group that any mature adult from the word go would recognize as absurd, dangerous, and not worth following. But Ethan fell down the rabbit hole in 2019, and began following that group, and we know the result of it.

It's not surprising that this offense took place in a very juvenile online context, in that the leader of the group that Ethan was chatting with was a 15-year-old from Canada, as I mentioned before.

Again, none of this is to excuse what Ethan did, but, the fact of how young he was at the time is something the Court should consider.

And your Honor, you know, I want to say this about Ethan. Ethan is not by any means irredeemable. He's been, frankly, demonized by the government at every turn, and I feel like they've sought to present a kind of monolithic view of Ethan, almost to paint him as if he was a monster.

A000097

N333MELS

1          He's committed an undeniably serious crime, so I

2    understand the government's anger at him, and I'm sure it makes

3    sense as a rhetorical strategy.

4          But, your Honor, Ethan is not a dyed-in-the-wool

5    extremist.  He is not someone who can't change.  He has already

6    begun to change.  We talked about in our submission his

7    immediate willingness and efforts to assist law enforcement

8    from the moment he was questioned by authorities when he was

9    still in Europe, including through when he came to the U.S. to

10   be prosecuted in the Southern District of New York.

11         Ethan offered to assist the FBI immediately.  Was some

12   of that self-interest?  Of course, any time anyone offers to

13   cooperate, there is some level of self-interest involved.  But

14   it is also not the behavior of an extremist who is so committed

15   to his beliefs that he's willing to go down with the ship, as

16   it were.

17         And your Honor, I again direct the Court to Ethan's

18   letter at Exhibit A from our sentencing submission.  That is a,

19   again, a searching letter where Ethan talks about the

20   foolishness of the group that he followed, his regret for what

21   he did, his desire to leave that all behind him.  And those are

22   not the words of an unrepentant extremist.  Not the kind of

23   unrepentant extremist the government has tried describe Ethan

24   as.

25         I've said it several times.  Ethan is not

N333MELS

irredeemable. He has a family that loves him and stands by
him. Some of the members Ethan's family are in court today.
Frankly, even when Ethan was let down by his family, Ethan has
continued to love them as well. He very much longs to see them
again while they are alive.

He has a legal team, your Honor, that is
extraordinarily fond of him. Mr. Mercer, who wrote a report
for this Court, who spent upwards of 40 hours with Ethan, met
with his family in Kentucky, is extraordinarily fond of Ethan.
I also have spent at least that amount of time with Ethan, and
have also gone to Kentucky to meet with his family.

To sit with Ethan, you get a very different image than
the one the government has presented. In person, he is kind,
he is considerate, and he is a pleasure to be around.
Government will say that's all fake. He is just fooling
everyone. But it's not true, your Honor. Ethan has wonderful
qualities.

And we submitted, our last submission to the Court was
a letter from the jail, from Ethan's supervisor, a corrections
officer there supervises Ethan in the kitchen who talked about
how well liked he is in the jail, how hard he works, how he
volunteers his time. He's impressed people in the jail.
That's much to his credit. This is a young man under
incredible pressure and stress, and he's made the most of what
he has at the MDC. We submitted the certificates that he's

A000099

N333MELS

1    achieved.

2              He's someone with a future.  He's young.  And his

3    youth kind of exemplifies everything the Supreme Court and

4    other courts have said about how youth should impact

5    sentencing.

6              His youth also means he can have a future.  The

7    government seeks a sentence that would mean that Ethan is not

8    released until he is over 60 years old.  They seek a sentence

9    that would take away all of the best years of his life.

10             Many years ago, Judge Hellerstein said that the goal

11   of rehabilitation "cannot be served if a defendant can look

12   forward to nothing beyond imprisonment.  That hope is the

13   necessary condition of mankind, and that a judge should be

14   hesitant before sentencing so severely that he destroys all

15   hope and takes away all possibility of useful life."

16             Ethan longs to see his mother again.  He longs to see

17   his father, his grandmother.

18             We're asking the Court to impose a sentence that

19   acknowledges the severity of what he did, but allows him the

20   chance to redeem himself and begin a new life.

21             The 45-year sentence, your Honor, that the government

22   seeks is not necessary.  it is far greater than necessary.  It

23   is excessive.

24             We ask that the court impose a sentence of 15 years'

25   imprisonment, 10 years of supervised release.  That is a

N333MELS

1    sentence that accomplishes all of the sentencing goals.  It has

2    teeth.  It's long.  It would place Ethan on a long period of

3    supervision when he is released.  It is a sentence that is

4    sufficient, but not greater than necessary, to accomplish what

5    this Court should at sentencing.

6             I'm happy to answer any questions the Court has, but

7    that's our request on behalf of Ethan.

8             THE COURT:  Thank you.

9             Let me turn to the defendant.  Mr. Melzer, do you wish

10   to make a statement to the Court?

11            THE DEFENDANT:  Yes.  I'm a little bit nervous.

12   But --

13            THE COURT:  That's fine.  Please take your time.

14            THE DEFENDANT:  I don't think I could have said it

15   better than when I wrote that letter.  I kind of poured my

16   heart out into it.  Everything I said.  I still regret

17   everything that I did.  I'm trying to -- I wish I could fix

18   what I did, but I can't.  But, I want to be able to show my

19   family and, like, I wish I could say I'm sorry to my platoon.

20   They're not here.  But, I'm sorry to them as well.  And I'm

21   sorry to my family.  I want to be able to show my family I can

22   actually be a productive member of society, and not just what

23   they're trying to make me as.

24            THE COURT:  Good.  Thank you very much, Mr. Melzer.

25            THE DEFENDANT:  Thank you.

N333MELS

```
 1              THE COURT:  Counsel for the United States, does the
 2    government wish to be heard with respect to sentencing?
 3    Counsel, I've been informed that there are also victims present
 4    who wish to be heard.  I propose to hear from the government
 5    first, and then to hear from them, unless you have an
 6    alternative proposal.
 7              MR. HELLMAN:  That's fine.
 8              THE COURT:  Thank you.  Please proceed.
 9              MR. HELLMAN:  Ethan Melzer is a traitor.
10              He attempted to murder dozens of American soldiers by
11    enabling terrorists to commit attacks through the exploitation
12    of sensitive and classified information he disclosed to others.
13              He was motivated to commit these crimes by a devotion
14    to a neo-Nazi, satanist, white supremacist group that embraces
15    a seemingly limitless racist and sexist violence toward all
16    people, except a narrow band of white men.
17              In support of that group's sole unifying principles,
18    which are chaos, death and white power, the defendant took
19    advantage of his position of trust.  He violated the awesome
20    privilege and honor unique to our nation's servicemen and
21    women, weaponized his access to sensitive information, and
22    plotted the direct murders of his fellow unit members.
23              The defendant believed not only that he could arm
24    terrorists with information that would lead to the savage
25    ambush killings, which he described as his nearly defenseless
```

N333MELS

and surprised Army unit as it traveled to a military base, or an assault on what military base itself.  But also that by causing those murders, he would draw the United States into prolonged conflict that would cost even more American lives and weaken America's leadership and status as the world's leading plural democratic society.

         The defendant sought to end American lives and America itself.

         He did so as the enemy within, by betraying every oath he took, the service members who were ready to fight and die alongside him, if necessary, his countrymen, and every single promise and ideal of the nation he was sworn to serve.

         That is why the government says Ethan Melzer is a traitor.

         That is why the position of the United States government is clear:  That the defendant should receive a sentence of 45 years' imprisonment.  It is the sentence called for by the guidelines, it is the sentence that sufficiently and correctly punishes the defendant for the devastating ways he committed each of the three crimes of conviction, incapacitates the defendant from using his training and experience from threatening additional lives, and deters similar conduct, particularly by those with missions of hate, terror, and division who would seek to use the military or other government resources to harm America or her allies from within.

N333MELS

1          The government has detailed the reasons for its

2     position in its sentencing memorandum, so I will endeavor to

3     highlight today a selection of the facts that the government

4     believes are most supportive of imposing that serious 45-year

5     sentence in this case.

6          And I must begin by addressing the nature and

7     circumstances of the offense, which are in many ways without

8     compare.  And I have to start by outlining the Order of Nine

9     Angles quickly.

10          We know that the defendant was discussing the Order of

11     Nine Angles by February of 2019.  O9A is a vicious white

12     supremacist and satanist organization that promotes violence,

13     including rape and murder, against women and children, and

14     indiscriminate hate-fueled attacks against individuals and

15     organizations across nearly the full spectrum of American life.

16     The organization lionizes Hitler and the Holocaust, advocates

17     rape as a tool of political violence and terror, as well as a

18     means by which to further the so-called white race, embraces

19     terrorist, is aligned with a variety of hate groups, which seek

20     the violent destruction of western civilization.

21     Specifically, O9A are accelerationists, that is, they believe

22     in the inevitability of a global race war, and seeks to move

23     civilization closer to it through disruptive violence and

24     chaos.

25          There is nothing benign about the organization.  It

A000104

N333MELS

espouses devastating world views, it ensnares people like the

defendant, certainly.  But it's, frankly, on its face no more

ridiculous than any of many other severely maligned terrorist

or white supremacist organizations which exist in the world

today and have existed in the past.  As the government

submitted in its sentencing memorandum, Nazism is on its face

ridiculous.  It was responsible, of course, for a world war and

millions upon millions of deaths.

By March 2019, weeks after the defendant's February

discussions about researching O9A, the defendant told others he

want to be recruited to join O9A.  By April, he had downloaded

and saved nearly a dozen O9A-related texts to his phone, and

began sharing them with others.  By May, he explained to O9A

followers online that he had enlisted with the U.S. Army, and

would train to become a member of the Airborne.  He had a

direct conversation in which he acknowledges that the uniform

code of military justice clearly banned O9A, and explained that

he would hide his affiliations from the military.

Later, in May 2019, Melzer discussed starting an O9A

group with others and suggested its motto:  Total Aryan

Victory.  Three weeks later, he reported for basic training at

Fort Benning, Georgia.

By the time the defendant began basic training, he had

embraced O9A's world view, decided to hide it from others in

the military, and he did.

A000105

N333MELS

1          By September 2019, he deployed to Italy.  His

2     enthusiasm for O9A was at that point undimmed.  In October and

3     November of 2019, well before the specific offense conduct, he

4     continued discussing O9A with others, frustrations he had in

5     the military.

6          In December of 2019, when discussing the purportedly

7     coming race war, the defendant told another person "I'm in the

8     Army specifically for this.  I literally did join for this

9     exact reason.  Can't really do anything when I'm in fucking

10    Italy.  My unit is stationed in Italy."  Described his military

11    service as "serving the enemy."  And "that he hated what they

12    have us preparing to fight for and their ideals behind it."

13    That's in December of 2019.

14          There are more examples of this in the government's

15    sentencing submission.

16          To be clear, the government is only talking about

17    Melzer's adoption of O9A's principles between not earlier than

18    February and not later than June of 2019.  The point is that

19    the defendant was an outright supporter and recruiter in

20    certain ways for O9A prior to beginning basic training.

21          He was serving O9A's mission and himself, and

22    apparently waiting for an opportunity.  That opportunity came

23    when Melzer was reassigned to a platoon heading out of Italy to

24    what we have collectively defined as the military base.

25          Before addressing that, it's important to note that

A000106

N333MELS

throughout this period, the materials Melzer accessed, as his

commitment to O9A deepened, depicted countless forms of

extremist, jihadist, and racist violence.  The Court has had an

opportunity to review a subset of those materials.  They are

absolutely horrific.  Nazi and neo-Nazi propaganda.  A video

which appears to depict a black woman being lynched in front of

a confederate flag by two laughing white men.  Then there is

the ISIS and other jihadist propaganda, footage of assaults on

U.S. forces and counterterrorist forces of other nations,

bombings, ISIS executions, including the beheadings of

prisoners, videos of hostages shot in the head and pushed into

mass graves or dumped in to rivers like garbage.

But of particular concern was the ISIS propaganda

video showing the murder of several U.S. service members in

Africa in 2018.  That footage was released by ISIS, after their

members gathered the footage from the corpse of an American

service member.

The ambush in question involved Army forces in a

convoy.  Weeks after that video was on the defendant's phone,

the defendant would begin telling others that an ambush of his

own upcoming convoy could result in a mass casualty event.

So, by May of 2020, the principal period of the

offense conduct here, Melzer had been an active O9A supporter

for well over a year.  That included the entire time he was in

the Army since basic training.  He learned that he would be

A000107

N333MELS

joining another unit, and training rapidly to deploy to the
military base.

As he was training on the parameters of that mission,
he learned important things:  The purpose and location of the
military base, the platoon's duties at the base, its weapons
requirements, threats scenarios at the base, and other critical
information.  Almost immediately after beginning to receive it,
Melzer began sharing it with other O9A members.  Within weeks,
he was discussing passing the information about the deployment
to others, including an individual described as a member of al
Qaeda, who could take advantage of the sensitive knowledge
Melzer possessed.

Importantly, he did not just pass that information to
one individual, CC-1, or a very small subset of others in a
closed-off chat.  He passed it to a broader group online and
then entered that closer group.

He actively sought an audience for the information he
obtained, pursuing others who could bring the knowledge to
those who could execute an assault on the unit at the base.

The inspiration for the attack was entirely Melzer's
own.  The defendant proposed the assault, the horrific
casualties that would ensue if the attack was executed
properly.  And importantly, particularly in the context of the
defendant's conviction under Section 793(d), the defendant
disclosed the purpose of the military base.  This was on the

A000108

N333MELS

1    context of outlining the importance of the base, and the

2    devastating impact that an assault on the base, however

3    successful, would have on American interests going forward.

4         To the extent that counsel has mentioned messages by

5    CC-1 or the government's source that suggested that the attack

6    plan that was not fully baked.  That is not the opinion of the

7    Army.  And I think the impact statements the Court is going to

8    hear today will help explain that, perhaps better than I can.

9         Whatever the idea in the minds of the co-conspirators,

10   the idea in the mind of the defendant was clear.  And the

11   reason that these attack scenarios were proposed by the

12   defendant, and the reason that he credited these attack

13   scenarios as not merely fantasy and not unrealistic or

14   unlikely, is because they are the scenarios he was told by the

15   Army to watch out for.  These are the scenarios the Army

16   suggested posed the greatest risk to Melzer and his unit, and

17   to the military base.  And he regurgitated them to other

18   members of the group.  They are not high fantasy.  They may

19   sound unrealistic and strange from a courtroom in New York

20   City.  But, in a deployment, in a remote location, and a

21   military base which must be secured by 40 paratroopers, these

22   are real dangers that were really briefed to the unit, and they

23   are real dangers that do not evaporate because the defendant

24   has been brought to justice.  It is sensitive information which

25   has entered the internet, and over which the government has

A000109

N333MELS

1    lost positive control.

2              The day he was arrested, the defendant believed he was

3    on the verge of deploying to the military base, literally.  He

4    was in uniform, bags packed, waiting for the bus to go to the

5    airport.  He had O9A books in his bags.  Just hours earlier, he

6    was still discussing the attack plot with the confidential

7    source, complaining the U.S. would "be in a frenzy to send

8    people out there and start another war."  Hours before his

9    apprehension.

10             I outlined the foregoing again, your Honor, because

11   the nature and circumstances of the offenses are frankly

12   independently worthy of a guideline sentence.  The conduct I

13   described is one of the most stunning betrayals from within the

14   ranks of the U.S. military ever to be prosecuted in federal

15   court.  It is undisputed that the defendant committed himself

16   to O9A prior to starting basic training, that he reaffirmed his

17   allegiance to O9A to the military over and over again in

18   conversations with others, consumed immensely violent

19   propaganda, and viewed his military service as training that

20   was helping to make him a view violent tool of O9A's mission.

21             When unexpectedly assigned to a mission that would

22   bring him and his unit mates to a place of real danger, at the

23   very first opportunity, the defendant proposed the murder of

24   his fellow service members, and provided the exact details that

25   would help terrorists he knew could access the military base to

N333MELS

1   do it.

2         There is tangible harm.  It is absolutely true the

3   military base was not attacked.  The convoy was not attacked.

4   As the Court is going to hear soon from Captain Jacob Ferris,

5   who went on the deployment after the defendant's disclosures,

6   the deployment happened, and its members completed that

7   deployment's mission.

8         But as both Captain Ferris and Captain Joshua Kraus

9   will note, the potential danger is ongoing.  There is also the

10   harm that was caused to the unit members, which Captain Ferris

11   will describe.  Immense psychological harm.  A weakening of the

12   bonds within the military.

13         I cannot do justice to the frame of mind that the unit

14   mates had when they deployed.  I'll let the victims speak to

15   that.  But there is a real harm to the fellow service members

16   who were the targets of the defendant's murderous plot.

17         There is also a harm to the United States.  And that

18   is in terms of the national defense information, including

19   classified information, that was distributed by the defendant

20   with the intention that it advance the interests of enemies of

21   the United States.  That is information the United States

22   cannot reclaim.  It is information that the defendant

23   distributed.  There is real harm done.

24         Which leads me then to discuss briefly specific and

25   general deterrence.

N333MELS

1          For well over a year, including as a member of the

2     Army, the defendant shrewdly advised others on pursuing O9A's

3     goals, while enriching his own knowledge of the organization.

4          It bears repeating that the genesis of this attack

5     plot was entirely the defendant's own.  It was his idea.  He

6     willingly gave classified and dangerous information about his

7     unit to other members of the chats, and indeed, much of those

8     disclosures happened as he was peppered with questions about

9     his plot by others, but that's entirely of his own devise.  He

10     openly and repeatedly sought others to help complete the attack

11     and further the information for him.

12          It is true that the actual quite literal dissemination

13     of the information happened in encrypted chatrooms that the

14     defendant used, but it also happened in briefing rooms where

15     the defendant learned the information, began harvesting it, and

16     intending to deliver it later.

17          The harm happened to the deployment, the men who

18     actually went to the military base, and the harm continues to

19     the risks that adhere to the military base and service members

20     who deploy in the future.

21          I think importantly, nothing about the defendant's

22     Army service, including what are described in his submission as

23     salutary effects, positive effects of military service, to the

24     extent that's true, none of them dissuaded from O9A, or the

25     oaths and support of the U.S. against extremism that were

N333MELS

ignored. His experiences in training, getting to know other
service members, literally sleeping next to them, did not
prevent him from determining in the end to attempt to effect
their murders.

He instead sought military training and experience and
exhorted others to take his path. The defendant's willingness
to die, recruitment of others to O9A, military training, proven
ability to hide within even the Army while pursuing his true
aims, weigh heavily and unambiguously in incapacitating the
defendant through a strong sentence.

Turning to general deterrence, it is a critical
priority in fashioning a just sentence, respectfully. An
adequate deterrent message to mitigate the threat posed by
individuals affiliated with neo-Nazi or white supremacist or
violent terrorist groups, is an important feature of this
sentencing, amplified by the significant and specific danger
posed by insider threat actors like the defendant, in
particular.

That general deterrence prerogative is perhaps defined
no better or highlighted no better by defendant's own
statements in trying to recruit others to O9A from within the
military. Exhorting others to join the U.S. Armed Forces in
pursuant of O9A. Take advantage of training and experience so
that those individuals can become better servants of O9A.

Sadly, it is a reality that there are others who have

A000113

N333MELS

used, are using, and will use government resources, like the
military, to advance their extremist agendas. A significant
sentence in this case is necessary to deter those considering
entering the military, despite their hidden extremist beliefs.

To be absolutely clear, the defendant is not be
sentenced for his beliefs, his worldview, or even his advocacy
for it. But using the Army as a tool by which to advance those
goals, and threatening lives of his fellow service members,
while abusing classified and other national defense
information in support of terrorism is, and a message of
general deterrence reinforced by a significant sentence in this
case will dissuade others from using the Armed Forces
similarly.

I want to briefly address a point that counsel made
that the defendant is not irredeemable. The government
extended a plea agreement that the defendant accepted which
took the possibility of a life sentence off the table. The
government still urges a significant sentence, which is also
the guideline sentence in this case.

Because a life sentence in this case is no longer a
possibility, the defendant will have many of the advantages
that counsel described. The ability to serve a sentence and
look towards a life after it.

But the sentence that the government requests is
necessary to reflect all the prerogatives that I have already

N333MELS

described, however serious it may be, especially in the case of

a young person.

I'll conclude, your Honor, by repeating that the

defendant's arguments simply do not support the extraordinarily

variance he seeks.  By requesting a 30-year variance from the

guidelines, the defendant essentially requested that he be

sentenced for only one of the three crimes he committed.  Such

a variance would position the defendant significantly more

halfway beneath the sentence called for by the guidelines.

I think one way of looking at that sentence is to note

that that kind of sentence would suggest the defendant's

conduct placed him in the bottom quotient of those committing

offenses like these.

It simply cannot be that the defendant's active

membership in an extremist group for over a year of military

service, recruitment of others to the military in service of a

racist terror organization, distribution of sensitive national

security information and secrets, efforts to pass troop data to

terrorists, all in service of a plot to murder U.S. soldiers

and drive the nation to war in another country, qualifies him

for a sentence so severely divorced from the guidelines

recommendation.

That sentence would not reflect congressional intent,

it would not sufficiently deter the defendant or others, and it

would place the defendant's conduct dangerously out of scope

A000115

N333MELS

with the statutes he wantonly violated.

The defendant crossed every conceivable line.  Lying to drill instructors, superior officers, fellow soldiers, classified briefers, and more, so he could receive classified information and pass it to an organization as to which he knew even association was grounds for removal from the Army.

The defendant's longterm and deep commitment to the Order of Nine Angles, and his ultimate decision to serve its goals, in violation of every American value he was sworn to protect, meant he broke bonds with his fellow soldiers, his Constitution, and his country.

The defendant is a traitor.  He tried to murder Americans.  He did so by disclosing secrets and embracing terrorism.  A 45-year sentence is the appropriate sanction for these immense crimes.

THE COURT:  Thank you, counsel.

I understand that there are victims present who wish to address the Court.  I'd ask that the first come forward.  You can use the podium.  My deputy can assist you.

MR. HELLMAN:  Thank you.  For the record, I'll note that the Army is represented by three individuals today.  First, Major Estefania Mishkin.  She will not be speaking on behalf of the Army, but is present.

The first victim impact statement will be delivered by Captain Joshua Kraus.

1          THE COURT:  Thank you, please come forward.

2          CAPTAIN KRAUS:  Good morning, your Honor.  I have

3     prepared a statement today I would like to read to the Court.

4          My name is Captain Joshua Kraus.  I am a military

5     intelligence officer who has worked with both the 173rd

6     Infantry Brigade Combat Team, and the 207th Military

7     Intelligence Brigade.  As a military intelligence officer, my

8     duties include providing leaders with relevant, timely, and

9     accurate information regarding enemy actions, capabilities, and

10    how to deter them.

11         I was directly in charge of the preparation of

12    classified and unclassified intelligence to prepare Ethan's

13    platoon to deploy to the military base.  I provided an overview

14    of the terrain, weather, enemy, and travel considerations that

15    they were to consider.  I outlined presumed modes of

16    transportation that the platoon might take once they arrived in

17    country.  I went over scenarios in which enemy units, terrorist

18    organizations, or civilians might directly attack the military

19    base.  I went into classified space in which I outlined

20    specific actors and organizations that might have been

21    operating within 8 to 16 hours of the platoon's position.  I

22    provided the squad leaders and above with unclassified products

23    to review during their flight.

24         Now, due to Ethan's actions, I will always have to

25    think twice in regards to how I brief and whom I share very

A000117

N333MELS

1    sensitive information with.

2           I was asked to review some of the material Ethan had

3    shared with his group, and was completely shocked to see the

4    information I relayed to Ethan's platoon being shrouded in

5    those messages.  The information that I delivered to protect

6    Ethan and his platoon was shared with our sworn enemies.

7           My professional observation, your Honor, is that the

8    sentence that you will hand down will set a precedent in many

9    ways.  Our allies and enemies are very aware of this case.  Our

10   allies will take notice of the sentence and will weigh if they

11   should continue to share the most critical and sensitive

12   secrets with the United States of America.  The United States

13   must and will continue to lead from the front.

14          Ethan Melzer knowingly violated his oath of enlistment

15   to the United States Army, Department of Defense, and most

16   importantly, to the men and women to his left and right who

17   were serving alongside with him in Italy.  That violation of

18   trust amongst the ranks is egregious, and will unfortunately

19   have lasting impacts.

20          Instead of standing ready to engage and destroy the

21   enemies of the United States in close combat, Ethan Melzer

22   invited enemies of the United States into our sensitive spaces.

23   He wanted to orchestrate a violent jihadist attack against his

24   team, his squad, and his platoon.

25          Building cohesive teams is central to the Army

N333MELS

culture.  That is why the Army instills that we have team
leaders to lead small teams, squad leaders, platoon leaders,
and company commanders.  Ethan had the trust of his team, and
now has caused his entire platoon to question the trust they
give to their comrades to the left and right for the rest of
their lives.

         An effective grasp of any mission requires training
personnel.  Commanders must not underestimate the importance of
providing training.  Now due to Ethan's actions, every
commander and leader that this case has affected will think
twice about the people they are sending out on a deployment.
Ethan created a psychological cancer that attacks the very
fiber of who we are as U.S. service members.

         We do not care who you sleep with, who you worship,
where you call home, or who you voted for.  It is our duty to
uphold the Constitution of the United States and accomplish the
mission at hand.  When Ethan was entrusted with critical and
sensitive information intended to keep U.S. service members
free from harm, he took that information and relayed it to our
very worst enemies in order have them killed.

         I want to provide context and my point of view, your
Honor, to the damage Ethan has done.  I provided sensitive
information on how I would attack this base if I were the
enemy.  That is part of my job as an intelligence professional,
to describe in detail possible vulnerabilities of the military

A000119

N333MELS

base.  I relayed the threats and described in detail my

assessment.  This assessment was on a need-to-know basis.  This

information now can never be retrieved.  This information now

can be passed to any amount of people and/or organizations and

can still be used to harm U.S. service members and partner

nation forces.

Your Honor, Ethan should receive 45 years in prison

The Department of Defense cannot just pick up and move

a base again, due to Status of Forces agreements and diplomatic

agreements.  I say that to underscore that once this case is

over, the threat caused by this conduct will continue to

threaten U.S. service members, wherever they may be.

Your Honor, Ethan should receive 45 years in prison

because the information that he shared will never be able to be

recovered, and can still harm servicemen and women now and long

into the future.  Thank you.

THE COURT:  Thank you.

MR. HELLMAN:  Your Honor, the second and last victim

impact statement will be delivered by Captain Jacob Ferris.

THE COURT:  Thank you.  Please come forward.

CAPTAIN FERRIS:  Your Honor, I'd like to thank you for

allowing me to speak in your courtroom today.

My name is Captain Jacob Ferris.  And while I am now

transitions to the civilian sector to pursue my MBA, I've also

served in the U.S. Army for the last 11 years.  I've held a

wide range of jobs, all the way from an enlisted private to

N333MELS

captain.  More importantly, I served as the platoon leader of
2nd Platoon, Attack Company, 1-503D Infantry Battalion, 173rd
Infantry Brigade.  I deployed with 2nd Platoon, "The Kowboiz,"
and was the officer in charge of security on the military base.

While I may be one man standing in a courtroom, I'd
like to be clear that I am speaking for 35 other U.S. Army
paratroopers that I've eaten, slept in the mud, and bled with.
The men of the 2nd Platoon made serving as a leader of
paratroopers one of the greatest honors I've ever experienced.
They came from all walks of life and built a cohesive team,
despite their polarizing differences.  This team was comprised
of teenagers, fathers, young men who had escaped harsh
upbringings, and farmers who couldn't wait to get home to their
families.  The majority of 2nd Platoon had never deployed, and
therefore felt a sense of pride and anxiety simultaneously.  It
is an incredible responsibility that these young men felt, and
it's not something that many in our great nation will ever
experience.  However, the team we had built was ready for the
task, because we'd created relationships based on trust and
commitment to the task at hand.

Prior to the deployment, Ethan Melzer's actions made
impacts that no military schooling can prepare you for as a
leader.  The first few days after his arrest were confusing for
the platoon for several reasons.  Our departure date for the
deployment was changed multiple times, but 2nd Platoon was kept

N333MELS

in the dark.

There were several rumors concerning the sudden timeline changes spreading across the battalion. And it led members of the platoon to speculate that something serious had happened. The uncertainty prior to departure increased the younger paratroopers' anxiousness due to this being their first deployment.

Sergeant First Class Campbell, the platoon sergeant, and I had to determine the best way to communicate to the platoon what had transpired. Imagine trying to explain to 34 men that rely on you to keep them alive that one of their own had planned to kill them. This was a stressful time because we wanted to ensure that the platoon remained cohesive and functional. The idea that the paratroopers couldn't trust their own teammates had already been planted, and it stayed at the forefront of their minds.

With so much thought being given to Melzer's actions, it steered focus away from the task at hand.

Once the platoon understood why Ethan had been arrested, we had to work diligently to mitigate the anger and frustration that these paratroopers developed. This is because the anger could easily cloud judgment and raise tensions within platoon.

It's one thing to ask young men to put their lives on the line for their country. It's something entirely different

N333MELS

when you ask them to put their lives on the line immediately
after the foundations of their belief in the team have
crumbled.

Prior to departing Italy, Sergeant First Class
Campbell and I were forced to confiscate all phones.  These
young men were now heading to an incredibly remote military
base with zero connections to friends, family, or the outside
world.  All they had to rely on was each other.

How would you feel if you were ordered to deploy to a
war zone after finding out that the only 35 people you could
rely on for the next five to six months may be trying to cause
you harm.

During the deployment, we had to quarantine for two
weeks prior to moving to the military base, and were confined
to an area no larger than 200 square meters.  This confined
area meant that paratroopers had ample time to consider the
impact that Ethan's actions could have had.

During quarantine, every member of the platoon had to
speak with investigating agents at Incirlik Air Base.  The
questions were frustrating for most of the platoon, because we
were asked questions such as Did you notice anything strange
about Melzer's behavior prior to the deployment?  Some of the
paratroopers were frustrated and blamed themselves because they
believed they should have seen the threat coming.

The reality of the situation is that these

A000123

N333MELS

paratroopers were deceived and betrayed. None of us saw this coming. And there are a few things worse than betrayal in a profession such as ours.

The Army has seven basic values: Loyalty, duty, respect, selfless service, honor, integrity, and personal courage.

I implore you to consider how much loyalty Ethan demonstrated when he planned to attack his own. How much honor or integrity exists within Ethan's heart after what he's done. The men of 2nd Platoon tried to make Melzer feel like a member of the team, and came to find that he had taken advantage of the situation in order to murder them.

Tensions among the platoon were high when we started the deployment, and multiple soldiers came to me saying they were frustrated because they couldn't find a healthy outlet for their anger. No amount of work or time in the gym can give you reprieve from your own mind. 35 young men with heightened emotions, in a remote and hazardous area, can spiral into chaos if not properly mitigated.

In addition to these mental frustrations, we had to mitigate additional threats to the military base by completely overhauling security measures and protocols. This is because Private Melzer had passed on sensitive information specific to how we would maintain security of the base.

However, I want to be clear that 2nd Platoon

A000124

N333MELS

1   maintained a high standard of professionalism throughout the

2   deployment, and successfully accomplished a mission that we

3   were selected for out of 20 platoons.

4           Due to the remoteness of our deployment, the platoon

5   had begun to move on from the incident with Melzer as we

6   prepared to return to Italy.

7           Upon return, many of us came to find we'd been labeled

8   as the platoon that had a terrorist.  This ostracized the

9   platoon and created the sense that we were somehow tainted.

10  These paratroopers had done a job, and done it well, but their

11  performance was overshadowed by the actions of Private Melzer.

12          One paratrooper came to me and said, I know there's

13  way any of us could have known, but I feel like out of 35

14  people, one of us should have seen the signs.  Then we wouldn't

15  have to hear about how our platoon bred a terrorist.

16          The men of 2nd Platoon, Attack Company, will have to

17  permanently live with the memory that one of their own assisted

18  in trying to end their lives.

19          As the platoon leader, everything the platoon does or

20  fails to do is my responsibility.  This principle applies to

21  Ethan's actions as well.  I could have been killed.  Even

22  worse, I could have survived but lived with the knowledge that

23  I couldn't return the other 35 men to their families.

24          Terrible things happen in war, but no family should

25  ever lose their son or daughter to a situation like this.

A000125

N333MELS

```
 1          I feel incredibly fortunate that law enforcement was
 2   able to stop Ethan before any further action could be taken.
 3   However, I will forever carry the knowledge that I was
 4   responsible for a paratrooper that planned to harm the rest of
 5   our team.
 6          I hope that this sentencing will be bring closure to
 7   those who were affected by Private Melzer's actions so
 8   everyone, including Ethan, can move on.  Thank you, your Honor.
 9          THE COURT:  Thank you, Captain.
10          Counsel, I am going to take a brief recess.  It's
11   11:13 by my clock.  I am going to propose that we convene at
12   11:20 a.m.
13          Thank you very much.
14          (Recess)
15          THE COURT:  So, counsel, is there any reason why
16   sentence should not be imposed at this time?
17          MR. HELLMAN:  No, your Honor.
18          MR. MARVINNY:  No, your Honor.
19          THE COURT:  Thank you.  I'll now describe the sentence
20   that I intend to impose, but counsel will have a final
21   opportunity to make legal objections before the sentence is
22   finally imposed.
23          As I've stated, the guidelines sentence applicable to
24   this case is 540 months of imprisonment.
25          I've considered the guideline sentence.  Under the
```

43

N333MELS

Supreme Court's decision in *Booker* and its progeny, the guidelines range is only one factor that I must consider in deciding the appropriate sentence.

I'm also required to consider the other factors set forth in 18, United States Code, Section 3553(a).  These include:

First, the nature and circumstances of the offense and the history and characteristics of the defendant;

Second, the need for the sentence imposed to:

(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

Third, the kinds of sentences available;

Fourth, the guidelines range;

Fifth, any pertinent policy statement;

Sixth, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

A000127

N333MELS

1      Seventh, the need to provide restitution to any

2 victims of the offense.

3      Ultimately, I'm required to impose a sentence that is

4 sufficient, but no greater than necessary, to comply with the

5 purposes of sentencing that I mentioned a moment ago.

6      Now, I've given substantial thought and attention to

7 the appropriate sentence in this case considering all of the

8 3553(a) factors and the purposes of sentencing as reflected in

9 the statute.

10      Based on a review of all of the factors, which I am

11 going to discuss in much more detail in a moment, I intend to

12 impose a guideline sentence of 240 months' imprisonment with

13 respect to Count One, 180 months with respect to Count Five,

14 and 120 months with respect to Count Seven, to be served

15 consecutively, followed by three years of supervised release,

16 subject to the mandatory and special conditions described in

17 the presentence report, which I am going to detail with more

18 specificity later.

19      I do not expect to impose a fine.  I will impose the

20 mandatory fee of $100.

21      Let me begin with the nature of the offense, because

22 that's where the statute asks me to begin.

23      Mr. Melzer's crimes were repugnant.  He betrayed the

24 United States of America.  He betrayed the United States

25 military.  He targeted for murder his fellow soldiers.  He

A000128

45

N333MELS

worked to aid jihadist terrorists.  All so he could achieve his
nihilist goal of undermining Judeo-Christian values and
rupturing civilized society.

Much has been said here about the organization that
Mr. Melzer joined.  I do not think that I need to give that
organization more of a soapbox than it's already had here.  But
it is a white nationalist, neo-Nazi, satanist, pro-jihadist
group that promotes the use of extreme violence to accelerate
and cause the demise of western civilization.

In its view, as embraced by Mr. Melzer, those values
hold us back from the state of nature and are holding us back
from what it and Mr. Melzer views as the natural order --
chaos.  The organization and Mr. Melzer opposed those Judeo and
Christian values because they are good for civilization.  His
crimes were committed in order to destroy civilization, to
bring us back to a state of nature.

Mr. Melzer was interested in neo-Nazi ideology years
before he joined the military.  By February 2019, after he
enlisted in the military, but before he appeared for basic
training, Mr. Melzer was researching the organization and its
American affiliate.

While in the military, Mr. Melzer worked to recruit
and indoctrinate others to the organization's violent mission.
He had himself tattooed with a symbol for chaos, reflecting his
mission to destroy western civilization to give way to satanic

A000129

46

N333MELS

forces and unrestrained violence. He self-indoctrinated himself through rituals.

I am not going to review all of his activities while in the military in support of the mission of this organization. What's important is that he acted to advance extremist views, his extremist philosophy and ideology in secret, he did so for an extended period of time, he did so notwithstanding the fact that it was prohibited by the military's rules, and notwithstanding his knowledge of the risk that he would be disciplined for his participation in it.

He told others that his service in the military was a "insight role" for his organization, and that he was not "patriotic for sh**," and that "all these places deserve to be burned."

As counsel for the United States described, he is not charged here with his ideology. His crime began after his unit was transferred to Italy. While there, he learned that his platoon was going to be sent on a classified deployment abroad. The assignment required a security clearance, and the defendant received national defense information about the deployment. He received briefings that informed him about the importance of maintaining confidential that information.

Mr. Melzer then worked to plan an attack on his platoon, while on its deployment abroad. Mr. Melzer sought to provoke jihadi terrorists to commit the attack. By doing so,

A000130

N333MELS

Mr. Melzer intended to cause a mass casualty event that would provoke a war.

Mr. Melzer was willing to die in the attack, and in his words, "Who gives a F***. The aftereffects of the convoy getting attacked would cover it... it would be another war... I would have died successfully... because another 10-year war in the Middle East would definitely leave a mark."

Mr. Melzer provided national defense information to others intending that it be used to murder the members of his platoon by the jihadi fighters. Mr. Melzer strategized about the best ways to attack his unit, and to kill the 40 or so service people in it.

Thankfully, one of the people on the group with whom Mr. Melzer was communicating informed the government about Mr. Melzer's plotting, and he was arrested before it could come to fruition.

But I want to emphasize that this was not a lark. This was not merely time spent in a dark internet rabbit hole. Mr. Melzer did indeed attempt to murder his fellow soldiers. He did provide and attempt to provide assistance to terrorists. He did share national defense information in the pursuit of his goals.

That the attack did not take place was not for lack of trying by Mr. Melzer. He believed that his plans and the participants in it were real, and that they were as committed

A000131

N333MELS

1    to the project as he.

2            That he was committing his crime on the internet does

3    not mean that his acts were not serious or that his intentions

4    were not real.  He pleaded guilty to those crimes because he

5    actually commit those crimes.  Instead, it means the crime was

6    taking place in 2020, when so much of our lives can happen

7    online.  That includes terroristic efforts to murder U.S.

8    service people.

9            So I think that these crimes are exceptionally serious

10   in nature, as reflected by the guidelines recommendation that

11   the Court impose a lifetime term of imprisonment.

12           Mr. Melzer is a young man.  He was born in May 1998 in

13   Louisville, Kentucky.  He is now 24 years old.  He committed

14   his offense when he was 21.  He is both parents' only child.

15   Mr. Melzer's parents separated when he was only four years old.

16   He was raised primarily by his mother.

17           Mr. Melzer had what he described as a chaotic

18   childhood, for a number of reasons.  His mother suffered from

19   alcoholism.  Sadly, she suffered abuse at the hands of

20   partners.

21           Mr. Melzer's home life was, in his counsel's words,

22   "Suffused with racist, homophobic, and anti-Semitic views."  In

23   the midst of that fraught environment, Mr. Melzer also

24   struggled with the realization that he was gay.  That fact

25   increased his sense of alienation and difference from the

N333MELS

1    culture that surrounded him.

2         He began to use drugs, and he began to sell drugs.

3    Once, when meeting somebody to buy drugs, Mr. Melzer ran away

4    from the car where the transaction was taking place.  He was

5    chased by a person who I understand to have been his dealer.

6    Mr. Melzer pulled out a handgun and fired several shots at that

7    victim.  The gunshot shattered the victim's humerus, and caused

8    him to lose full use of his arm.

9         Mr. Melzer also talked about participating in other

10   acts of violence during that time.  He told one person that he

11   robbed stores with members of a gang and sold drugs.

12   Mr. Melzer told another witness that he was happy about the

13   mass murder at the Las Vegas Route 91 Harvest Festival, and

14   shared with that witness his racist, anti-Semitic views.

15        I've read the mitigation support submitted on behalf

16   of Mr. Melzer, and I've read the many letters of support

17   submitted on Mr. Melzer's behalf.

18        I can see from them the effect of Mr. Melzer's

19   difficult childhood, and his feeling that he did not belong,

20   and his serious challenges as a teen.  Members of his family

21   have described him as a kind, intelligent person.  And the

22   letters make clear that there are members of Mr. Melzer's

23   family who miss and support him.

24        Mr. Melzer is blessed with good health.  He has not

25   been diagnosed with a mental illness, but he believes he may

N333MELS

suffer from depression, a condition that has affected other members of his family.

Mr. Melzer has a long history of substance abuse.  He smoked marijuana from the time he was 14 until he was 17, used ecstasy daily from the time he was 17 until he was 18, he used Xanax several times a month between ages 14 and 17, and he used meth daily from age 17 to 18.

Mr. Melzer dropped out of high school when he was in the tenth grade.  He obtained his high school diploma later while working in the Job Corps.  From 2015 through 2016, he worked at a series of fast food restaurants, and from 2017 to 2018 he worked as a cook and cleaner at another restaurant.  He joined the Job Corps in 2018.  It was from there that he left to join the military.

Mr. Melzer does not have other criminal convictions, but this is not his only set of crimes.  He was involved with narcotics and, significantly, as I described earlier, he shot a person, seriously wounding him.

I believe that a meaningful sentence is important in this case in order to promote respect for the law, and to impose a just punishment.  A very serious sentence of the magnitude that I am imposing is needed to impose a just punishment.

Mr. Melzer betrayed his comrades in arms; he tried to have them murdered; provided assistance to people he believed

N333MELS

are terrorists; and he shared national defense information to

do so.  This is a very serious crime, and the sentence must be

substantial to be just.

I'm required to consider the deterrent effect, both on

Mr. Melzer personally, and also the need to deter others from

committing this crime.

With respect to personal deterrence, I believe that

the need for it is very high.  I'm very concerned about the

likelihood that Mr. Melzer will again commit another crime, and

I'm concerned that the risk to his fellow citizens is

substantial, were he to choose to do so.

Mr. Melzer now expresses remorse, as he is facing

justice for his crimes.  But I, frankly, do not believe him.

Mr. Melzer has demonstrated his interest in and commitment to

his repugnant ideology, which ultimately blossomed into his

crime, over an extended period of time.  Mr. Melzer had himself

tattooed with a symbol of his commitment to it.

Part of the methodology of his organization, as I

understand it, is that one should hide one true's intentions

and commitment to better achieve its goals.  And over an

extended period of time, Mr. Melzer effectively did just that.

I have, for example, a letter from the Job Corps describing how

shocked the writer was about Mr. Melzer's actions, because they

were not consistent with the young man she worked with.

That does not tell me that Mr. Melzer was a good young

52

N333MELS

1    man, because he went off and tried to kill service members,

2    but, rather, that he hid his views effectively.  As we just

3    heard today, he hid his views effectively from his platoon

4    mates.

5         Mr. Melzer found community in this organization

6    because it sang his song.  He sought out fellowship with people

7    that shared his belief system.  He could have logged off at any

8    time.  Instead, he demonstrated his commitment to terrorism and

9    murder.

10        So I do not trust his expression of remorse or that he

11   has truly renounced his commitment to violence.  I hope it's

12   true, but I don't trust it.

13        I think it is more likely that Mr. Melzer is playing

14   another role to obtain leniency from the Court, as he played

15   soldier while working in secret to murder servicemen.

16        Mr. Melzer was well aware of the potential

17   consequences of his conduct here, yet he chose to commit it

18   nonetheless.  I'm left with the definite impression that

19   Mr. Melzer has little respect for, or ability to comply with,

20   the law.

21        Given his desire to commit murder and terrorist acts,

22   and his violent nature, as expressed, among other things,

23   through his earlier shooting, I'm very concerned for the safety

24   of the community should he choose to recidivate.

25        I think it is important for me to impose a sentence

A000136

N333MELS

1    that will protect the public and achieve the goal of personal

2    deterrence.

3           I must also consider the goal of general deterrence.

4    This is a factor that weighs very heavily in my evaluation of

5    the appropriate sentence in this case.

6           Mr. Melzer was a soldier placed in a position of trust

7    by his country and his comrades.  He betrayed that trust.  We

8    heard from the victims who spoke today the effect, the

9    corrosive effect, of that betrayal on his fellow service

10   members, and potentially on America's allies and enemies

11   abroad.

12          This sentence must send a strong message that an

13   attempt to murder U.S. military servicemen in order to promote

14   extremist views, that to betray the United States by arming

15   terrorists with national defense information will result in

16   very serious consequences.  Here, the insider threat risk is

17   substantial, and the risk should be addressed through a

18   sentence that adequately satisfies the goal of general

19   deterrence.  I believe that the sentence that I'm imposing is

20   necessary in order to achieve this important goal in this

21   context.

22          Mr. Melzer will be able to use the period of

23   incarceration for educational or vocational training, medical

24   care, or other correctional treatment.  There are a number of

25   things I hope he will be able to do while in prison.  Among

N333MELS

1     them are to continue to advance his education, and to develop

2     job skills so he can obtain legitimate employment when he is

3     released.  He will be released because this is not a life

4     sentence.

5          I've considered the kinds of sentences available.  In

6     this case, I believe that a sentence involving a meaningful

7     term of incarceration is necessary.

8          I've given serious consideration to the guidelines and

9     the policy statements.  In this case, I believe that a

10    guideline sentence is appropriate.  I reached that conclusion

11    after having considered all of the 3553(a) factors and purposes

12    of sentencing.

13         I'd just like to note a few things here.  First off,

14    as the government articulated in its remarks, the defendant's

15    sentence is capped by the offenses to which he pleaded guilty.

16    But for the plea deal offered by the government, and accepted

17    by the defendant, his guidelines range would have been life

18    here.

19         The plea deal offered by the government has had the

20    effect of substantially reducing the guideline sentence

21    associated with Mr. Melzer's crime, and I considered that fact.

22         I've also considered all of the mitigating arguments

23    presented by the defendant in support of a substantially lower

24    sentence.  But I start off with the proposition that the

25    government's plea deal with the defendant has already afforded

A000138

N333MELS

1    him a lesser sentence than the guidelines would otherwise

2    recommend, given the nature of his crimes.

3         I've considered all of the arguments presented by the

4    defendant in support of a downward variance here.  I am going

5    to comment on just three of those arguments now.  That I am

6    limiting my comments to those three should not be read to

7    suggest that I've not considered them all, but I want to just

8    comment on three.

9         First, I accept the argument that Mr. Melzer's youth

10   at the time of his offense could be considered to be a

11   mitigating factor.  I've weighed that in my sentence.  I view

12   it as mitigating, but only to a degree.  I observe that

13   Mr. Melzer was not a minor at the time of his offense.  Rather,

14   he was a 21-year-old soldier, and Mr. Melzer's crime was

15   exceptionally serious.

16        Second, while I appreciate that Mr. Melzer had a

17   challenging childhood, and struggles with his identity as a gay

18   man, at best, those facts explain -- they do not begin to

19   justify -- his decision to commit this set of crimes.

20        Third, I appreciate that it is fortunate that this

21   attack did not come to fruition.  But as I said earlier, that

22   was not for a lack of trying.  Mr. Melzer was engaged in trying

23   to kill his fellow servicemen.  And we've heard from the

24   victims and the United States about the fact that there is

25   still harm from his crime.  Thankfully he was not successful in

N333MELS

his goal of murdering his platoon mates.  But his crime caused

lasting harm by corroding the trust between his fellow service

members; by making available to people who may wish the United

States harm, as Mr. Melzer did, this national defense

information that increases, as I understand it, the risk to

those who are sent to potentially serve at the military base in

the future.

So, while the ultimate goal of Mr. Melzer's attack did

not come to fruition, that does not mean that it failed to have

and create a continuing harm on the country and his unit, as

we've heard from our victims.

So while I've considered all of the arguments

presented by the defendant in favor of a downward variance, my

view is they do not justify a downward variance from the

guideline sentence, which, as I've already noted, would have

been life, but for the effect of the defendant's plea deal.

I've considered the need to avoid unwarranted

sentencing disparities.  On balance, however, given the

particular personal characteristics of the defendant, and the

nature of his offenses, I believe that this sentence is

appropriate for him.  And again, as I noted, it is in line with

the recommendations of the guidelines here.

So with that, Mr. Melzer, please rise for the

imposition of sentence.

Mr. Melzer, it is the judgment of this Court that you

A000140

N333MELS

be sentenced to serve 240 months of imprisonment with respect
to Count Four, 180 months with respect to Count Five, and 120
months with respect to Count Seven, with each of those terms to
be served consecutively.

Following your term of imprisonment, I am sentencing
you to a term of three years of supervised release with respect
to each of Counts Four, Five, and Seven, with those terms to be
served concurrently.

The mandatory conditions of supervised release shall
apply. They are: The defendant shall not commit another
federal, state, or local crime. The defendant shall not
unlawfully possess a controlled substance. The defendant shall
refrain from any unlawful use of a controlled substance. The
defendant shall submit to one drug test within 15 days of
release from imprisonment, and at least two periodic drug tests
thereafter as determined by the Court. The defendant shall
cooperate in the collection of DNA as directed by the probation
officer.

The standard conditions of supervised release, 1
through 12, shall apply. In addition, the following special
conditions shall apply: The defendant shall submit his person,
and any property, residence, vehicle, paper, computer, other
electronic communication, data storage devices, cloud storage,
or media, and effects to a search by any United States
probation officer, and, if needed, with the assistance of any

A000141

N333MELS

| | |
|---|---|
| 1 | law enforcement.  A search is to be conducted when there is |
| 2 | reasonable suspicion concerning violation of a condition of |
| 3 | supervision or unlawful conduct by the person being supervised. |
| 4 | Failure to submit to a search may be grounds for revocation of |
| 5 | release.  The defendant shall warn any occupants that the |
| 6 | premises may be subject to searches pursuant to this condition. |
| 7 | Any search shall be conducted at a reasonable time and in a |
| 8 | reasonable manner. |
| 9 | The defendant shall be supervised in his district of |
| 10 | residence. |
| 11 | There will be no fine because the probation department |
| 12 | reports that the defendant is unable to pay one. |
| 13 | The defendant must pay to the United States a total |
| 14 | special assessment of $100 for each of the crimes of |
| 15 | conviction, for a total of $300. |
| 16 | Counsel for the United States, I understand that the |
| 17 | government is not seeking forfeiture or restitution in this |
| 18 | matter.  Is that correct? |
| 19 | MR. HELLMAN:  Yes. |
| 20 | THE COURT:  Thank you. |
| 21 | Counsel, do any of you know of any legal reason why |
| 22 | this sentence shall not be imposed as stated? |
| 23 | MR. HELLMAN:  No. |
| 24 | MR. MARVINNY:  No, your Honor. |
| 25 | THE COURT:  The sentence as stated is imposed. |

N333MELS

1          I find that sentence to be sufficient, but not greater

2     than necessary, to comply with the purposes of sentencing set

3     forth in 18, United States Code, Section 3553(a).

4          Thank you very much.  Mr. Melzer, you can be seated.

5          Mr. Melzer, you have the right to appeal your

6     conviction and sentence, except to whatever extent you may have

7     validly waived that right as a part of your plea agreement.

8     The notice of appeal must be filed within 14 days of the

9     judgment of conviction.

10          If you are not able to pay the costs of an appeal, you

11    may apply for leave to appeal in forma pauperis.  If you

12    request, the clerk of court will prepare and file a notice of

13    appeal on your behalf.

14          Counsel, are there any other applications?

15          MR. HELLMAN:  I move to dismiss open counts and

16    previous indictments.

17          THE COURT:  Thank you.  Counsel for the defendant,

18    what's your position on that request?

19          MR. MARVINNY:  We agree, your Honor.

20          THE COURT:  I am dismissing any open counts and

21    underlying indictments.

22          Anything else from the United States?

23          MR. HELLMAN:  No, thank you.

24          THE COURT:  Thank you.

25          Counsel for defendant?

N333MELS

1          MR. MARVINNY:  Your Honor, I have a couple of requests

2     with respect to a recommendation as to designation.

3          THE COURT:  Please.

4          MR. MARVINNY:  We request that the Court recommend

5     that the Bureau of Prisons designate Ethan Melzer to one of the

6     following two facilities:  FCI Terre Haute or FCI Tucson.

7          And your Honor, we also ask if the Court would

8     recommend --

9          THE COURT:  Can I ask why?  Why those facilities?

10         MR. MARVINNY:  One second, your Honor.

11         (Defendant conferring with his counsel)

12         MR. MARVINNY:  Well, your Honor, I was -- I'll answer

13    that question, of course.

14         My next request is that the Court recommend Mr. Melzer

15    be placed into the Challenge Program that the Bureau of Prisons

16    offers, which is a cognitive behavioral treatment program.

17    That program is available at both of the two facilities that

18    we've requested.

19         We also believe that the facilities we've requested

20    are consistent with what we expect to be Mr. Melzer's security

21    designation.

22         THE COURT:  Thank you.  Good.

23         Yes, I am happy to include a recommendation that the

24    defendant be designated to one of those two facilities, to the

25    extent it's consistent with his security designation, and also

N333MELS

1    that he be permitted to participate in the Challenge Program,

2    to the extent that he is eligible.

3              MR. MARVINNY:  Thank you.

4              THE COURT:  Good.  Anything else, counsel for

5    defendant?

6              MR. MARVINNY:  No.

7              THE COURT:  Thank you very much.  Good.  Thank you all

8    very much.  This proceeding is adjourned.

9              (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AO 245B (Rev. 09/19)  Judgment in a Criminal Case  (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

### Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ETHAN PHELAN MELZER,<br>a/k/a/ ETIL REGGAD, | ) ) ) ) ) ) ) ) ) |

**JUDGMENT IN A CRIMINAL CASE**

Case Number: S1 1:20-cr-00314-GHW-1

USM Number: 76447-054

Jonathan A. Marvinny and Ariel C. Werner
_____
Defendant's Attorney

## THE DEFENDANT:

☑ pleaded guilty to counts    4, 5 and 7 of the S1 Superseding Indictment

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1114 | Attempted Murder of U.S. Service Members | June 10, 2020 | 4 |
| 18 U.S.C. § 2339A | Provision & Attempted Provision of Material Support to Terrorists | June 10, 2020 | 5 |
| 18 U.S.C. § 793(d) | Illegal Transmission of National Defense Information | June 10, 2020 | 7 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)   All underlying    ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____ │
│ DATE FILED:____3/6/2023____ │
└─────────────────────────────┘
```

March 3, 2023
_____
Date of Imposition of Judgment

█████████████████████

_____
Signature of Judge

Hon. Gregory H. Woods, USDJ
_____
Name and Title of Judge

March 6, 2023
_____
Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
    Sheet 2 — Imprisonment

Judgment — Page   2   of   7

DEFENDANT:   ETHAN PHELAN MELZER, a/k/a/ ETIL REGGAD,
CASE NUMBER:   S1 1:20-cr-00314-GHW-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
240 months on Count 4, 180 months on Count 5, and 120 months on Count 7, to be served consecutively.

☑ The court makes the following recommendations to the Bureau of Prisons:
The Court recommends that the defendant be placed at FCI Terre Haute or FCI Tuscon to the extent consistent with his security designation and other needs. The Court also recommends that the defendant be permitted to participate in the Challenge Program to the extent that he is eligible to do so.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐ before 2 p.m. on _____ .

     ☐ as notified by the United States Marshal.

     ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A000147

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:  ETHAN PHELAN MELZER, a/k/a/ ETIL REGGAD,
CASE NUMBER:  S1 1:20-cr-00314-GHW-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years for each of Counts 4, 5, and 7, with those terms to be served concurrently.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A000148

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT: ETHAN PHELAN MELZER, a/k/a/ ETIL REGGAD,
CASE NUMBER: S1 1:20-cr-00314-GHW-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

A000149

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3D — Supervised Release

Judgment—Page  5  of  7

DEFENDANT:  ETHAN PHELAN MELZER,  a/k/a/ ETIL REGGAD,
CASE NUMBER:  S1 1:20-cr-00314-GHW-1

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit his person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement.  The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised.  Failure to submit to a search may be grounds for revocation of release.  The defendant shall warn any occupants that the premises may be subject to searches pursuant to this condition.  Any search shall be conducted at a reasonable time and in a reasonable manner.

2.  The defendant shall be supervised in his district of residence.

A000150

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
     Sheet 5 — Criminal Monetary Penalties

|  | Judgment — Page | 6 | of | 7 |

DEFENDANT: ETHAN PHELAN MELZER, a/k/a/ ETIL REGGAD,
CASE NUMBER: S1 1:20-cr-00314-GHW-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ 0.00 | $ 0.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A000151

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:  ETHAN PHELAN MELZER, a/k/a/ ETIL REGGAD,
CASE NUMBER:  S1 1:20-cr-00314-GHW-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ __300.00__ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment,
(5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of
prosecution and court costs.

A000152

Criminal Notice of Appeal - Form A

**NOTICE OF APPEAL**

United States District Court

ORIGINAL

__Southern__ District of __New York__

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __3|10|2023__

Caption:

__United States of America__ v.

__Ethan Melzer__

Docket No.: __20 Cr 0314__

__Hon. Gregory H. Woods__
(District Court Judge)

Notice is hereby given that __Ethan Melzer_____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment __✓__, other | _____

entered in this action on __3/6/2023_____.                                     (specify)
                          (date)

This appeal concerns: Conviction only |____  Sentence only |____  Conviction & Sentence |✓  Other |____

Defendant found guilty by plea |✓ | trial |   | N/A [   .

Offense occurred after November 1, 1987? Yes |✓  No [      N/A [

Date of sentence: __3/3/2023_____    N/A |___|

Bail/Jail Disposition: Committed |✓    Not committed |    | N/A [

Appellant is represented by counsel? Yes ✓ | No |      If yes, provide the following information:

Defendant's Counsel:     __Barry D. Leiwant, Esq.__

Counsel's Address:       __Federal Defenders of New York__

                         __52 Duane Street, 10th Floor, New York, NY 10007__

Counsel's Phone:         __(212) 417-8742__

Assistant U.S. Attorney: __Samuel S. Adelsberg, Esq.__

AUSA's Address:          __One St. Andrew's Plaza__

                         __New York, NY 10007__

AUSA's Phone:            __(347) 501-0979__



Signature

**A000153**

---

### CERTIFICATE OF SERVICE

I certify that a copy of this Appendix has been served by CM/ECF on the United States Attorney/S.D.N.Y.; Attention: **SAMUEL S. ADELSBERG, ESQ.**, Assistant United States Attorney, One St. Andrew's Plaza, New York, NY 10007.

Dated:    New York, New York
          July 5, 2023


_Darrell Fields_
**DARRELL FIELDS**
Assistant Federal Defender