```
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------X
UNITED STATES OF AMERICA          :
                Appellee,         :     Docket No. 23-6247
        v.                        :
                                  :     MELZER'S OPPOSITION TO
ETHAN PHELAN MELZER,              :     THE GOVERNMENT'S MOTION
a/k/a ETIL REGGAD                       TO DISMISS
                Appellant.        :
-----------------------------------X
```

**DARRELL FIELDS** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

I am an attorney with the Federal Defenders of New York, Inc., Appeals Bureau, and I represent Appellant Ethan Phelan Melzer. On his behalf, I oppose the Government's motion to dismiss his appeal ("Gov't Mot.").[1]

Appellant Melzer filed a brief and appendix with this Court on July 5, 2023 (following the filing of a notice of appeal in the district court on March 10, 2023). On October 4, 2023, the Government filed a motion to dismiss his appeal, invoking an appeal waiver from the plea agreement. But the appeal waiver is unenforceable because the record gives the appearance that the sentence the district court imposed was affected by a constitutionally impermissible consideration. The motion to dismiss, which is based on the unenforceable waiver in the plea

---

[1] "A." references are to the relevant pages of the Appendix for Appellant Ethan Phelan Melzer, that was filed in the court at Docket Entry No.16. "Melzer Br." refers to Appellant Melzer's brief, filed at Docket Entry 17.

agreement, should thus be dismissed.

## BACKGROUND

Ethan Melzer comes from a difficult and troubled background, including a childhood in Kentucky marked by severe neglect and abuse. See Melzer Br. 9-17. In May 2020, he was a 21-year-old private in the United States Army stationed in Vicenza, Italy. He communicated on the internet with people purporting to be part of a group known as the "Order of Nine Angels" or "O9A," a group that holds white supremacist, Satanist, and "pro-jihadist" beliefs. They discussed the prospect of getting jihadists to attack Melzer's Army Platoon after its upcoming transfer to a military base in Turkey. See Presentence Report ("PSR") at 8, 18, 21-25; A.31.

Ethan Melzer was arrested by the end of that month, on May 30, 2020. And he was subsequently prosecuted in the Southern District of New York under a superseding Indictment S1 20 CR 314 (GHW), filed on August 18, 2020. PSR at 3, ¶1; A.30-43 (superseding indictment).

On June 24, 2022, he appeared before Honorable Gregory H. Woods and pleaded guilty to three counts of the eight-count indictment, charging: (1) attempted murder of United States service members (18 U.S.C. § 1114); (2) providing and attempting to provide material support to terrorists (18 U.S.C. § 2339A); and (3) transmitting national defense information (18 U.S.C. § 793(d)). A.53, 61-67.

His plea agreement with the Government calculated an offense level of 43. And even though his "Criminal History Category is I[,]" under Sentencing Guidelines § 3A1.4(b), he was in Criminal History Category VI because the offenses involved or were intended to promote federal crimes of terrorism. A.47. These calculations resulted in a Sentencing Guidelines range of life imprisonment. However, because the statutory maximum sentences for the three counts -- Counts Four, Five, and Seven -- aggregated to 540 months' imprisonment, the applicable range was 540 months' imprisonment. A.27.

The parties agreed that "the defendant will not file a direct appeal, nor bring a collateral challenge ... of any sentence at or below the Stipulated Guidelines Sentence of 540 months'[.]" A.48.

At the guilty plea allocution — on June 24, 2022 — Judge Woods reviewed the plea agreement with Ethan Melzer and told him: "You've agreed not to file a direct appeal or to bring a collateral challenge ... of any sentence at or below the stipulated guideline sentence of 540 months' imprisonment." A.72. Melzer said he understood the provision and was willing to waive those rights. A.73.

Following the Probation Office's preparation of the Presentence Report, Ethan Melzer proceeded to sentencing. See Melzer Br. 8-9, 17-19.

In the "Sentencing Recommendation," the Probation Office

3

recommended a downward "variance" from the Guidelines sentence of 540 months' to a sentence of 300 months' (25 years) imprisonment. PSR at 41. The Probation office noted that Melzer is a "first-time offender facing 45 years in prison. He [had] endured a difficult upbringing marred by reported family violence and his own reported sexual abuse victimization." PSR at 43. And it explained: "Our hope is that a 25-year prison term is sufficient to protect the public from further harm, to provide just punishment, and will allow Melzer to receive services to address and overcome the issues which led to his criminality, while avoiding having him spend almost all of his adult life in prison as called for by the guidelines." Id.

The district court later imposed a sentence of 45 years' imprisonment. At the sentencing -- on March 3, 2020 -- the court heard argument from the parties (A.93-116) and received victim impact statements from two Army Captains who had been connected with Melzer's former Platoon. A.116-26.

The district court then set forth the 18 U.S.C. § 3553(a) factors, after which it announced that Melzer's sentence would be the maximum penalty of 540 months' (45 years) in prison. See Sentencing transcript ("S.") 42-44; A.126-28.

As part of its stated rationale for imposing the maximum penalty, the court referred to Ethan Melzer's antipathy toward "Judeo-Christian values." S.45; A.129. The court stated that

4

Melzer's conduct was "repugnant." He had betrayed the United States and the military. "All so he could achieve his nihilist goal of undermining Judeo-Christian values and rupturing civilized society." S.44-45; A.128-29.

The court stated that Melzer opposed the values of Judea-Christians because these values benefit society. It Stated: "The organization [O9A] and Mr. Melzer opposed those Judeo and Christian values because they are good for civilization." S.45; A.129. "In [O9A's] view, as embraced by Mr. Melzer, those values hold us back from the state of nature and are holding us back from what it and Mr. Melzer views as the natural order -- chaos." S.45; A.129. The court further noted that Melzer had tattooed himself "with a symbol for chaos, reflecting his mission to destroy western civilization to give way to satanic forces" and violence. S.45-46; A.129-30. He engaged with O9A, the court said, because he "sought out fellowship with people that shared his belief system." S.52; A.136.

## DISCUSSION

**The Government's motion to dismiss should be denied.**

"'[A] court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights.... A sentence based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid.'" United States v. Stewart, 686 F.3d 156, 169 (2d Cir. 2012) (ellipsis in original) (quoting United States v. Lemon, 723 F.3d 922 (D.C. Cir. 1983)). "'Bas[ing]

5

[a] sentence on ... revulsion arising out of [a defendant's] social or political views ... would be improper.'" Stewart, 686 F.3d at 170 (alterations in original) (citing United States v. Brown, 1170, 1174 (2d Cir. 1973) (citing United States v. Mitchell, 392 F.2d 214, 217 (2d Cir. 1968) (concurring opinion of Judge Kaufman)).

In Mitchell, Judge Kaufman stated: "The difficulty I perceive in the sentencing judge's unfortunate statement concerning appellant's lack of belief in a Supreme Being is not that it refers to religion (an area often appropriately discussed in presentence reports) but its **apparent equation between moral well-being and the possession of certain religious beliefs**.... [U]nder our system of government all are guaranteed freedom of and from religion." 392 F.2d at 217 (emphasis added). In addition, the constitutional guarantee of due process prohibits a court's use of a person's religious views to adversely influence a sentencing decision. See Appellant's Br. at 19-20, 23-26.

Here, the district court, in explaining its rationale for imposing a 45-year prison sentence, noted that Ethan Melzer was opposed to "Judeo and Christian values." And the court expressed the view that "those values" are "good for civilization." S.45; A.129.

The Government, in its motion to dismiss Ethan Melzer's appeal, does not contend that, even if the district court had relied, at least in part, on Melzer's opposition to Judeo-Christian

6

values and on its view that "those values" are "good for civilization," in determining the length of the sentence, that the appeal-waiver would be enforceable. It contends, rather, that the record fails to show that the court had relied on a constitutionally impermissible factor. See Gov't Br.19 ("...Melzer has not shown, as he must in order to avoid enforcement of the waiver, a meritorious claim (or even a colorable one"); id. at 20. ("The statements to which Melzer objects were plainly made by Judge Woods while reciting the background of the offenses, and providing context for Melzer's crimes. Judge Woods then explicitly disclaimed that Melzer was being sentenced in any way based on Melzer's beliefs, or Melzer's opposition to the beliefs of others.").

The Government thus collapses the question of whether the appeal waiver is enforceable to "shield from review a sentence colorably alleged to rest upon a constitutionally impermissible factor such as the defendant's race or religion,"[2] into the separate question of the merits of Appellant's claim. The case thus should not be summarily resolved by a motions procedure and should proceed to full consideration by a Merits Panel of this Court. See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000).

In Gomez-Perez, this Court "addressed the nature of defense counsel's obligations to her client under Anders [v. California,

---

[2] United States V. Guillen, 561 F.3d 527, 531 (D.C. Cir. 2009).

7

386 U.S. 738 (1967)] when a defendant has executed [] a waiver of the right to appeal, but has nonetheless filed a notice of appeal, and where the government files a motion to dismiss based on the defendant's waiver." 15 F.3d at 319. "In such cases, if, after reviewing the record, defense counsel is satisfied that there are no non-frivolous issues for appeal, defense counsel should file an <u>Anders</u> brief . . . and an accompanying motion seeking to be relieved as counsel." <u>Id.</u> In weighing whether to do so, "counsel should examine both the adequacy of the defendant's waiver and whether the defendant's plea and sentence were in accord with the applicable law. In some cases, a defendant may have a valid claim that the waiver of appellate rights is unenforceable." <u>Id.</u>

The Court provided some examples of when an appeal waiver is unenforceable: "the waiver was not made knowingly, voluntarily, and competently"; "the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases"; "the government breached the plea agreement"; "the sentencing court failed to enunciate any rationale for the defendant's sentence." <u>Id.</u> The Court noted that this "recitation of cases representing prior circumstances in which we have held waivers unenforceable should in no way be considered exhaustive." <u>Id.</u> at 320.

Under well-settled law, therefore, the appellate waiver in this case should <u>not</u> be enforced to bar Melzer's appeal. See <u>e.g.</u>,

8

United States v. Jacobson, 15 F.3d 19, 21, 23 (2d Cir. 1994) (appellate waiver unenforceable where record shows that sentence may have been based on "arguably unconstitutional" considerations); accord United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) ("[W]e have voided appeal waivers where the sentence imposed was based on unconstitutional factors -- such as race, naturalized status, or inability to pay restitution") (citations omitted): United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008) (waiver unforceceable "when the [district] court's 'arguably unconstitutional' consideration of a factor ... is alleged to have influenced the sentencing").

Where "there are non-frivolous issues" regarding the enforceability of the appellate waiver, "the case should [] be heard by a Merits Panel [rather than a Motions Panel] in accordance with our standard procedures." Gomez-Perez, 215 F.3d at 319. That is the case here, and the Court should reject the Government's motion to dismiss.[3]

---

[3] The Government cites United States v. Monzon, 359 F.3d 110, 118 (2d Cir. 2004) for the proposition that, to void an appeal waiver and avoid summary dismissal, "this Court requires not just a colorable claim, but a meritorious one." Gov't Br.18. But in Monzon, the defendant's claim was that his defense counsel had rendered constitutionally ineffective assistance, "including in negotiating the Plea Agreement," and this made the appeal waiver unenforceable. Id. at 113. But "[f]ollowing the filing of Monzon's initial brief on appeal asserting these contentions, this Court granted a motion by the government for a remand to the district court to permit development of the record on the ineffective-assistance-of-counsel claim." Id. at 111. "On remand, following an evidentiary hearing," the district court concluded

9

As argued at length in Appellant's Brief, the record permits the inference that the district court's sentence was influenced by the improper considerations of Ethan Melzer's views regarding certain religions. Appellant's Br. 19-27. The Government states that the court could not discuss Melzer's motivation for the offense without discussing O9A's "ideology." Gov't Br.20. But this did not require the court to comment on Melzer's opposition to Judeo-Christian values or to express its views that these values are beneficial to society. During the sentencing proceeding, neither lawyer commented on anyone's views on Judeo-Christian values or about any positive benefits of such values. O9A's ideology is eclectic: it's "a white supremacist, Neo-Nazi, Satanist, and pro-jihadist group" that promotes violence "to accelerate and cause the demise of Western civilization." PSR at 8. The district court, however, found it necessary to comment

---

that the claim was without merit. Id. Monzon then renewed "her contentions" that she received constitutionally ineffective assistance and that this voided the appeal wavier."Finding no merit in any of her arguments,[this Court] conclude[d] that the appeal should be dismissed." Id. at 111-12.

Monzon thus concerned this Court's established practice on direct appeal when addressing ineffective assistance claims. The Court considers three options: "we may (1) decline to hear the claim permitting the appellant to raise the issue as part of a subsequent petition ... pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." United States v. Lloyd, 901 F.3d 111, 124 (2d Cir. 2018) (internal quotation marks and citation omitted)(Lloyd claimed the appeal waiver was unenforceable because of ineffective assistance of counsel).

10

specifically on O9A's and Melzer's opposition to Judeo-Christian values, and to express the view that the values of those religions are good for society.

"[P]roof of actual bias" is not "necessary to warrant vacatur of the sentence" because, even the appearance that a sentence was based on a constitutionally impermissible factor, requires vacatur. United States v. Kaba, 480 F.3d 152, 156-57 (2d Cir. 2007); Leung, 40 F.3d at 586 (even the appearance of bias, rather then actual bias, is reversible error because "justice must satisfy the appearance of justice").

Therefore, when "there is a sufficient risk that a reasonable observer, hearing or reading the quoted remarks, might infer, however incorrectly," that an unconstitutional factor "played a role in determining [the] sentence," the sentence should be vacated, and the case remanded for resentencing before a different judge. See Leung, 40 F.3d at 587 ("the appearance of justice is better satisfied by assigning the resentencing to a different judge"); accord Kaba, 480 F.3d at 159 (same).

The same considerations require this Court to hear Mr. Melzer's appeal on the merits despite the existence of an appeal waiver. As Jacobson explains, an appellate waiver is unenforceable where there is a sufficient basis in the record to support appellant's claim that there was an "**arguably** unconstitutional use" of a prohibited status or factor (there, the defendant's status as

11

a naturalized citizen) "as the basis for a sentence." 15 F.3d at 23 (emphasis added).

## CONCLUSION

For the reasons stated above, and in the Appellant's Brief filed on July 5, 2023, the appeal-waiver in Melzer's plea agreement is unenforceable. The Government's motion to dismiss, which is based on that waiver, should therefore be denied.

If not, the case should be referred to a Merits Panel for decision after full briefing and oral argument of Melzer's appeal in the normal course.

Dated: October 16, 2023
       New York, New York

                                      Respectfully submitted,

                                      s/ Darrell Fields
                                      **DARRELL FIELDS**
                                       Assistant Federal Defender
                                       52 Duane Street, 10th Floor
                                       New York, New York 10007
                                       Tel.:(212) 417-8745
                                       Email:Darrell_Fields@fd.org

## CERTIFICATE OF COMPLIANCE

I certify that this opposition complies with Federal Rule of Appellate Procedure 27(d)(2)(A) in that it consists of 2,651 words set in Courier New 12-point type.

s/ Darrell Fields
**DARRELL FIELDS**
Assistant federal Defender

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2023, I filed the foregoing opposition with the Clerk of the United States Court of Appeals for the Second Circuit by means of the ACMS system. I further certify that counsel for appellee, Assistant United States Attorney Matthew J.C. Hellman, is a registered user of the ACMS system and that service was accomplished through that system.

Dated: October 16, 2023
      New York, New York

                                        s/ Darrell Fields
                                      **DARRELL FIELDS**
                                      Assistant federal Defender