23-6247-cr
*United States v. Melzer*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of November, two thousand twenty-four.

PRESENT:
   SUSAN L. CARNEY,
   JOSEPH F. BIANCO,
   WILLIAM J. NARDINI,
    *Circuit Judges*.

---

UNITED STATES OF AMERICA,

   *Appellee*,

v.                23-6247-cr

ETHAN PHELAN MELZER, a/k/a Etil Reggad,

   *Defendant-Appellant*.

---

| | |
|---|---|
| FOR APPELLEE: | MATTHEW J.C. HELLMAN, Assistant United States Attorney (Samuel Adelsberg, Kimberly Ravener, and James Ligtenberg, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York. |

FOR DEFENDANT-APPELLANT:	DARRELL FIELDS, Federal Defenders of New York, Inc., New York, New York.

Appeal from a judgment of conviction of the United States District Court for the Southern District of New York (Gregory H. Woods, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on March 6, 2023, is **AFFIRMED**.

Defendant-Appellant Ethan Phelan Melzer appeals from the district court's judgment, following his guilty plea, to: (1) attempting to murder U.S. service members, in violation of 18 U.S.C. §§ 1114 and 2; (2) providing and attempting to provide material support to terrorists, in violation of 18 U.S.C. §§ 2339A and 2; and (3) illegally transmitting national defense information, in violation of 18 U.S.C. §§ 793(d) and 2. The district court sentenced Melzer principally to a term of 540 months' imprisonment, followed by supervised release for a term of three years. Melzer's sole argument on appeal is that the district court procedurally erred at sentencing because its "reference to Melzer's dislike of 'Judeo and Christian values' created the appearance that the length of the sentence the court imposed was affected by a constitutionally impermissible consideration." Appellant's Br. at 21. Melzer did not object to the district court's comments during the sentencing, and we generally review claims of procedural unreasonableness under the plain error standard if no objection was raised in the district court. *United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008). To determine whether error occurred, we review *de novo* whether the district court improperly considered a constitutionally impermissible factor in its sentencing. *United States v. Kaba*, 480 F.3d 152, 156–57 (2d Cir. 2007). In doing so, we assume

2

the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.[1]

In 2018, Melzer enlisted in the United States Army, and, after completing basic training, he was deployed to a military complex in Italy. During his assignment in Italy, Melzer plotted the murder of his fellow servicemembers, as part of his membership in the Order of the Nine Angels ("O9A"), which is a violent, white supremacist, neo-Nazi, Satanist, pro-jihadist group. In early May 2020, the Army reassigned Melzer to a platoon scheduled for a classified foreign deployment. On or about May 23, 2020, in an O9A group chat on Telegram, Melzer wrote a series of messages, identifying himself as a U.S. servicemember stationed in Italy who was going on a deployment to another location and proposing that he and other members of O9A coordinate a jihadist attack on his platoon at that location. On May 25, 2020, he revealed highly sensitive information about the upcoming deployment to a co-conspirator via Telegram and discussed how an attack on the platoon could be successfully carried out. After Melzer exchanged other Telegram messages with co-conspirators regarding the planned attack on the platoon, military investigators took him into custody on May 30, 2020, as his platoon waited to board buses to the airport in Italy en route to their new deployment location. On Melzer's phone, investigators found a message that Melzer had drafted, but not yet sent, in which he was responding to additional questions from a co-conspirator in order to affirm the depth of his ideological commitment to O9A.

---

[1] As a threshold matter, the Government moved to dismiss this appeal on the grounds that this appeal is barred by the waiver provision in Melzer's plea agreement, which stated that Melzer was waiving his right to appeal any sentence less than or equal to 540 months' imprisonment. Melzer countered that "the appeal waiver is unenforceable because the record gives the appearance that the sentence the district court imposed was affected by a constitutionally impermissible consideration." App. Dkt. Entry 23.1, at 1; *see United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) ("[A] defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as . . . when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases . . . ."). Having concluded that Melzer's argument, which is the sole challenge on appeal, fails on the merits, we deny the government's motion to dismiss the appeal as moot.

3

At sentencing, in explaining the reasons for the 540-month sentence under the factors set forth in 18 U.S.C. § 3553(a), the district court, *inter alia*, described the seriousness of Melzer's offense conduct, including his motivation to facilitate a deadly attack on his unit to further the violent objectives of the O9A:

> Mr. Melzer's crimes were repugnant. He betrayed the United States of America. He betrayed the United States military. He targeted for murder his fellow soldiers. He worked to aid jihadist terrorists. All so he could achieve his nihilist goal of undermining Judeo-Christian values and rupturing civilized society. Much has been said here about the organization that Mr. Melzer joined . . . . [I]t is a white nationalist, neo-Nazi, satanist, pro-jihadist group that promotes the use of extreme violence to accelerate and cause the demise of western civilization. In its view, as embraced by Mr. Melzer, those values hold us back from the state of nature and are holding us back from what it and Mr. Melzer views as the natural order – chaos. The organization and Mr. Melzer opposed those Judeo and Christian values because they are good for civilization. His crimes were committed in order to destroy civilization, to bring us back to a state of nature.

App'x at 128–29. The district court's description of the O9A's ideology and objectives was derived from the factual recitation in the Pre-Sentence Report, to which Melzer did not object.

On appeal, Melzer contends that re-sentencing is warranted because these comments by the district court about O9A "would permit a reasonable observer to conclude that the district court's sentence in this case was affected by the defendant's hostility toward 'Judeo and Christian values'—values that, in the court's view, are good for civilization." Appellant's Br. at 24–25. We disagree.

Sentencing courts generally have discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information they may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (alteration adopted) (internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an

4

appropriate sentence."). Moreover, although "[t]he First Amendment forbids the uncabined reliance on a defendant's 'abstract beliefs' at sentencing," a sentencing judge may consider "evidence of beliefs or associational activities, so long as they are relevant to prove, for example, motive or aggravating circumstances, to illustrate future dangerousness, or to rebut mitigating evidence." *United States v. Fell*, 531 F.3d 197, 228 (2d Cir. 2008) (quoting *Dawson v. Delaware*, 503 U.S. 159, 166–67 (1992)); *see also United States v. Kane*, 452 F.3d 140, 142–43 (2d Cir. 2006) (per curiam) ("The First Amendment does not erect a *per se* barrier to the admission at sentencing of evidence regarding the defendant's beliefs or associational activity. A sentencing court may consider such evidence so long as it is relevant to the issues involved in the sentencing proceeding. Among other possible uses, a particular piece of evidence may be relevant to show motive, analyze a statutory aggravating factor, illustrate future dangerousness or potential recidivism, or rebut mitigating evidence that the defendant proffers." (internal quotation marks and citations omitted)). In this context, we will vacate the sentence where there is "a sufficient risk that a reasonable observer, hearing or reading the quoted remarks, might infer, however incorrectly," that a defendant's protected characteristics or religious beliefs "played a role in determining [the defendant's] sentence." *United States v. Leung*, 40 F.3d 577, 586–87 (2d Cir. 1994).

Here, we conclude that the district court did not sentence Melzer based on any constitutionally-protected beliefs, nor could a reasonable observer believe otherwise based on the district court's comments. Instead, it is clear from the record that the district court briefly referenced O9A's ideology, including its opposition to Judeo-Chrisitan values, in connection with the court's consideration of Melzer's motive for the offense conduct, as permitted in its evaluation of the Section 3553(a) factors, including on the issue of future dangerousness. *See United States*

5

*v. Jones*, 100 F.4th 103, 112 (2d Cir. 2024) ("[C]onsideration of racial or religious motivations of a crime is distinct from improper consideration of a defendant's race or religion alone, and thus is not improper when imposing a sentence."); *see also Dawson*, 503 U.S. at 166 ("[A]ssociational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society," especially where the defendant is a member of "an organization that endorses the killing of any identifiable group").

Although Melzer asserts that the district court "made a value-judgment about [Judeo and Christian] values, saying they were 'good for civilization,'" Appellant's Br. at 25, we are unpersuaded. As summarized above, the district court's "good for civilization" reference was made in the context of describing Melzer's and the O9A's views of those values to explain why, according to them, those values had to be defeated through violent conduct if their goal of chaos was to be achieved. Thus, that passing reference in no way indicated the district court's own personal value judgments in imposing its sentence. *See* App'x at 129 (stating that "*[i]n its* [*i.e.*, O9A's] *view, as embraced by Mr. Melzer*, those values hold us back from the state of nature and are holding us back from what it and Mr. Melzer views as the natural order—chaos" (emphasis added)); *see also id*. ("*The organization and Mr. Melzer* opposed those Judeo and Christian values because they are good for civilization," and "[h]is crimes were committed in order to destroy civilization, to bring us back to a state of nature." (emphasis added)). Indeed, the district court's comments dispelled any notion that it was sentencing Melzer for his ideology. Specifically, at sentencing, the government noted: "To be absolutely clear, the defendant is not be[ing] sentenced for his beliefs, his worldview, or even his advocacy for it." App'x at 114. The district court then emphasized this point by explaining: "As counsel for the United States described, [Melzer] is not charged here with his ideology. His crime began after his unit was transferred to Italy." App'x at

6

130. In doing so, the district court made clear that Melzer was not being sentenced based on any beliefs or ideologies held prior to his deployment to Italy, but rather for *his criminal conduct* in Italy that was motivated by those beliefs and ideologies, including transmitting national defense information, providing support to terrorists, and attempting to kill his fellow soldiers. *See, e.g.*, App'x at 131 ("Mr. Melzer provided national defense information to others intending that it be used to murder the members of his platoon by the jihadi fighters. Mr. Melzer strategized about the best ways to attack his unit, and to kill the 40 or so service people in it."). In short, on this record, there is no risk that a reasonable observer could infer that Melzer's protected beliefs "played a role in determining [his] sentence." *Leung*, 40 F.3d at 586–87.

\* \* \*

We have considered Melzer's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court